LESTER J. MARSTON
California State Bar No. 081030
THE LAW OFFICES OF RAPPORT AND MARSTON
AN ASSOCIATION OF SOLE PRACTITIONERS
405 West Perkins Street
Ukiah, California 95482
Telephone: 707-462-6846
Facsimile: 707-462-4235
Email: ljmarston@rmlawoffice.net

*Attorney for Plaintiffs*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BLUE LAKE RANCHERIA, CHICKEN RANCH RANCHERIA OF ME-WUK INDIANS, and PICAYUNE RANCHERIA OF THE CHUKCHANSI INDIANS<br><br>Plaintiffs,<br><br>v.<br><br>KALSHI INC., KALSHIEX LLC, ROBINHOOD MARKETS, INC., ROBINHOOD DERIVATIVES LLC, and DOES 1-20,<br><br>Defendants. | Case No.:  25-cv-06162-JSC<br><br>**DECLARATION OF JOSEPH MATHIESEN-POWELL IN SUPPORT OF PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION** |

I, JOSEPH MATHIESEN-POWELL, declare:

1.     I am an enrolled member of the Chicken Ranch Rancheria of Me-Wuk Indians ("Tribe") and the current Chairman of the Tribal Council ("Council") of the Tribe. I am submitting this declaration in support of Plaintiffs' Motion for a Preliminary Injunction filed in the above-entitled action. The information contained in this declaration is of my own personal knowledge and, if called as a witness in these proceedings, I could competently testify thereto.

1

2.    I have served as Chairman of the Tribe from January 15, 2025, to the present.

3.    As Chairman, I am the Chief Executive Officer of the Tribe and Council and the chief spokesperson for the Tribe. I represent the Tribe and correspond with other governments and entities on behalf of the Tribe. I am also the acting General Manager of the Tribe's gaming facility ("Casino"). The Casino consists of a hotel with 196 rooms, six restaurants, and a casino floor consisting of 1200 slot machines and twenty-two table games.

4.    The Council governs the Tribe's members and the resources, land, and water reserved and subject to the Tribe's jurisdiction, in accordance with the authority delegated to the Council under the Tribe's constitution ("Constitution") and applicable federal law. I am responsible for the day-to-day operations of the Tribe's government, including, but not limited to, drafting, preparing, approving, and overseeing implementation of the Tribe's governmental budgets. Accordingly, I am familiar with the Tribe's budgets and finances, and the operation of the Tribe's government and business enterprises, including the Tribe's Casino.

5.    On October 24, 1908, the Secretary of the Interior ("Secretary") issued an order establishing the Chicken Ranch Rancheria ("Reservation") for the Tribe and its members. The Reservation, as originally created by the order of the Secretary, consisted of approximately 40 acres of land located near Jamestown, in Tuolumne County, California.

6.    The status of the Tribe and its Reservation was illegally terminated by the United States, pursuant to the California Rancheria Act.

7.    Termination extinguished the existence of the Tribe, ended the rights of the tribal members to receive special federal services as Indians, terminated the trust status of the Tribe's lands, and exposed the Tribe's lands to state and local regulation and taxation.

8.    Once termination became effective, Tuolumne County officials

2

MATHIESEN-POWELL DECLARATION IN SUPPORT
[Case No. 25-cv-06162-JSC]

immediately issued citations to tribal members because their homes and parcels failed to meet state and county zoning and subdivision requirements and uniform building code standards.

9. As a result, within weeks of termination, many tribal members were prohibited from inhabiting their homes. Since few of the disenfranchised tribal members had enough money to bring their homes into compliance with the applicable zoning and building code standards, many tribal members were forced to sell their property.

10. By the late 1960s, the only land still owned by a tribal member located within the boundaries of the terminated Reservation was land deeded to Inez Mathiesen, who retained ownership of three acres of land after deeding land to her children. Ownership of all other former Reservation parcels distributed to tribal members passed into non-Indian ownership as a result of the illegal termination of the Reservation.

11. In 1983, the United States District Court for the Northern District of California entered a "Stipulation for Entry of Judgment" and an "Order Approving Entry of Final Judgment in Action" in *Hardwick v. United States,* Case No. C-79-1910 SW ("*Hardwick*"). In 1985, the court also entered a "Stipulation for Entry of Judgment" in *Hardwick* relating specifically to the restoration of the Tribe and its members.

12. The *Hardwick* judgments provided for: (a) the reinstatement of the status of the Tribe's members' as federally recognized Indians and their eligibility for federal benefits and services provided to Indians by the United States; (b) the reinstatement of the recognition of the Tribe's status as a federally recognized Indian tribe; (c) the application to the Tribe's members of all federal statutes that affect Indians because of their status as Indians; (d) the right of all members of the Tribe to restore to trust status any Reservation land that was still in Indian ownership; (e) the reestablishment of the boundaries of the Reservation; and (f) the restoration of

MATHIESEN-POWELL DECLARATION IN SUPPORT
[Case No. 25-cv-06162-JSC]

all the lands within the boundaries of the Reservation to "Indian country" status as defined by 18 U.S.C. § 1151.

13.     After the *Hardwick* judgments were entered, Inez Mathiesen conveyed her remaining three acres, which are located within the boundaries of the Tribe's Reservation, back to the United States to be held in trust for her.

14.     In 1987, the Supreme Court, in *California v. Cabazon Band of Indians*, ("*Cabazon*"), held that California had no authority to enforce its gambling laws against Indian tribes on their Indian lands.

15.     In response to the *Cabazon* decision, Congress enacted the Indian Gaming Regulatory Act (" IGRA"), to create a framework for Indian tribes, states, and the federal government to exclusively and comprehensively regulate tribal gaming on "Indian lands."

16.     Pursuant to its Constitution and IGRA, the Tribe, as the beneficial owner of the Reservation and acting through its Council, adopted a Tribal Gaming Ordinance ("Gaming Ordinance"), which authorizes and provides for the regulation of classes I, II, and III gaming on its Indian lands.

17.     The National Indian Gaming Commission ("NIGC") approved the Gaming Ordinance pursuant to the authority granted to it under the IGRA.

18.     Pursuant to the Gaming Ordinance, the Council established and appointed a tribal gaming commission that regulates the playing of classes I, II, and III gaming on the Reservation. Pursuant to the IGRA, the Tribe's 1999 Model Tribal-State Class III Gaming Compact ("1999 Compact"), Gaming Ordinance, and the Compact Tribal-State Gaming Association Regulation CGCC-8, the Gaming Commission has adopted comprehensive minimum internal control standards establishing and regulating among other things the rules for the playing of the games, the use and playing of electronic games of chance on slot machines and electronic gaming devices, technological aids in the playing of the games and standards for

MATHIESEN-POWELL DECLARATION IN SUPPORT
[Case No. 25-cv-06162-JSC]

how gaming revenue is counted and accounted for. The Casino employs both members and non-members.

19. Pursuant to the IGRA, after years of negotiation and litigation, on October 8, 1999, the Tribe executed the 1999 Compact with the State.

20. On March 7, 2000, California voters approved Proposition 1A. Proposition 1A amended the State Constitution to permit federally recognized tribes to operate and offer for play slot machines and house-banked card games on their Indian lands if authorized by the governor in a tribal-state compact that is subsequently ratified by the State legislature.

21. The Tribe's 1999 Compact was subsequently ratified by the State legislature by statute.

22. By letter dated May 5, 2000, the Tribe's 1999 Compact was approved by then Assistant-Secretary for Indian Affairs, Kevin Gover.

23. On July 28, 2022, the United States Court of Appeals for the Ninth Circuit issued a decision in *Chicken Ranch Rancheria of Me-Wuk Indians v. Newsom*. The Court concluded that the State of California failed to negotiate a new compact with the plaintiff tribes in good faith and ordered the implementation of IGRA's remedial scheme. On January 31, 2024, consistent with the remedy supplied by IGRA, the Secretary of the Interior, United States Department of the Interior, issued secretarial procedures ("Procedures") for the regulation of the Tribe's class III gaming.

24. For over twenty five years, the Tribe has operated the Chicken Ranch Casino and Bingo ("Casino") on the Tribe's Indian lands within the boundaries of the Reservation pursuant to the IGRA, the Tribe's original 1999 Compact, its current Procedures, and its Gaming Ordinance since the 1999 Compact was approved by then Assistant-Secretary Kevin Gover. The Casino currently employs approximately 850 employees.

MATHIESEN-POWELL DECLARATION IN SUPPORT
[Case No. 25-cv-06162-JSC]

25.    After decades of pursuing remedies through negotiation, litigation, and legislation, the Tribe has established a comprehensive regulatory infrastructure, in strict compliance with IGRA and the many regulatory requirements applicable to class III gaming, and the Tribe is conducting class III gaming in a stable, legal environment that allows the Tribe's gaming to fulfill Congress' purposes in enacting IGRA.

26.    Because the Tribe is conducting class III gaming in a stable, legal environment, with a predictable market for tribal gaming revenues, the Tribe has been able to engage in governmental and community planning to develop policies, allocate resources, and regulate land, infrastructure, programs, and services to achieve public objectives that benefit the Tribe and the surrounding communities in conjunction with the State of California and its political subdivisions. The Tribe allocates a minimum of two million dollars ($2,000,000) annually to local projects, programs, and services that are intended to uplift and benefit the surrounding communities within Tuolumne County ("County"). The Tribe has worked with the County and local communities to build an additional fire station with firefighters and EMS personnel staffed twenty-four hours per day, seven days per week, to enhance response time to and provide support for local emergencies. The Tribe provides a federally-recognized tribal health clinic, which also provides dental services, to improve the health and wellness of under-served members of the surrounding rural communities. The Tribe subsidizes a high-quality daycare facility that is currently undergoing expansion and subsidizes a local farming program aimed at connecting the surrounding communities with locally sourced agriculture. And the Tribe has contributed to the development of local community centers, as well as a community promotion club to help drive local tourism in Tuolumne County, none of which would be possible without a steady, predictable revenue stream from tribal gaming.

27.    By engaging in class III gaming on the Tribe's Indian lands without any regulatory oversight or protective measures to combat corruption and problem

6

gambling, Kalshi is undermining the Tribe's sovereign authority to regulate activities on its Indian lands, undermining the comprehensive regulatory requirements established by the IGRA and, thereby, frustrating the purposes for which the IGRA was enacted. Kalshi has upset the hard-won balance that the Tribal, State, and local governments have achieved through cooperative federalism and the Tribe must now anticipate a potential loss of infrastructure, programs, and services that harmonize the interests of the Tribe and surrounding communities.

I declare under penalty of perjury that the foregoing is true and correct; executed this 26th day of August, 2025 in Jamestown, California.

/s/ Joseph Mathiesen-Powell
JOSEPH MATHIESEN-POWELL, Declarant

MATHIESEN-POWELL DECLARATION IN SUPPORT
[Case No. 25-cv-06162-JSC]

## CERTIFICATE OF SERVICE

I am employed in the County of Mendocino, State of California. I am over the age of 18 years and not a party to the within action; my business address is that of Rapport & Marston, 405 West Perkins Street, Ukiah, California 95482.

I hereby certify that I electronically filed the foregoing document with the Clerk of the United States District Court for the Northern District of California by using the CM/ECF system on September 4, 2025, which generated and transmitted a notice of electronic filing to CM/ECF registrants.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct; executed on September 4, 2025, at Ukiah, California.

/s/ Anita Salmeron
ANITA SALMERON

MATHIESEN-POWELL DECLARATION IN SUPPORT
[Case No. 25-cv-06162-JSC]