Mark R. Conrad (CA Bar No. 255667)
**CONRAD | METLITZKY | KANE LLP**
217 Leidesdorff Street
San Francisco, CA 94111
Tel:    (415) 343-7100
Fax:    (415) 343-7101
Email: mconrad@conmetkane.com

Mithun Mansinghani (admitted *pro hac vice*)
**LEHOTSKY KELLER COHN LLP**
629 W. Main Street
Oklahoma City, OK 73102
Tel:    (512) 693-8350
Email: mithun@lkcfirm.com

Antony L. Ryan (admitted *pro hac vice*)
Kevin J. Orsini (admitted *pro hac vice*)
Brittany L. Sukiennik (admitted *pro hac vice*)
**CRAVATH, SWAINE & MOORE LLP**
Two Manhattan West
375 Ninth Avenue
New York, NY 10001
Tel:    (212) 474-1000
Fax:    (212) 474-3700
Email: aryan@cravath.com
Email: korsini@cravath.com
Email: bsukiennik@cravath.com

*Attorneys for Robinhood Markets, Inc.,
and Robinhood Derivatives LLC*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| BLUE LAKE RANCHERIA, CHICKEN RANCH RANCHERIA OF ME-WUK INDIANS, AND PICAYUNE RANCHERIA OF THE CHUKCHANSI INDIANS,<br><br>       Plaintiffs,<br><br>  v.<br><br>KALSHI INC., KALSHIEX LLC, ROBINHOOD MARKETS, INC., ROBINHOOD DERIVATIVES LLC, AND DOES 1-20,<br><br>       Defendants. | CASE NO. 3:25-cv-06162-JSC<br><br>**ROBINHOOD DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION**<br><br>Date:      October 23, 2025<br>Time:     10:00 a.m.<br>Judge:    Hon. Jacqueline Scott Corley<br>Courtroom: 8, 19th Floor |

1

**TABLE OF CONTENTS**

I.      INTRODUCTION ...............................................................................................................1

II.     FACTUAL BACKGROUND...........................................................................................1

        A.      Federal Regulation of Event Contract Trading...............................................2

        B.      Federal Regulation of Futures Commission Merchants..................................3

        C.      Robinhood, Event Contracts and Kalshi ..........................................................4

III.    LEGAL STANDARD.......................................................................................................4

IV.     ARGUMENT ....................................................................................................................5

        A.      Plaintiffs Will Not Succeed on the Merits. .....................................................5

        B.      Plaintiffs Have Not Shown Irreparable Harm..................................................7

        C.      The Balance of the Equities Weighs Against an Injunction, Including Because of the
                Substantial Harm to Robinhood.........................................................................8

        D.      The Public Interest Disfavors an Injunction. .................................................10

V.      CONCLUSION...............................................................................................................11

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## TABLE OF AUTHORITIES

2

**Cases**                                                                    **Page(s)**

3

*Am. Agric. Movement, Inc. v. Bd. of Trade of City of Chicago,*
    977 F.2d 1147 (7th Cir. 1992) ................................................................3

4

5

*Ariz. Dream Act Coal. v. Brewer,*
    757 F.3d 1053 (9th Cir. 2014) ...............................................................8

6

*Cabazon Band of Mission Indians v. Wilson,*
    124 F.3d 1050 (9th Cir. 1997) ...............................................................6

7

8

*Evans v. Shoshone-Bannock Land Use Policy Comm'n,*
    736 F.3d 1298 (9th Cir. 2013) ...............................................................7

9

10

*FTC v. Ken Roberts Co.,*
    276 F.3d 583 (D.C. Cir. 2001) .............................................................11

11

*Golden Gate Restaurant Ass'n v. City & County of San Francisco,*
    512 F.3d 1112 (9th Cir. 2008) .............................................................12

12

13

*Goldie's Bookstore, Inc. v. Superior Court,*
    739 F.2d 466 (9th Cir. 1984) .................................................................5

14

*Hein v. Capitan Grande Band of Diegueno Mission Indians,*
    201 F.3d 1256 (9th Cir. 2000) ...............................................................6

15

16

*Hendricks v. Bank of Am.,*
    408 F.3d 1127 (9th Cir. 2005) ...............................................................5

17

18

*Hornell Brewing Co. v. Rosebud Sioux Tribal Court,*
    133 F.3d 1087 (8th Cir. 1998) ...............................................................5

19

20

*Jackson v. Payday Fin., LLC,*
    764 F.3d 765 (7th Cir. 2014) .................................................................5

21

*KalshiEx LLC v. Commodity Futures Trading Comm'n,*
    No. CV 23-3257, 2024 WL 4164694 (D.D.C. Sept. 12, 2024) ............2

22

23

*KalshiEx LLC v. Flaherty,*
    No. 25-cv-2152, 2025 WL 1218313 (D.N.J. Apr. 28, 2025), *appeal filed*, No. 25-1922
    (3d Cir. May 8, 2025) ..........................................................................11

24

25

*KalshiEx LLC v. Martin,*
    No. 25-cv-1283, 2025 WL 2194908 (D. Md. Aug. 1, 2025), *appeal filed*, No. 25-1892
    (4th Cir. Aug. 6, 2025)........................................................................12

26

27

*KalshiEx, LLC v. Hendrick,*
    No. 25-00575, 2025 WL 1073495 (D. Nev. Apr. 9, 2025).................11

28

*Montana v. United States*,
  450 U.S. 544 (1981)..................................................................................................7

*Robinhood Derivatives, LLC v. Campbell*,
  No. 1:25-cv-12578 (D. Mass. filed Sept. 15, 2025).........................................11

*Robinhood Derivatives, LLC v. Dreitzer*,
  No. 2:25-cv-01541 (D. Nev. filed Aug. 29, 2025)............................................11

*Robinhood Derivatives, LLC v. Flaherty*,
  No. 1:25-cv-14723 (D.N.J. filed Aug. 29, 2025)..............................................11

*Santa Clara Pueblo v. Martinez*,
  436 U.S. 49 (1978)....................................................................................................7

*Stormans, Inc. v. Selecky*,
  586 F.3d 1109 (9th Cir. 2009) ..............................................................................4

*Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*,
  240 F.3d 832 (9th Cir. 2001) ................................................................................9

*Ute Indian Tribe of the Uintah & Ouray Rsrv. v. Utah*,
  790 F.3d 1000 (10th Cir. 2015) ............................................................................8

*Winter v. Natural Res. Def. Council, Inc.*,
  555 U.S. 7 (2008)........................................................................................................4

**Statutes & Rules**

7 U.S.C. § 1a .....................................................................................................................3

7 U.S.C. § 2 ............................................................................................................ *passim*

7 U.S.C. § 6f .....................................................................................................................3

7 U.S.C. § 7 ..................................................................................................................2, 3

7 U.S.C. § 7a-2 ...............................................................................................................2

7 U.S.C. § 8 .....................................................................................................................3

25 U.S.C. § 2710 ....................................................................................................5, 6, 7

31 U.S.C. § 5362 ............................................................................................................6

31 U.S.C. § 5365 ............................................................................................................6

Dodd-Frank Wall Street Reform and Consumer Protection Act, Pub. L. No. 111-203,
  124 Stat. 1376 (2010).............................................................................................2

17 C.F.R. § 1.10 .................................................................................................................3

17 C.F.R. § 1.11 .................................................................................................................3

17 C.F.R. § 1.12 .................................................................................................................3

17 C.F.R. § 1.14 .................................................................................................................4

17 C.F.R. § 1.15 .................................................................................................................3

17 C.F.R. § 1.17 ..............................................................................................................3, 4

17 C.F.R. § 1.18 .................................................................................................................4

17 C.F.R. § 1.55 .................................................................................................................3

17 C.F.R. § 1.71 .................................................................................................................3

17 C.F.R. § 3.10 .................................................................................................................3

17 C.F.R. § 17.00 ...............................................................................................................3

17 C.F.R. Part 38 ...............................................................................................................3

17 C.F.R. § 38.3 .............................................................................................................2, 3

17 C.F.R. § 155.3 ...............................................................................................................4

CASE NO. 3:25-cv-06162-JSC                                    ROBINHOOD OPPOSITION TO PI MOTION

## I.    INTRODUCTION

Robinhood Derivatives, LLC ("Robinhood") and Robinhood Markets, Inc. (together with Robinhood, the "Robinhood Defendants") oppose Plaintiffs' motion for a preliminary injunction against KalshiEx LLC ("Kalshi") and Kalshi Inc. because Robinhood would likely suffer substantial and irreparable harm to its federally authorized event contract business if this Court were to enjoin Kalshi from offering sports-related event contracts on Indian lands.

Robinhood offers its customers the ability to trade event contracts on Kalshi's exchange—derivatives that let customers trade based on predictions about the occurrence of future events, including sports.  Under the Commodity Exchange Act ("CEA"), event contract trading is within the "exclusive jurisdiction" of the Commodity Futures Trading Commission ("CFTC").  7 U.S.C. § 2(a)(1)(A).

Robinhood and Kalshi each perform separate functions under the CFTC's comprehensive federal regulatory scheme for trading futures, swaps and other derivatives.  Kalshi operates as a CFTC-registered Designated Contract Market ("DCM"), which authorizes Kalshi, subject to CFTC oversight, to operate an exchange for event contracts trading.  Robinhood operates as a CFTC-registered Futures Commission Merchant ("FCM"), which authorizes Robinhood, also subject to CFTC oversight, to solicit and accept event contract orders from customers; Robinhood then intermediates those orders and routes them for execution through Kalshi's exchange.  As a result, an injunction against Kalshi would disrupt Robinhood's business, which depends on Kalshi's exchange to facilitate customer event contract orders.  A preliminary injunction also dismantles this federal regulatory scheme.

The Robinhood Defendants submit this Opposition to explain their own, direct interest in the outcome of Plaintiffs' Motion for Preliminary Injunction (the "Motion").  Plaintiffs' Motion should be denied for the reasons set forth herein and in Kalshi's opposition (the "Kalshi Opposition"), which the Robinhood Defendants join.

## II.    FACTUAL BACKGROUND

The Robinhood group consists of various financial-services companies that are democratizing finance by removing barriers to access to financial markets.  By offering low fees, an intuitive mobile experience and powerful tools, the Robinhood companies empower everyday investors to navigate financial markets safely and efficiently.  As part of that mission, on March 17, 2025, Robinhood

1

launched a prediction markets hub, through which customers can place orders to trade event contracts.[1] Declaration of Adam Hickerson in Support of Robinhood Defendants' Opposition to Plaintiffs' Motion for Preliminary Injunction ("Hickerson Decl.") ¶ 4.

**A.     Federal Regulation of Event Contract Trading**

Event contracts are a type of derivative that allows customers to trade on their predictions about the occurrence of future events. *See KalshiEx LLC v. Commodity Futures Trading Comm'n*, No. CV 23-3257, 2024 WL 4164694, at *1-2 (D.D.C. Sept. 12, 2024). Event contracts are typically structured as binary options posing a yes-or-no question. A buyer takes the "yes" side and a seller takes the "no" side, and upon the expiration of the contract—typically, when the outcome of the future event in question becomes known—the value of the contract goes to the party who was right. Until that time, buyers and sellers can trade the contract, and the price of the contract fluctuates based on the market's assessment of the probability the event will occur. *Id.* at *2. Traders may use event contracts to mitigate risk (*e.g.*, an orange grower may buy a contract predicting an early frost to offset the risk of loss of income from frost damage) or to seek a financial return. *Id.* Unlike a sportsbook, where bettors place bets against the house and the house sets odds in its favor, when traders enter into event contracts, the contracts are bilateral with another trader on the other side, and the market sets the contract price.

Event contract trading is subject to a comprehensive federal regulatory scheme for commodity futures and swaps trading. In 1974, Congress amended the CEA and established the CFTC to centralize regulatory authority over futures markets. *Id.* The CEA was further amended by the Dodd-Frank Act of 2010, Pub. L. No. 111-203, 124 Stat. 1376, which brought swaps within the coverage of the CEA and added a "special rule" governing event contracts. *See* 7 U.S.C. § 7a-2(c)(5)(C)(i). The CEA gives the CFTC "exclusive jurisdiction" over transactions involving event contracts that trade on a "contract market designated" by the CFTC (a "Designated Contract Market" or "DCM"). 7 U.S.C. § 2(a)(1)(A).

To become a CFTC Designated Contract Market, an exchange must apply and set forth its ability to comply with CFTC rules and regulations. 7 U.S.C. §§ 2(e), 7(a); 17 C.F.R. § 38.3(a). The CFTC's regulatory framework for DCMs, including a set of 23 "Core Principles," 17 C.F.R. pt. 38, is designed to

---

[1] Robinhood began offering some limited event contract trading starting in October 2024, prior to the launch of the prediction markets hub. Hickerson Decl. ¶ 4.

ensure and protect the integrity of those markets.  Status as a CFTC DCM "imposes upon [an exchange] a duty of self-regulation, subject to the Commission's oversight," requiring the exchange to "enact and enforce rules to ensure fair and orderly trading, including rules designed to prevent price manipulation, cornering and other market disturbances."  *Am. Agric. Movement, Inc. v. Bd. of Trade of City of Chicago*, 977 F.2d 1147, 1150-51 (7th Cir. 1992), *abrogated on other grounds by Time Warner Cable v. Doyle*, 66 F.3d 867, 875 (7th Cir. 1995).  The CFTC is authorized to suspend or revoke a DCM's designation if it fails to comply with any of the provisions of the CEA or the CFTC's regulations.  7 U.S.C. § 8(b).  Kalshi, whose event contracts Robinhood makes available on its platform, is a CFTC-registered Designated Contract Market.  *KalshiEx*, 2024 WL 4164694, at *4.

### B.    Federal Regulation of Futures Commission Merchants

Robinhood operates within this federal scheme as a Futures Commission Merchant.  An FCM is an entity "engaged in soliciting or in accepting orders for the purchase or sale of a commodity for future delivery; a security futures product; a swap" or certain other transactions and "in connection with [those activities], accepts any money, securities, or property (or extends credit in lieu thereof) to margin, guarantee, or secure any trades or contracts that result or may result therefrom."  7 U.S.C. § 1a(28) (subsection headings omitted).  Under the CEA, DCMs, like Kalshi, may execute event contract trade orders received from FCMs, like Robinhood, who accept and solicit orders from customers.  FCMs must register with the CFTC unless they fall within narrow exemptions.  *Id.* § 6f; 17 C.F.R. § 3.10(c).

Like DCMs, registered FCMs must comply with federal requirements.  *See, e.g.*, 17 C.F.R. §§ 1.10(b), 1.10(d), 17.00 (reporting requirements to the CFTC); *id.* § 1.55 (disclosure requirements to the public); *id.* §§ 1.12, 1.17 (minimum financial requirements).  FCMs must "establish, maintain, and enforce a system of risk management policies and procedures designed to monitor and manage the risks associated with the activities of the" FCM.  *Id.* § 1.11(c)(1).  CFTC regulations establish required elements of a risk management program, *id.* § 1.11(e), as well as reporting requirements related to risk management, *see id.* § 1.15.  The CFTC requires FCMs to "establish and enforce internal rules, procedures and controls to" ensure compliance with certain trading standards.  *Id.* § 155.3.  FCMs must also "adopt and implement written policies and procedures" to ensure that they and their employees comply with CFTC regulations concerning conflicts of interest.  *Id.* § 1.71.  Finally, the CFTC imposes

3

recordkeeping requirements on FCMs as well.  *Id.* §§ 1.14, 1.18.  Failure to comply with these requirements could require the FCM to "transfer all customer accounts and immediately cease doing business as a futures commission merchant."  *Id.* § 1.17(a)(4).

### C.    Robinhood, Event Contracts and Kalshi

Robinhood is a CFTC-registered FCM.  Hickerson Decl. ¶ 3.  As such, Robinhood accepts orders from customers seeking to trade event contracts.  Robinhood intermediates its customers' event contract trades, including sports-related event contracts, through Kalshi's designated exchange.  *Id.* ¶ 5.  Robinhood has entered into agreements with Kalshi that allow it to route trades to Kalshi's contract market facilities for this purpose.  *Id.* ¶ 6.  Those agreements obligate Robinhood to ensure such access is secure and in compliance with all applicable laws, including the CEA and CFTC regulations; they also require Robinhood to comply with Kalshi's rules.  *Id.*

In practice, Robinhood customers place orders for event contract trades in their Robinhood accounts, but the *trades* themselves take place on Kalshi's CFTC-designated exchange.  *Id.* ¶ 5.  While Robinhood customers access a user interface directly within their Robinhood app, trades are executed on Kalshi's exchange as regulated by the CFTC, and Robinhood's activities as an FCM are subject to further CFTC regulation.  *Id.*

## III.    LEGAL STANDARD

To obtain a preliminary injunction, Plaintiffs must demonstrate that they are "likely to succeed on the merits, … likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in [their] favor, and that an injunction is in the public interest."  *Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1127 (9th Cir. 2009) (quoting *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008)).  In assessing the balance of the equities, courts must "balance the interests of all parties and weigh the damage to each."  *Id.* at 1138 (internal quotation omitted).  A court must also consider the "public interest," particularly where "an injunction reaches beyond the parties, carrying with it a potential for public consequences."  *Id.* at 1139.

Where a motion for preliminary injunction is directed to fewer than all defendants, any party with standing may oppose the motion.  Thus, the Ninth Circuit has held that "a defendant may … contest the grant of the preliminary injunction issued against ... other defendants" where the objecting party was

1  a "party at the time judgment was entered and [was] aggrieved by the decision." *Hendricks v. Bank of*

2  *Am.*, 408 F.3d 1127, 1133 (9th Cir. 2005) (quoting *Goldie's Bookstore, Inc. v. Superior Court*, 739 F.2d

3  466, 468 n.2 (9th Cir. 1984)).  Here, Robinhood opposes the Motion on the ground that Robinhood

4  would likely suffer its own substantial harm from a preliminary injunction entered against Kalshi.

5  **IV.    ARGUMENT**

6      **A.    Plaintiffs Will Not Succeed on the Merits.**

7      As set forth in the Kalshi Opposition, Plaintiffs cannot establish a likelihood of success on the

8  merits.  *See* Kalshi Opposition at 11-17.  Plaintiffs seek a preliminary injunction based only on Counts I

9  and V of Plaintiffs' Complaint.  *See* ECF 35, Motion at 9-14 (presenting only Plaintiffs' Indian Gaming

10  Regulatory Act ("IGRA") and Lanham Act claims).[2]  Count I is the only one of those two counts that

11  seeks relief that directly affects Robinhood.[3]  Plaintiffs' Count I (IGRA) claim fails for several,

12  independent reasons.

13      *First*, Robinhood's and Kalshi's activities are not covered by IGRA because they are neither

14  "Class III gaming activities" under IGRA nor does their conduct take place "on Indian lands."  *See*

15  Kalshi Opposition at 13-14, 25 U.S.C. § 2710(d)(1) (listing conditions for when "Class III gaming

16  activities" are lawful "on Indian lands").  Conduct physically occurring off-reservation does not become

17  activity "on Indian lands" when, as here, a commercial service is simply accessible to tribal members

18  over the Internet.  *See Jackson v. Payday Fin., LLC*, 764 F.3d 765, 782 (7th Cir. 2014) (operation of an

19  Internet website accessed by tribal members from a reservation is not activity on Indian lands); *Hornell*

20  *Brewing Co. v. Rosebud Sioux Tribal Court*, 133 F.3d 1087, 1093 (8th Cir. 1998) (same for advertising

21  on the Internet).

22      *Second*, Congress's grant to the CFTC of "exclusive jurisdiction" over commodity futures and

23  swap trading on CFTC-designated exchanges, 7 U.S.C. § 2(a)(1)(A), precludes an extension of IGRA to

---

24  [2] In its forthcoming motion to dismiss, Robinhood will show that Plaintiffs fail to state a claim against

25  Robinhood under any count in the Complaint, including Counts II to IV, not discussed here because Plaintiffs do not argue those claims on their preliminary injunction motion.

26  [3] In Count V, Plaintiffs refer only to marketing statements by Kalshi (not Robinhood), ECF 1,

27  Complaint ¶¶ 220-228, and the only relief they seek relating to the Lanham Act is an order restricting Kalshi's marketing practices, ECF 35, Motion at 24; ECF 35-1, Proposed Order ¶ 4.  The alleged

28  Lanham Act violations therefore cannot support the broader relief to enjoin Kalshi from offering sports-related event contracts on Indian lands.  *See* ECF 35-1, Proposed Order ¶¶ 2-3.

cover the same trading.  *See* Kalshi Opposition at 4-5, 8-9, 15-16.  IGRA and the CEA can be readily

harmonized because trading on CFTC-designated exchanges is subject to the CFTC's exclusive

jurisdiction and therefore cannot be covered by IGRA.

     *Third*, the Unlawful Internet Gaming Enforcement Act of 2006 ("UIGEA") —not IGRA—

controls whether online gaming that crosses state or tribal borders is unlawful where the activity is

lawful in one location (where the bet is made or received) but not the other, and UIGEA *expressly*

carves out CFTC-regulated transactions, including those at issue here.  *See* Kalshi Opposition at 14-16;

31 U.S.C. § 5362(1)(E)(ii) (defining "bet or wager" to exclude "any transaction conducted on or subject

to the rules of a registered entity or exempt board of trade under the [CEA]").  With the UIGEA

carveout, Congress made clear how to reconcile all three statutes (the CEA, IGRA and UIGEA) by

carving out CEA-regulated transactions from the federal prohibition on online gaming crossing into a

state or Indian lands where the gaming activity is unlawful.  UIGEA also contains a specific

enforcement mechanism for transactions over the Internet that are "initiated on Indian lands":  this

provision allows only the federal government (not Indian tribes such as Plaintiffs) to bring claims, which

shows further that IGRA does not apply.  *See* Kalshi Opposition at 14; 31 U.S.C. § 5365(b)(3).[4]

Interpreting IGRA to encroach on event contract trading on CFTC-designated exchanges would

impermissibly override the UIGEA carveout and the UIGEA enforcement mechanism.

     *Fourth*, setting aside IGRA's inapplicability to CFTC-designated contract markets, tribes have

no right of action to enjoin violations of IGRA's restrictions on gaming on Indian lands under 25 U.S.C.

§ 2710(d)(1).  *See* Kalshi Opposition at 11-12.  Indian tribes have a right of action under IGRA only

where the statute expressly so provides.  *Hein v. Capitan Grande Band of Diegueno Mission Indians*,

201 F.3d 1256, 1260 (9th Cir. 2000).  As relevant here, tribes may only bring suit under IGRA to enjoin

"class III gaming activity located on Indian lands and conducted in violation of any Tribal-State

compact."  *Id.* § 2710(d)(7)(A)(ii); *see Cabazon Band of Mission Indians v. Wilson*, 124 F.3d 1050,

1059-60 (9th Cir. 1997) ("Outside the express provisions of a compact, the enforcement of IGRA's

---

[4] The UIGEA claim may be brought by the United States or using the "enforcement authorities specified in an applicable Tribal-State Compact."  31 U.S.C. § 5365(b)(3)(A)(i), (ii).  As shown below, *see* note 5, none of the Plaintiff tribes has a compact that prohibits gaming activities by non-tribal members such as Robinhood and Kalshi.

prohibitions on class III gaming remains the exclusive province of the federal government.").  Plaintiffs

do not satisfy either element.  Kalshi's and Robinhood's activities are not "located on Indian lands," as

discussed above.  Nor is any of the event contract trading "conducted in violation of any Tribal-State

compact."  Only one Plaintiff tribe has a compact with the State of California, and that compact does not

prohibit any conduct by Robinhood or Kalshi.[5]

## B.    Plaintiffs Have Not Shown Irreparable Harm.

Plaintiffs also cannot establish irreparable harm.  Despite Plaintiffs' assertion that an

infringement on their tribal sovereignty automatically constitutes irreparable harm, there is no tribal

sovereignty interest at stake here.  Indian tribes have no sovereign powers over non-Indians such as

Robinhood and Kalshi, except in narrow circumstances not present here.  *See Montana v. United States*,

450 U.S. 544, 565 (1981) (holding that, as a "general proposition," "the inherent sovereign powers of an

Indian tribe do not extend to the activities of nonmembers of the tribe"); *Evans v. Shoshone-Bannock*

*Land Use Policy Comm'n*, 736 F.3d 1298, 1302 (9th Cir. 2013) ("[T]ribes do not, as a general matter,

possess authority over non-Indians who come within their borders …." (internal quotation omitted));[6]

*see also* Kalshi Opposition at 21.  Moreover, Congress can limit or eliminate tribal sovereignty, as (to

the extent the tribes had any inherent sovereignty over gaming activities involving non-members)

Congress did here with the "exclusive jurisdiction" provision of the CEA and the UIEGA carveout for

CFTC-regulated transactions.  *See Santa Clara Pueblo v. Martinez*, 436 U.S. 49, 56 (1978) ("Congress

has plenary authority to limit, modify, or eliminate powers of local self-government which the tribes

---

[5] Plaintiffs submitted a declaration citing to Paragraph 4.1(c) of the Picayune Rancheria 1999 Compact, which authorizes the *tribe* to conduct certain Class III gaming on its lands and prevents the *tribe* from conducting Internet gaming unless "others … are permitted to do so under state and federal law." ECF 35-2, Carillo Decl. ¶ 13.  That provision applies only to the tribe, not to non-tribal members such as Robinhood and Kalshi.  *See* Declaration of Antony L. Ryan in Support of Robinhood Defendants' Opposition to Plaintiffs' Motion for Preliminary Injunction ("Ryan Decl.") Ex. 1, Picayune Rancheria 1999 Compact.  The other two Plaintiffs have secretarial procedures, not compacts, and therefore do not meet the requirements of 25 U.S.C. § 2710(d)(7)(A)(ii); and in any event, those procedures likewise operate only against the tribes.  *See* California Gambling Control Commission,  Tribal-State Class III Gaming Compacts, Secretarial Procedures for Class III Gaming, Casinos, and Payments, https://www.cgcc.ca.gov/?pageID=compacts (noting that Blue Lake Rancheria and Chicken Ranch Rancheria of Me-Wuk Indians operate under Secretarial Procedures—not Compacts); *see also* Ryan Decl. Ex. 2, Blue Lake Rancheria Secretarial Procedure; Ryan Decl. Ex. 3, Chicken Ranch Rancheria of Me-Wuk Indians Secretarial Procedures.

[6] This applies with even greater force here because, as stated above, Robinhood and Kalshi did not come within the borders of Indian lands.

otherwise possess.").  The cases Plaintiffs cite in their Motion are inapposite because they deal with

intrusions on tribal sovereignty by *states* or their local subdivisions.  *See, e.g.*, *Ute Indian Tribe of the*

*Uintah & Ouray Rsrv. v. Utah*, 790 F.3d 1000, 1003 (10th Cir. 2015) (suit against the State of Utah and

local governments).  Because Robinhood and Kalshi are private entities whose conduct is authorized by

a federal regulatory scheme, there is no state intrusion on tribal sovereignty and no sovereign interest is

implicated.  *See* Kalshi Opposition at 21.

The other harms alleged in Plaintiffs' Motion are economic (and any causal link to Defendants'

conduct is highly speculative, at best).  All of these alleged harms (*e.g.*, harm to "Tribes' class III

gaming markets," loss of "gaming revenues" and "divert[ed] profits," *see* ECF 35, Motion at 16, 19) are

remediable by money damages.  *See Ariz. Dream Act Coal. v. Brewer*, 757 F.3d 1053, 1068 (9th Cir.

2014) ("[I]rreparable harm is traditionally defined as harm for which there is no adequate legal remedy,

such as an award of damages ...."); *see also* Kalshi Opposition at 20-21.

## C.  The Balance of the Equities Weighs Against an Injunction, Including Because of the Substantial Harm to Robinhood.

The balance of the equities weighs strongly against a preliminary injunction.  In addition to the

hardships Kalshi would face, a preliminary injunction would separately cause substantial harm to

Robinhood.  A preliminary injunction enjoining Kalshi "from offering on the Tribes' Indian lands any

sports contracts," ECF 35-1, Proposed Order ¶ 2; *see also* ECF 35, Motion at 23, would cause major

disruption to the operation of Kalshi's exchange, *see* Kalshi Opposition at 22-23.  Kalshi explains in its

Opposition that if ordered by the Court to stop offering event contracts on Indian lands, Kalshi would

"likely need to pause all trading of sports event contracts on its exchange while it determined whether it

could develop a geofencing solution," which "would take months."  *Id.* at 23.  Kalshi would then "be

required to try and geofence around small, irregularly shaped parcels of land," which may not be

"feasible*.*"  *Id*. at 23.

Both scenarios directly harm Robinhood.  As an FCM, Robinhood cannot facilitate customer

orders for event contracts without access to a DCM, and Kalshi is the only DCM with which Robinhood

has a relationship for sports-related event contract trading.  Hickerson Decl. ¶ 7.  Without access to

Kalshi's DCM, Robinhood would be required to terminate users' orders, liquidate positions and pause

trading indefinitely.  *Id.* ¶ 7.  Losing access to Kalshi's DCM (either generally, or even just for customers in parts of California near Indian lands) would cause severe disruption to Robinhood's business, including loss of both customers and goodwill.  *See Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 841 (9th Cir. 2001) (recognizing that loss of "customers and accompanying goodwill" constitutes irreparable injury); *see also* Hickerson Decl. ¶ 7.

Without access to Kalshi's DCM, harm to Robinhood would be especially severe because of the volume and extent of Robinhood customers' sports-related events contracts trading.  *Id.* ¶ 8.  In California alone, Robinhood has tens of thousands of customers who have traded hundreds of millions of sports-related event contracts.  *Id.* ¶ 9.  The nationwide figures are even larger.  *Id.*  The impact would also go beyond sports-related event contracts, as customers who place sports-related event contracts through Robinhood also frequently trade other products, such as stocks, options or crypto.[7]  *Id.* ¶ 10.  If Robinhood's ability to offer sports-related event contracts were shut down (or even if geographically restricted in parts of California near Indian lands), Robinhood would lose direct event contract trading revenue and the Robinhood companies would risk losing the goodwill of those customers and associated revenue across other products.  *Id.*

It would also be impossible as a practical matter for Robinhood to restrict trading on Indian lands simply by "geofencing," as Plaintiffs suggest in their Complaint.  *See* ECF 1, Complaint ¶¶ 136, 182.  Plaintiffs seek an order enjoining Kalshi from "offering [sports-related event contracts] on the Tribes' Indian lands."  ECF 35-1, Proposed Order ¶¶ 2-3.  It is unclear how Robinhood could ever implement such a restriction for its customers.  Robinhood users may reside, place orders to buy or sell event contracts, travel with open contracts and hold contracts to resolution, all in different locations.  *See* Kalshi Opposition at 23.  As a result, Robinhood could not comply with an order like the one Plaintiffs seek against Kalshi without first being able to surveil its users, and then restricting trading or even unwinding open contracts every time any user crosses onto Indian lands.  Robinhood is unaware of how to accomplish this without, at minimum, imposing broad restrictions that extend beyond Indian lands.

Robinhood's existing technology cannot reliably identify whether a person is "on the Tribes'

---

[7] Robinhood customers trade stocks and options through Robinhood Financial LLC and Robinhood Securities, LLC and trade crypto through Robinhood Crypto, LLC.

Indian Lands." Declaration of Rajeev Krithivasan in Support of Robinhood Defendants' Opposition to Plaintiffs' Motion for Preliminary Injunction ("Krithivasan Decl.") ¶ 6. Presently, Robinhood can restrict trading only by looking at a customer's home address or approximate location using IP address. *Id.* ¶ 2. Home addresses are self-reported and do not identify where customers are located when they travel outside their homes. *Id.* ¶ 3. Locating individuals by IP address relies on cell tower and other network communications data, which is only accurate within a radius of a few miles at best. *Id.* ¶ 4. IP address location is unreliable for geolocating individuals on some Indian lands, given their relatively small size, irregular borders and proximity to other towns. For example, the Chicken Ranch Rancheria of the Me-Muk Indians comprises 40 acres, within only a few miles of the town of Jamestown, California, which is home to several thousand residents. *See* ECF 35-5 (Mathiesen-Powell Decl.); Ryan Decl. Ex. 8, Chicken Ranch Rancheria Census Map; Ryan Decl. Ex. 6, Chicken Ranch Rancheria Google Map; Ryan Decl. Ex. 7, Jamestown 2020 Census Data. The Chicken Ranch Rancheria also has a casino resort hotel located right off the exit of a state highway (Route 49), about 200 feet from the highway. [8] Ryan Decl. Ex. 6, Chicken Ranch Rancheria Google Map. As a result, Robinhood cannot currently geofence around many Indian lands without forfeiting customers in or passing through surrounding areas, including those who live or travel on roads or in towns near Indian lands. Krithivasan Decl. ¶¶ 6-7. Robinhood does not have the capability to geofence using more precise GPS technology tied to an individual user's device. *Id.* ¶ 8. Developing such capability (i) would be costly because it would require months to develop, with substantial internal programming resources and assistance from Apple, Google and outside vendors and (ii) would require users to affirmatively consent to share location data with Robinhood (which Robinhood does not currently require). *Id.*

### D.    The Public Interest Disfavors an Injunction.

Granting an injunction is also contrary to the public interest because it risks dismantling the comprehensive federal regulatory regime for derivatives trading under which Kalshi and Robinhood

---

[8] Similarly, Blue Lake Rancheria comprises only 26 acres, adjacent to the city of Blue Lake, home to over 1,000 residents; the tribal casino sits right off an exit from a state highway (Route 299), which is located about 500 feet from the casino building. *See* ECF 1, Complaint ¶ 9; Ryan Decl. Ex. 4, Blue Lake Rancheria Census Map; Ryan Decl. Ex. 5, Blue Lake Rancheria Google Map; Ryan Decl. Ex. 9, City of Blue Lake Census Data.

CASE NO. 3:25-cv-06162-JSC                                    ROBINHOOD OPPOSITION TO PI MOTION

1  lawfully operate. *See Golden Gate Restaurant Ass'n v. City & Cnty. of San Francisco*, 512 F.3d 1112,

2  1127 (9th Cir. 2008) ("The public interest may be declared in the form of a statute." (internal citation

3  omitted)).  Congress spoke clearly and unequivocally when it declared that the CFTC "shall have

4  exclusive jurisdiction" over commodity futures and swaps trading on CFTC-designated exchanges.  7

5  U.S.C. § 2(a)(1)(A).  Congressional statements about the creation of the CFTC confirm that establishing

6  the CFTC and endowing it with exclusive jurisdiction was meant to "avoid unnecessary, overlapping

7  and duplicative regulation."  *FTC v. Ken Roberts Co.*, 276 F.3d 583, 588 (D.C. Cir. 2001) (quoting 120

8  Cong. Rec. 34,736 (1974) (remarks of House Agriculture Committee Chairman Poage)).

9          Indeed, Robinhood has brought suits seeking injunctive relief against State Attorneys General in

10  two states (New Jersey and Nevada) on the basis of federal preemption, and the state regulators have

11  agreed to a consent order not to enforce against Robinhood, in light of preliminary injunctions in favor

12  of Kalshi in federal district court in those states.  *See Robinhood Derivatives, LLC v. Flaherty*, No. 1:25-

13  cv-14723 (D.N.J. filed Aug. 29, 2025), ECF 22 (State agreed to a consent order maintaining the status

14  quo pending the Third Circuit decision on the appeal from the grant of preliminary injunction to Kalshi

15  in *KalshiEx LLC v. Flaherty*, No. 25-cv-2152, 2025 WL 1218313 (D.N.J. Apr. 28, 2025), *appeal filed*,

16  No. 25-1922 (3d Cir. May 8, 2025)); *Robinhood Derivatives, LLC v. Dreitzer*, No. 2:25-cv-01541 (D.

17  Nev. filed Aug. 29, 2025), ECF 24 (State agreed to a consent order maintaining the status quo pending a

18  decision on Robinhood's preliminary injunction motion; the same court granted a preliminary injunction

19  in *KalshiEx, LLC v. Hendrick*, No. 25-00575, 2025 WL 1073495, at *8 (D. Nev. Apr. 9, 2025)).[9]  This

20  Court should not upend the federal regulatory regime established under the CEA and UIGEA by issuing

21  a preliminary injunction on Plaintiffs' novel and meritless IGRA theory.

22  **V.     CONCLUSION**

23          For the reasons set forth herein and in the Kalshi Opposition, the Robinhood Defendants

24  respectfully request that this Court deny Plaintiffs' Motion.

25  ─────────────────────
[9] Robinhood also recently filed suit seeking injunctive relief against the Attorney General for the

26  Commonwealth of Massachusetts following litigation commenced by Massachusetts against Kalshi.  *See
Robinhood Derivatives, LLC v. Campbell*, No. 1:25-cv-12578 (D. Mass. filed Sept. 15, 2025).

27  Robinhood has not brought suit in Maryland but understands that a district court there denied Kalshi's
preliminary injunction motion, which Kalshi has appealed to the Fourth Circuit.  *See KalshiEx LLC v.*

28  *Martin*, No. 25-cv-1283, 2025 WL 2194908 (D. Md. Aug. 1, 2025), *appeal filed*, No. 25-1892 (4th Cir.
Aug. 6, 2025).

1 | DATED: September 25, 2025

Respectfully submitted,

2

**CRAVATH, SWAINE & MOORE LLP**

3

4

*/s/ Antony L. Ryan*

ANTONY L. RYAN

5

KEVIN J. ORSINI
BRITTANY L. SUKIENNIK

6

7

**LEHOTSKY KELLER COHN LLP**

8

9

*/s/ Mithun Mansinghani*

MITHUN MANSINGHANI

10

11

**CONRAD | METLITZKY | KANE LLP**

12

13

*/s/ Mark R. Conrad*

MARK R. CONRAD

14

15

*Attorneys for Robinhood Markets, Inc.,*

16

*and Robinhood Derivatives LLC*

17

18

19

20

21

22

23

24

25

26

27

28

12