LESTER J. MARSTON
California State Bar No. 081030
LAW OFFICES OF RAPPORT AND MARSTON
405 West Perkins Street
Ukiah, California 95482
Telephone: 707-462-6846
Facsimile: 707-462-4235
Email: ljmarston@rmlawoffice.net

*Attorney for Plaintiffs*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

BLUE LAKE RANCHERIA, CHICKEN RANCH RANCHERIA OF ME-WUK INDIANS, and PICAYUNE RANCHERIA OF THE CHUKCHANSI INDIANS,

                Plaintiffs,

v.

KALSHI INC., KALSHIEX LLC, ROBINHOOD MARKETS, INC., ROBINHOOD DERIVATIVES LLC, and DOES 1-20,

                Defendants.

Case No.: 25-cv-06162-JSC

**PLAINTIFFS' REPLY TO DEFENDANTS KALSHI INC. AND KALSHIEX LLC'S OPPOSITION TO PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION**

Date: October 23, 2025
Time: 10:00 a.m.
Courtroom: 8
Judge: Hon. Jacqueline Scott Corley

# TABLE OF CONTENTS

INTRODUCTION ...................................................................................................................1

ARGUMENT ..........................................................................................................................1

I.     THE TRIBES ARE LIKELY TO SUCCEED ON THE MERITS. ...............................1

    A.   The Court has jurisdiction over the Tribes' IGRA claim and IGRA applies to Kalshi's activities on Indian lands. ........................................................................ 1

    B.   The UIGEA does not Preclude Application of IGRA to Kalshi's Class III Gaming on the Tribes' Indian lands. ....................................................................... 5

    C.   Kalshi's Sports Gambling Contracts Facially Violate 17 C.F.R. § 40.11. .................. 6

    D.   The Tribes Have Standing to Bring a Lanham Act Claim and Are Likely to Succeed on the Merits of that Claim. ......................................................................... 6

    E.   The Tribes Have Demonstrated a False Statement of Fact. .......................................... 8

    F.   The Tribes Have Shown a Likelihood of Deception and Injury. ................................ 9

II.    THE TRIBES WILL SUFFER IRREPARABLE HARM IN THE ABSENCE OF THE REQUESTED INJUNCTIVE RELIEF. ............................................................ 9

III.   THE EQUITIES AND THE PUBLIC INTEREST TIP STRONGLY IN FAVOR OF THE TRIBES. ...................................................................................................... 12

CONCLUSION .....................................................................................................................15

1

## TABLE OF AUTHORITIES

2

**Cases**

3  *AECOM Energy & Constr., Inc. v. Ripley*, 348 F. Supp. 3d 1038 (C.D. Cal. 2018) ................. 7, 9

4  *Alfasigma USA, Inc. v. First Databank, Inc.*, No. 18-cv-06924-HSG, 2022 U.S. Dist. LEXIS 55448

5    (N.D. Cal. Mar. 28, 2022) ........................................................................................................ 8

6  *Brown v. Gardner*, 513 U.S. 115 (1994) .................................................................................... 2

7  *Cal. Dep't of Tax & Fee Admin. v. Superior Court*, 48 Cal. App. 5th 922 (2020) ...................... 11

8  *City & Cty. of S.F. v. Trump*, 779 F. Supp. 3d 1077 (N.D. Cal. 2025) ........................................ 12

9  *Flynt Distrib. Co. v. Harvey*, 734 F.2d 1389 (9th Cir. 1984) .......................................................... 7

10  *Johnson v. Couturier*, 572 F.3d 1067 (9th Cir. 2009) .................................................................... 7

11  *KalshiEX LLC v. CFTC*, No. CV 23-3257 (JMC), 2024 WL 4164694 ...................................... 9

12  *KalshiEX LLC v. Commodity Futures Trading Comm'n*, No. CV 23-3257 (JMC), 2024 WL

13    4164694 (D.D.C. Sept. 12, 2024) .......................................................................................... 6

14  *KalshiEX LLC v. Flaherty*, 2025 WL 1218313 (D.N.J. Apr. 28, 2025) .................................... 9

15  *KalshiEX LLC v. Hendrick*, 2025 WL 1073495 (D. Nev. Apr. 9, 2025) ...................................... 9

16  *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118 (2014) ............................ 8

17  *Lujan v. Defs. of Wildlife*, 504 U.S. 555 (1992) ........................................................................ 7

18  *Michigan v. Bay Mills Indian Cmty.*, 572 U.S. 782 (2014) ........................................................ 3

19  *Stand Up for California! v. U.S. Dep't of the Interior*, 959 F.3d 1154 (9th Cir. 2020).......... 1, 2, 3

20  *State of California v. Iipay Nation of Santa Ysabel*, 898 F.3d 960 (9th Cir. 2018) ...................... 4

21  *Suzie's Brewery Co. v. Anheuser-Busch Cos., LLC*, 519 F. Supp. 3d 839 (D. Or. 2021) ............. 7

22  *ThermoLife Int'l, LLC v. Gaspar Nutrition Inc.*, 648 F. App'x 609 (9th Cir. 2016) ...................... 8

23  *Tohono O'Odham Nation v. Schwartz*, 837 F. Supp. 1024 (D. Ariz. 1993) ................................ 10

24  *TrafficSchool.com, Inc. v. Edriver Inc.*, 653 F.3d 820 (9th Cir. 2011).......................................... 7

25  *W. Flagler Assocs. v. Haaland*, 573 F. Supp. 3d 260 (D.D.C. 2021) .............................. 4, 7, 8, 10

26  *W. Flagler Assocs., Ltd. v. Haaland*, 71 F.4th 1059 (2023) ........................................................ 4

ii

**Statutes**

7 U.S.C. § 7 ............................................................................................................. 6

15 U.S.C. § 1116 ..................................................................................................... 10

18 U.S.C. § 1084 ....................................................................................................... 8

18 U.S.C. § 1955 ....................................................................................................... 8

25 C.F.R. § 140.21 ................................................................................................... 11

25 U.S.C. § 2702 ..................................................................................................... 11

25 U.S.C. § 2710 ........................................................................................... 1, 2, 3, 5

31 U.S.C. § 5361 ....................................................................................................... 5

31 U.S.C. § 5362 ................................................................................................... 4, 5

Public Law 117-103 ................................................................................................ 10

Ariz. Admin. Code § R19-4-117 .............................................................................. 12

Cal. Penal Code § 337a(1) ......................................................................................... 8

**Other Authorities**

Antonin Scalia and Bryan A. Garner. Scalia and Garner's Reading Law: The Interpretation of Legal Texts (Thomson West, Kindle Ed. 2012) ............................................................ 2

Cal. Con. Art IV, §19 (f) ........................................................................................... 3

CFTC Letter No. 25-36, https://www.cftc.gov/csl/25-36/download ............................ 14

Congressional Record: H.R. 4173, the Dodd-Frank Wall Street reform, 111th Cong., 156 Cong. Rec. S5902-01, at S5906 (July 15, 2010) ........................................................ 5, 6, 9

https://www.justice.gov/tribal/2013-and-2022-reauthorizations-violence-against-women-act-vawa ..................................................................................................................... 11

Kalshi Privacy Policy, p. 2, §1(a), https://kalshi.com/docs/kalshi-privacy-policy.pdf ................ 13

Ramsey, Eric, *Kalshi Surges To A New High In Prediction Volume, Legal Sports Rep.* (Sep. 29, 2025), https://www.legalsportsreport.com/242734/kalshi-new-volume-record-sept-25/ ........... 8

PLAINTIFFS' REPLY TO DEFENDANTS KALSHI INC. AND KALSHIEX LLC'S
OPPOSITION TO PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION

Trading Places, "We are Commodity Brokers," https://www.youtube.com/watch?v=gAq3jjc-Wv4 ................................................................................................................................ 5

U.S. Constitution, Article I, Section 8, Clause 3 ........................................................ 10

**Regulations**

17 C.F.R. § 40.11 ......................................................................................... 6, 9

17 C.F.R. § 40.3 ............................................................................................. 6

17 C.F.R. §§ 38.150, 38.151 ......................................................................... 14

25 C.F.R. § 140.9 .......................................................................................... 10

25 C.F.R. § 502.4 ........................................................................................... 7

PLAINTIFFS' REPLY TO DEFENDANTS KALSHI INC. AND KALSHIEX LLC'S
OPPOSITION TO PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION

1

## INTRODUCTION

In the two months since the plaintiff Tribes filed this lawsuit, Kalshi has expanded its sports gambling operation from taking bets on single game outcomes to offering build-your-own three-leg parlays on team and player propositions. No matter how you slice it, Kalshi's sports gambling contracts constitute class III gaming and that gaming is occurring on the Tribes' Indian lands. Kalshi's efforts to convince this Court that its contracts constitute commodities trading regulated pursuant to the Commodity Exchange Act, and that it is not conducting class III gaming on the Tribes' Indian lands, are not tenable. In this reply, the Tribes demonstrate that they have met all of the elements required for the issuance of a preliminary injunction that prohibits Kalshi from offering class III gambling on the Tribes' Indian lands.

## ARGUMENT

### I.    THE TRIBES ARE LIKELY TO SUCCEED ON THE MERITS.

#### A.    The Court has jurisdiction over the Tribes' IGRA claim and IGRA applies to Kalshi's activities on Indian lands.

Kalshi leads with the argument that this Court lacks jurisdiction over the claims asserted by Chicken Ranch and Blue Lake Rancheria because they conduct class III gaming pursuant to secretarial procedures, rather than a compact, and, therefore, these two Tribes cannot rely upon the cause of action in IGRA that authorizes a court to enjoin class III gaming on their reservations. 25 U.S.C. § 2710(d)(7)(A)(ii) ("The United States district courts shall have jurisdiction over . . . any cause of action initiated by a[n] … Indian tribe to enjoin a class III gaming activity located on Indian lands and conducted in violation of any Tribal-State compact."). Kalshi Def.'s Opp'n to Pl.'s Mot. for Prelim. Inj. at 11–12, Dkt. No. 44 ("Opp."). Kalshi's argument fails because the Ninth Circuit has held that secretarial procedures are the functional equivalent to a compact and because, if, accepted, Kalshi's argument would render entire sections of IGRA a nullity.

In *Stand Up for California! v. U.S. Dep't of the Interior*, 959 F.3d 1154 (9th Cir. 2020) ("*Stand Up*"), the Ninth Circuit addressed whether the IGRA only exempts compacts, and not procedures, from the Johnson Act. In upholding secretarial procedures as lawful class III gaming mechanisms, the *Stand Up* Court held:

PLAINTIFFS' REPLY TO DEFENDANTS KALSHI INC. AND KALSHIEX LLC'S
OPPOSITION TO PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION

The statute specifies that "Class III gaming activities shall be lawful on Indian lands *only if* such activities are . . . conducted in conformance with a Tribal-State compact entered into by the Indian tribe and the State." 25 U.S.C. § 2710(d)(1) (emphasis added). But [procedures], by definition, are issued only when no Tribal-State compact has been reached and are the final remedy for a state's refusal to negotiate. *Id.* § 2710(d)(7)(B)(vii). If [procedures] are not treated as equivalent to [compacts] for the purposes of § 2710(d)(1), then [procedures] can never comply with the only situations in which class III gaming is lawful on Indian lands. [Procedures] would always, by definition, violate the very Act that creates those Procedures.

*Id.* at 1159–60 (emphasis in original).

The *Stand Up* Court applied the "presumption of consistent usage" canon[1] and concluded that "an interpretation in which [procedures] are functionally equivalent to a compact in the context of § 2710(d)(1), but not in the context of the exception . . . would contravene the 'presumption that a given term is used to mean the same thing throughout a statute.'" *Id.* at 1160 (quoting *Brown v. Gardner*, 513 U.S. 115, 118 (1994)). The *Stand Up* court's logic holds here: an interpretation in which procedures are functionally equivalent to a compact in the context of § 2710(d)(1), but not in the context of the right to seek injunctive relief from this Court under § 2710(d)(7)(A)(ii), creates a statutory inconsistency that "would render those [p]rocedures a 'nullity' and inappropriately deprive § 2710(d)(7)(B)(vii) of its effect." *Id.* at 1160. Clearly, procedures are equivalent to compacts in establishing the rights and duties governing regulation of class III gaming, including the right to enjoin unregulated, unlawful class III gaming on Indian land. Thus, Kalshi's interpretation must be rejected, and the Court should find that it has jurisdiction to adjudicate the claims of all plaintiff-Tribes and provide the injunctive relief the Tribes request.

Kalshi's assertion that the Court lacks jurisdiction over Picayune's IGRA claim is similarly untenable.[2] Kalshi argues that it is not conducting class III gaming "in violation of the compact," because Picayune's compact only prohibits *the Tribe* from conducting class III gaming through use of the Internet. Kalshi also asserts that, under any circumstances, it is not conducting gaming on the Tribes' Indian lands. This argument fails, as well.

---

[1] *See* Antonin Scalia and Bryan A. Garner. Scalia and Garner's Reading Law: The Interpretation of Legal Texts at 145–147 (Thomson West, Kindle Ed. 2012).

[2] Kalshi's argument that it is not conducting gaming in violation of Picayune's compact would also apply to an argument that Kalshi is not conducting gaming in violation of Blue Lake's or Chicken Ranch's secretarial procedures, because, as discussed above, the procedures are the functional equivalent of a compact.

PLAINTIFFS' REPLY TO DEFENDANTS KALSHI INC. AND KALSHIEX LLC'S
OPPOSITION TO PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION

Only tribal class III gaming can be conducted on Indian lands and must be conducted in compliance with IGRA. *Stand Up!*, 959 F.3d 1158; 25 U.S.C. § 2710(d)(1); Cal. Con. Art IV, §19 (f). Picayune's compact also requires that class III gaming conducted on the Tribe's Indian lands comply with IGRA. Picayune Compact, pp. 1-2, Sec. 1 ("The terms of this Gaming Compact are designed and intended to: . . . (b) Develop and implement a means of regulating Class III gaming, and only Class III gaming, on the Tribe's Indian lands to ensure its fair and honest operation *in accordance with IGRA*, . . . . (emphasis added)). Wong Declaration, DKT # 44-1, Exhibit B. Thus, class III gaming that is not conducted in compliance with IGRA constitutes a violation of Picayune's compact. Internet gaming is, moreover, explicitly prohibited by Picayune's compact. Picayune Compact, Sec. 4.1 ("the Tribe will not offer such games through use of the Internet unless others in the state are permitted to do so under state and federal law"). Kalshi asserts that this prohibition does not apply to Kalshi, it only applies to the Tribe. Once again, this is not a reasonable interpretation. The reason that the prohibition is phrased  "the Tribe will not . . ." is because the Tribe is the only entity authorized to conduct class III gaming on its lands. There would be no reason to prohibit third parties from internet gaming on tribal lands. They are prohibited from conducting any form of class III gaming on the Tribe's Indian lands.

Next, rather than deny outright (because it cannot) that bets on sports can be placed by persons located on the Tribes' reservations, including inside their casinos, Kalshi argues that the Tribes cannot invoke the Court's jurisdiction under 25 U.S.C. § 2710(d)(7)(A)(ii) because "running a derivatives exchange from New York City [does not] amount[] to conduct 'on Indian lands.'" Opp. at 13. This argument is hyper-technical and it conflicts with both the law and common sense. The relevant inquiry is where the bet is made, not where the servers a located.

As Kalshi notes: "IGRA uses the phase [*sic*] 'on Indian lands' in virtually every section of the statute, emphasizing Congress's geographic focus," pointing to *Michigan v. Bay Mills Indian Cmty.*, 572 U.S. 782, 795 (2014) ("*Bay Mills*"). But what *Bay Mills* actually clarifies is that "'class III gaming activity' is what goes on in a casino—each roll of the dice and spin of the wheel." *Id.* at 792. If the operative activity is the roll of the dice or the spin of the wheel—namely consumer interaction with gaming devices—then the operative activity here must take place where the

PLAINTIFFS' REPLY TO DEFENDANTS KALSHI INC. AND KALSHIEX LLC'S
OPPOSITION TO PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION

consumer places the bet through the Kalshi app. A building full of slot machines without customers pulling the levers is not a casino, it is a warehouse.

Kalshi then points to *State of California v. Iipay Nation of Santa Ysabel*, 898 F.3d 960 (9th Cir. 2018) ("*Iipay*") and the UIGEA, which both actually support the Tribes' argument—not Kalshi's. In *Iipay*, the tribe argued that its online gaming activity at issue occurred exclusively on Indian lands, rather than where off-reservation bets were placed, because the gaming occurred on the tribe's servers, which were located on Indian lands.

The Ninth Circuit rejected that argument:

> [A]s the Government argues, the patrons are engaging in "gaming activity" by initiating a bet or a wager in California and off Indian lands. Consistent with the Supreme Court's holding in *Bay Mills*, the act of placing a bet or wager is the "gambling in the poker hall," not "off-site licensing or operation of the games." [citation]. As a result, it seems clear that at least some of the "gaming activity" associated with [Iipay's gaming] does not occur on Indian lands and is thus not subject to Iipay's jurisdiction under IGRA.

*Id*. at 967.

The inverse is true here. Because the bets on the outcome of sports events can be placed on Indian lands using the Kalshi app, "it seems clear that at least some of the 'gaming activity' associated" with betting on sports events occurs on Indian lands and is thus subject to the Tribes' jurisdiction under the IGRA. *Id. See also, W. Flagler Assocs. v. Haaland*, 573 F. Supp. 3d 260, 273 (D.D.C. 2021), *reversed on other grounds*, *W. Flagler Assocs., Ltd. v. Haaland*, 71 F.4th 1059 (2023) ("And although the Compact 'deem[s]' all sports betting to occur at the location of the Tribe's 'sports book(s)' and supporting servers, . . . this Court cannot accept that fiction.").

The UIEGA further supports the argument that the relevant inquiry is where the bettor is located when making the bet. That statute provides that "[t]he term 'unlawful Internet gambling' means to place, receive, or otherwise knowingly transmit a bet or wager by any means which involves the use, at least in part, of the Internet where such bet or wager is unlawful under any applicable Federal or State law in the State or Tribal lands in which the bet or wager is initiated, received, or otherwise made." 31 U.S.C. § 5362. The conducting of internet gaming occurs on both ends of the process, where it is initiated and where it is received. Were Kalshi's interpretation to be accepted, only the processing of the bet is gaming. Kalshi is, accordingly, conducting class III

PLAINTIFFS' REPLY TO DEFENDANTS KALSHI INC. AND KALSHIEX LLC'S
OPPOSITION TO PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION

gaming on Indian lands for the purposes of 25 U.S.C. § 2710(d)(7)(A)(ii).

**B.    The UIGEA does not preclude application of IGRA to Kalshi's Class III gaming on the Tribes' Indian lands.**

Kalshi asserts that, in supporting their IGRA claim, the Tribes have intentionally omitted analysis of applicable, controlling law, the UIGEA.[3] Kalshi asserts that the UIGEA's "carve out" for derivatives trading by excluding from the definition of "bet or wager" transactions conducted in compliance with the Commodity Exchange Act ("CEA"), 31 U.S.C. § 5362(1)(E)(ii), has the effect of insulating them from regulation pursuant to IGRA. The UIGEA, however, does not control or displace IGRA, nor, by its own terms, can it: "No provision of this subchapter shall be construed as altering, limiting, or extending any Federal or State law or Tribal-State compact prohibiting, permitting, or regulating gambling within the United States." 31 U.S.C. § 5361(b). The UIGEA also has a "carve-out" exempting IGRA transactions. 31 U.S.C. § 5362(10)(C). Thus, by its own terms, the UIGEA does not control or limit the application of IGRA to class III gaming on Indian lands.

Kalshi's overarching contention seems to be that commodities trading and gambling are mutually exclusive.[4] The CEA/CFTC regulations and the UIGEA disprove that contention. The amendments to the CEA reveal that Congress intended to prevent event contracts from being used as a mechanism for gambling on sports and entrusted the CFTC to prohibit such contracts:

> [Senator] Dodd and I maintained this provision in the conference report to assure that the Commission has the power to prevent the creation of futures and swaps markets that would allow citizens to profit from devastating events and also prevent gambling through futures markets. I thank the Senator from California [Feinstein] for encouraging Chairman Dodd and me to include it. I agree that this provision will strengthen the government's ability to protect the public interest from gaming contracts and other events contracts.

Congressional Record: H.R. 4173, the Dodd-Frank Wall Street reform, 111th Cong., 156 Cong. Rec. S5902-01, at S5906 (July 15, 2010).

Kalshi's assertion that UIGEA prevents the Court from applying IGRA to Kalshi's class III gaming on the Tribes' Indian lands must be rejected.

---

[3] It is important to note that the UIGEA is not a substantive gaming law. It is a financial enforcement statute enacted to punish financial institutions for completing transactions involving online gambling, as part of the SAFE Port Act. 152 Cong. Rec. E2152-04 at E2153.

[4] Trading Places, "We are Commodity Brokers," https://www.youtube.com/watch?v=gAq3jjc-Wv4

PLAINTIFFS' REPLY TO DEFENDANTS KALSHI INC. AND KALSHIEX LLC'S
OPPOSITION TO PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION

1

**C.     Kalshi's sports gambling contracts facially violate 17 C.F.R. § 40.11.**

2

Kalshi has failed to address, perhaps intentionally, the Tribes' arguments that: (1) Kalshi

3 is prohibited from offering its gaming contracts under 17 C.F.R. § 40.11(a); and (2) that it has an

4 adequate, available remedy for seeking clarity from the CFTC on the legality of its contracts

5 pursuant to 17 C.F.R. § 40.3. Notice of Mot. and Mot. for Prelim. Inj. at 4–5, 18, 21, Dkt. No. 35

6 ("MPI"). The Court should therefore adopt the Tribes' interpretation of those regulations, which

7 support a finding that the Tribes are likely to succeed on the merits.

8

The CEA provides: "No agreement, contract, or transaction *determined by the Commission*

9 *to be contrary to the public interest* under clause (i) [enumerated subjects] may be listed or made

10 available for clearing or trading on or through a registered entity." 7 U.S.C. § 7a-2(c)(5)(C)(ii)

11 (emphasis added). In promulgating Section 40.11(a), the CFTC made such a determination, arrived

12 at through formal rule making, declaring the enumerated subjects in 7 U.S.C. § 7a-2(c)(5)(C)(i)

13 presumptively prohibited as contrary to the public interest.[5] *See* 17 C.F.R. § 40.11(a).

14

Under the regulations, a "registered entity," "shall not list" a contract that "involves, relates

15 to, or references . . . gaming." § 40.11(a). The District Court stated as much in *KalshiEX LLC v.*

16 *Commodity Futures Trading Comm'n*, No. CV 23-3257 (JMC), 2024 WL 4164694 (D.D.C. Sept.

17 12, 2024), *dismissed,* No. 24-5205, 2025 WL 1349979 (D.C. Cir. May 7, 2025) ("*KalshiEX*")

18 (defining gaming as "'the practice or activity of playing games' and 'playing games for stakes.'").

19 The Court should grant injunctive relief on this basis alone and find that the Tribes are likely to

20 succeed on the merits of their claims because Kalshi's contracts are unlawful under the CEA and

21 the plain language of § 40.11.

22

**D.     The Tribes have standing to bring a Lanham Act Claim and are likely to succeed on the merits of that claim.**

23

Kalshi's argument that the Tribes lack standing because they are not direct competitors and

24 have not shown an injury fails. The Tribes and Kalshi compete directly for the same pool of

25 consumer dollars allocated to gaming. Kalshi's marketing strategy, which explicitly uses terms

26 like "sports betting" (a class III gaming activity), is designed to attract gamblers and divert business

27

28

---

[5] *See* 156 Cong. Rec. S5902-01 at S5906.

PLAINTIFFS' REPLY TO DEFENDANTS KALSHI INC. AND KALSHIEX LLC'S
OPPOSITION TO PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION

from the Tribes' highly regulated casinos. *See* 25 C.F.R. § 502.4.

In *W. Flagler Assocs*, 573 F. Supp. 3d 260, the court held that the plaintiffs, who operated brick-and-mortar casinos but not sports gambling, demonstrated competitive injury where the Seminole Tribe of Florida had negotiated for the right to offer online sports wagering. The plaintiffs alleged that a compact allowing online sports wagering would "divert business that would have been spent at [their facilities] and cause it to be spent on online sports gaming offered by the Tribe." *Id.* at 268. The court noted that this "prediction [was] reasonable and hardly speculative." *Id.* (internal citations omitted) (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992)).[6] The Tribes' situation is essentially the same as that of the plaintiffs in *W. Flagler Assocs*. Here, the Tribes offer brick and mortar casino gaming (in which patrons have been observed on Kalshi's platform. Ramos Decl. ¶¶ 40-41[7]), but not sports gambling.

With regard to standing, the Tribes are entitled to the presumption of injury articulated in *TrafficSchool.com, Inc. v. Edriver Inc.*, 653 F.3d 820, 826 (9th Cir. 2011), which requires that a "defendant and plaintiff are direct competitors and defendant's misrepresentation has a tendency to mislead consumers." Because the Tribes and Kalshi are direct competitors for consumer wagering dollars and because the challenged advertisements are literally false, as discussed below, a commercial injury sufficient for standing can be presumed. Specifically, the claim of "sports betting legal in all 50 states" is a literally false statement of fact, thereby triggering a presumption of consumer deception. *See AECOM Energy & Constr., Inc. v. Ripley*, 348 F. Supp. 3d 1038, 1056 (C.D. Cal. 2018).

---

[6] In support of a motion for summary judgment, Plaintiff West Flagler conducted a survey of its patrons. The survey results showed that between ten and fifteen percent of its patrons would "wager online and shift a non-zero amount of their current gambling spending away from" games West Flagler currently offered. *W. Flagler Assocs.*, 573 F. Supp. 3d at 268. The survey further explained that the above percentage rested on conservative assumptions that likely understated the full universe of individuals whose behavior would change. *Id.*; *See* Plaintiffs' Request for Judicial Notice in Support of Plaintiffs' Reply, Exhibit A.

[7] Kalshi asserts that these Paragraphs contain hearsay. Opp. at 18. The rules of evidence do not apply strictly to preliminary injunction proceedings due to the urgency of obtaining a preliminary injunction. *Suzie's Brewery Co. v. Anheuser-Busch Cos., LLC*, 519 F. Supp. 3d 839, 845 (D. Or. 2021). A district court may consider hearsay in deciding whether to issue a preliminary injunction. *Johnson v. Couturier*, 572 F.3d 1067, 1083 (9th Cir. 2009). "[A] trial court may give even inadmissible evidence some weight, when to do so serves the purpose of preventing irreparable harm before trial." *Id.* (citing *Flynt Distrib. Co. v. Harvey*, 734 F.2d 1389, 1394 (9th Cir. 1984)).

PLAINTIFFS' REPLY TO DEFENDANTS KALSHI INC. AND KALSHIEX LLC'S
OPPOSITION TO PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION

Even if the Court finds that the Tribes and Kalshi are not direct competitors, the definitive standing test for Lanham Act claims is set by *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 136 (2014) (holding that, to come within a zone of interests in a § 1125(a) false-advertising suit, a plaintiff must allege an injury to a commercial interest in reputation or sales flowing directly from the deception wrought by the defendant's advertising). The Tribes have alleged an injury sufficient to fall within this zone. As the *W. Flagler Assocs.* court found, online sportsbook offerings affect revenue at brick-and-mortar casinos that do not offer sports wagering. Importantly, Kalshi's advertisements do not highlight minor product characteristics; they go to something more fundamental, the legality of a specific gaming activity.

With respect to proximate causation, Kalshi's argument that the Tribes' injury lacks proximate cause under the *Lexmark* standard is based on a narrow interpretation of the direct, causal link between the false advertisements and the Tribes' competitive injury. In *Alfasigma USA, Inc. v. First Databank, Inc.*, No. 18-cv-06924-HSG, 2022 U.S. Dist. LEXIS 55448, at *17 (N.D. Cal. Mar. 28, 2022), the injury flowed through complex, independent third-party intermediaries (e.g., insurers) whose actions attenuated the causal link to the plaintiff, whereas Kalshi's claim of "Sports betting legal in all 50 states" targets and influences the ultimate consumer, the gambler, without an intermediary. The link for proximate causation is also evident in the relationship between Kalshi's advertising and its explosive commercial success, which in turn damages the Tribes. *See* Ramsey, Eric, *Kalshi Surges To A New High In Prediction Volume, Legal Sports Rep.* (Sep. 29, 2025), https://www.legalsportsreport.com/242734/kalshi-new-volume-record-sept-25/.

### E.     The Tribes have demonstrated a false statement of fact.

While Kalshi notes that statements that a product is "legal" are "generally inactionable," *ThermoLife Int'l, LLC v. Gaspar Nutrition Inc.*, 648 F. App'x 609, 614-15 (9th Cir. 2016), Kalshi fails to also acknowledge that there exists a "well-established exception" to this rule: an opinion is actionable if it is made "by a speaker who lacks a good faith belief in the truth of the statement." *Id*. Regardless of the legality of "prediction" contracts on a registered DCM, sports betting is not legal in all 50 states. *See* Cal. Penal Code § 337a(1); 18 U.S.C. § 1084; 18 U.S.C. § 1955. Additionally, Kalshi has previously acknowledged that it views these contracts as "gaming" that

PLAINTIFFS' REPLY TO DEFENDANTS KALSHI INC. AND KALSHIEX LLC'S
OPPOSITION TO PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION

1    is prohibited by 17 C.F.R. § 40.11.[8] Thus, Kalshi cannot argue that it possessed a good faith belief

2    in the truth of the statement that betting on sports is legal nationwide.[9]

3           Additionally, Kalshi's use of the qualifiers "*on Kalshi*" and "*with Kalshi*," Opp. at 20, are

4    meaningless, as these qualifications do nothing to abate the confusion or falsity of the statement

5    that "Sports Betting [is] Legal in all 50 States." All "*on Kalshi*" does is identify the platform upon

6    which the illegal sports gambling is taking place.

7                  **F.**       **The Tribes have shown a likelihood of deception and injury.**

8           As explained above, the Tribes have established a likelihood of injury. Additionally,

9    because the Tribes have shown that Kalshi's advertisements are literally false statements, the

10   Tribes are entitled to a presumption of consumer deception. *See AECOM Energy & Constr., Inc.*,

11   348 F. Supp. 3d at 1056. The Tribes thus need not demonstrate a likelihood of deception for

12   purposes of standing. The Tribes have, nevertheless, demonstrated that consumers are confused as

13   to the legality of these products. The fact that the social media user comments cited by the Tribes

14   are "anonymous" does not undermine their evidentiary value in showing market reaction or that a

15   "substantial segment" of the audience will be deceived.

16   **II.**    **THE TRIBES WILL SUFFER IRREPARABLE HARM IN THE ABSENCE**
                **OF THE REQUESTED INJUNCTIVE RELIEF.**

17          In response to the Tribes' demonstration that they will and are suffering irreparable harm

18   as a result of Kalshi's sports gambling operation, Kalshi entirely ignores the Tribes' arguments

19   that the harm Kalshi is causing is not exclusively economic, it is a harm to the Tribes' sovereign,

20   jurisdictional, Congressionally-delegated and IGRA-codified right to regulate all forms of class III

21   gaming that occur on their respective Indian lands. Kalshi makes little to no effort to engage with

22   or attempt to distinguish the cases cited by the Tribes in their motion that stand for the proposition

23   that the "harm to [a tribe's] sovereignty cannot be remedied by any other relief other than an

24

25                     
[8] "The only relevant legislative history, moreover, confirms that contracts on 'sporting events such as the Super Bowl, the Kentucky Derby, and Masters Golf Tournament' were *precisely* what Congress had in mind as 'gaming' contracts.

26  156 Cong. Rec. S5907 (daily ed. July 15, 2010)." Mem. in Supp. of Pl.'s Mot. for Summ. J. at 23, *KalshiEX LLC v. CFTC*, No. CV 23-3257 (JMC), 2024 WL 4164694.

27  [9] Kalshi's citations to *KalshiEX LLC v. Hendrick*, 2025 WL 1073495 (D. Nev. Apr. 9, 2025) and *KalshiEX LLC v.Flaherty*, 2025 WL 1218313 (D.N.J. Apr. 28, 2025), are additionally misleading. Those opinions address whether

28  the CEA preempts state laws related to the regulation of DCM-traded event contracts; they do not validate use of the term "legal sports betting" to describe Kalshi's products.

PLAINTIFFS' REPLY TO DEFENDANTS KALSHI INC. AND KALSHIEX LLC'S
OPPOSITION TO PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION

injunction….” *Tohono O'Odham Nation v. Schwartz*, 837 F. Supp. 1024, 1034 (D. Ariz. 1993). Instead, Kalshi argues that "[t]his is ultimately a claim of economic injury," Opp. at 28, and that a private business is incapable of interfering with a tribe's sovereign right to govern itself under its own laws. *Id*. Kalshi closes its irreparable harm analysis by arguing that the Tribes are not entitled to a presumption of irreparable harm under the Lanham Act. Each point is wrong, and the Tribes will address them, below, in reverse order.

First, with respect to the Tribes' Lanham Act claim, the Tribes' have demonstrated a likelihood of success on the merits and are thus entitled to a presumption of irreparable harm under the Lanham Act. *See* 15 U.S.C. § 1116(a). The Tribes have demonstrated that irreparable injury is likely, as patrons have been observed on Kalshi's platform in the heart of the Tribes' exclusive, regulated environment. Ramos Decl. ¶¶ 40-41. Especially within the Tribes' casinos, the Tribes' gaming authority and integrity of operations is contingent on maintaining a clear distinction between legal and illegal gaming. Additionally, as stated above, online sports wagering has been found to meaningfully divert funds that would have been spent at brick-and-mortar gaming facilities that do not offer sports gambling. *W. Flagler Assocs.*, 573 F. Supp. 3d at 268. In this case, tribal governmental gaming revenues fund tribal governments and essential government services and programs—it is not merely private profits. Ramos Decl. ¶¶ 42-52.

Second, Kalshi's conceptual argument that only *states*, and not businesses or private parties, are capable of interfering with a tribe's sovereign right to regulate conduct on its reservation defies both the law and common sense. The United States Constitution states that "[t]he Congress shall have the power … to regulate Commerce with … the Indian Tribes….” Article I, Section 8, Clause 3. Pursuant to this Constitutional authority, Congress has, time and time again, enacted laws regulating non-Indian commercial activities on Indian lands in order to empower tribes to exercise their sovereignty over their lands, their people, and non-Indians that conduct business on tribal land. The federal government has long required "Indian traders," persons and companies that sell goods—including commodities—to Indian tribes, to apply for a license to do so. *See* 25 C.F.R. § 140.9(b). And, much more recently, in the Violence Against Women Act Reauthorization Act of 2022, Public Law 117-103, Congress authorized "Tribes … to exercise

PLAINTIFFS' REPLY TO DEFENDANTS KALSHI INC. AND KALSHIEX LLC'S
OPPOSITION TO PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION

their sovereign power to investigate, prosecute, convict, and sentence … non-Indians who commit covered crimes [child violence, sexual violence, etc.] in Indian country…."[10] All of this is to say, interference with tribal sovereignty, jurisdiction, and right to self-government is not limited to a *state's* interference with these rights. This principle applies equally to businesses and individuals that conduct activities—in particular, gambling, 25 C.F.R. § 140.21—on Indian lands. That is the reason why Congress created a cause of action in IGRA for a tribe to seek an injunction in federal court to enjoin class III gaming on its Indian lands. And, here, Kalshi is doing just that, in violation of the Tribes' IGRA-codified right to regulate all forms of class III gaming that are conducted on their Indian lands.

Third, with respect to Kalshi's argument that the Tribes are not entitled to injunctive relief because their claim "is ultimately a claim of economic injury," Opp. at 21, there is no dispute that economic harm is at issue in the Tribes' claims for the purposes of the requested injunctive relief. But, as the Tribes made clear in their declarations in support of the preliminary injunction, this case and the economic harm caused by Kalshi to the Tribes are not akin to a case where a private person, or a business, or shareholders have suffered money damages and those damages can be recouped with money, later. Tribal governmental gaming revenue constitutes the primary source of funding of the Tribes' respective governments.[11] Congress intended that such governmental gaming "provide a means of promoting tribal economic development, self-sufficiency, and strong tribal governments." 25 U.S.C. § 2702 (1). The irreparable harm caused by the loss of revenue as a result of Kalshi's illegal sports gambling is thus not purely economic—it is a harm to tribal economic development, self-sufficiency, and strong tribal governments. Tribal governmental gaming revenue lost as a result of Kalshi's sports gambling activities directly impacts tribal governmental functions, all of which depend on gaming revenue to operate.[12] The Tribes cannot

---

[10] https://www.justice.gov/tribal/2013-and-2022-reauthorizations-violence-against-women-act-vawa

[11] Given that land within tribal reservations is generally owned by the United States in trust for tribes or individual Indians, tribes do not have a basis to assess and fund their governments with property taxes.

[12] There is a reason, after all, that states require people to pay their taxes up front in full before they can dispute them in court. *Cal. Dep't of Tax & Fee Admin. v. Superior Court*, 48 Cal. App. 5th 922, 931 (2020) ("By requiring taxpayers to pay disputed taxes up front (rather than allowing taxpayers to withhold the payment of taxes until disputes over taxation are resolved in litigation), section 32 [of the California Constitution] ensures that the blood of the body politic keeps pumping because it ensure[s] that the state may continue to collect tax revenue during litigation, thereby

PLAINTIFFS' REPLY TO DEFENDANTS KALSHI INC. AND KALSHIEX LLC'S
OPPOSITION TO PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION

fund and operate social services departments to protect and support Indian children, offer hot meal programs for tribal elders, host cultural ceremonies, run programs to preserve native languages, *etc*., without that revenue. So, needless to say, this case is not just about money, as Kalshi would like to portray it. It is about the irreparable harm to the tribal governments. For these reasons, the Tribes will suffer irreparable harm in the absence of the requested injunction.

### III.   THE EQUITIES AND THE PUBLIC INTEREST TIP STRONGLY IN FAVOR OF THE TRIBES.

Kalshi's arguments regarding the balance of the equities and the public interest fair no better than its irreparable harm arguments. As an initial matter, Kalshi's statement that the equities and the balance of the interests factors merge "only when the government is the party opposing the preliminary injunction," Opp. p. 22, fn. 11, is wrong. As cited in the Tribes' motion, this Court ruled that the factors merge when the party moving for an injunction is a governmental entity. *City & Cty. of S.F. v. Trump*, 779 F. Supp. 3d 1077, 1081 (N.D. Cal. 2025). And there is no legal or rational basis to apply the rule differently because the plaintiff happens to be a tribal—rather than city, state, or federal—government. In any event, Kalshi's arguments on the balance of the equities and the public interest fail on their own terms.

First, Kalshi begins its argument on this factor with a wildly speculative parade of horribles that would befall it if it had to cease offering class III sports gambling on the plaintiff Tribes' Indian lands, none of which tip the equities in its favor. Geofencing in the sports gambling industry is a norm—not an outlier. State-licensed, non-Indian sports gambling companies in the United States routinely geofence state-by-state. In some states, such as Arizona, these companies are required to specifically geofence off all Indian reservations within the state. *See* Ariz. Admin. Code § R19-4-117. Geofencing is thus not only possible, but it is feasible and commonplace.

Furthermore, Kalshi itself, in the Kalshi Privacy Policy, states that it "collect[s] [user] location data, including current and historical information concerning a user's geographic location, GPS location, transaction location, and IP addresses that they use in conjunction with [Kalshi's] Services." Kalshi Privacy Policy, p. 2, §1(a) (available at https://kalshi.com/docs/kalshi-privacy-

---

avoid[ing] unnecessary disruption of public services … dependent on that revenue and the attendant serious detriment to the public.") (Cleaned up).

PLAINTIFFS' REPLY TO DEFENDANTS KALSHI INC. AND KALSHIEX LLC'S
OPPOSITION TO PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION

policy.pdf). Kalshi further states in its Privacy Policy that it "collect[s] information about [users'] location[s] through GPS, Wi-Fi, [and] wireless network triangulation … to obtain [their] location," and that Kalshi "use[s] the Google Maps API to gather information about [users's] location(s)" through "various technologies to determine [their] location, including IP address, GPS, and other sensors that may, for example, provide Google with information on nearby devices, Wi-Fi access points, and cell towers." *Id.*[13] Thus, the legal mechanisms are already in place, regardless of whether or not Kalshi is currently tracking a particular gambler's location. Kalshi cannot cry wolf on this issue. The policies were already put into place, by Kalshi.

Second, Kalshi argues that, if it were required to halt sports gambling on the plaintiff Tribes' Indian lands, it "would also be required to try to identify and immediately unwind any live sports event contracts where one of the parties entered tribal lands" and that, because "[t]raders on Kalshi's markets can hold open positions in event contracts until the event occurs," "Kalshi would be faced with the likely impossible task of trying to identify and unwind contracts whenever any party to the contract crossed onto tribal lands, even if only briefly." Opp. at 23. These statements vastly overstate the scope of the injunctive relief requested by the Tribes. In recognition that Kalshi has, though manipulative advertising and double-talk, duped thousands of average working-class people into gambling on sports, the Tribes have only sought an injunction prohibiting Kalshi from offering sports gambling contracts on their Indian lands *prospectively* so as to prevent further harm to individuals that have been deceived by and purchased sports gambling contracts on Kalshi.

Additionally, as a legal matter, a legally placed, unresolved bet does not become illegal if one were to cross into a territory where the bet, if made there, would be illegal. If, on Wednesday, you were to purchase a California lottery ticket for Sunday's draw, would you be subject to sanction by entering an Indian reservation with the ticket in your pocket? The answer is obviously no. As discussed in Section I, above, the relevant inquiry is where the bet is initiated by the bettor. Kalshi's argument on this point is thus without merit.

---

[13] All of this, too, seemingly runs contrary to the sworn Declaration of Xavier Sottile, Head of Markets at KalshiEX LLC, DKT # 44-7, which states that "Kalshi currently lacks a mechanism to identify which of its users are located in any particular geographic location at any particular time," *id.* at p. 4, §15, that "Kalshi has never developed or implemented geolocation on its platform," *id.* at §19, and that "Kalshi does not geolocate its users and therefore does not know where a user's device is located at any point in time." *Id.* at p. 5, §20.

PLAINTIFFS' REPLY TO DEFENDANTS KALSHI INC. AND KALSHIEX LLC'S
OPPOSITION TO PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION

Third, Kalshi argues that "[a]n injunction would also subject Kalshi to regulatory risk" because, "[i]f Kalshi stopped offering its products in specific locales, it would risk violation of the CFTC Core Principles, including its obligation to 'provide . . . impartial access to its markets and services.'" Opp. at 24, *citing* 17 C.F.R. §§ 38.150, 38.151(b) (2012). The risk, Kalshi claims, is that if it complied with a lawful court order geographically limiting access to its sports wagers, the CFTC "could respond by seeking to revoke Kalshi's designation…." Opp. at 24.[14] This argument, like Kalshi's others, is yet another straw man. On September 30, 2025, the CFTC issued Advisory Letter 25-26 "in connection with a potential lapse in government appropriations to advise FCMs, IBs, DCMs [like Kalshi], DCOs, and RFAs to be prepared for all foreseeable conditions that may result from facilitating the trading and clearing of sports-related event contracts…." CFTC Letter No. 25-36 (available at https://www.cftc.gov/csl/25-36/download). The CFTC issued the letter "to caution … DCMs … that State regulatory actions and pending and potential litigation, including enforcement actions, should be accounted for with appropriate contingency planning, disclosures, and risk management policies and procedures." *Id*. at p. 2. Thus, Kalshi's claim that compliance with the requested injunction order could jeopardize its designation with the CFTC is unfounded, as the agency is already anticipating and accounting for such rulings by the courts.

Finally, and this point goes to both the balance of the equities and the public interest, the speculative parade of horribles that Kalshi lists to demonstrate that the equities and the public interest factors weigh in its favor—*e.g*, that (1) it would be hard and expensive to geofence small reservations, (2) "Kalshi would likely need to pause all trading of sports event contracts on its exchange while it determined whether it could develop a geofencing solution," and (3) it "would result in enormous and irreversible financial and reputational damage"—even if taken at face value, are all of Kalshi's own making. In the face of the numerous cease and desist letters and threats of civil and criminal sanctions from state gambling regulators across the United States after Kalshi starting offering sports gambling on single game outcomes during the NCAA March

---

[14] There is a significant amount of irony in Kalshi's suggestion that the CFTC *would* regulate its business activities if it were to comply with a court order that ostensibly required Kalshi to limit access in a manner inconsistent with the Core Principles, while, in reality, the CFTC has spent the better part of the year *refusing* to initiate a review of Kalshi's sports gambling contracts that are in direct violation of the CFTC's own regulations.

PLAINTIFFS' REPLY TO DEFENDANTS KALSHI INC. AND KALSHIEX LLC'S
OPPOSITION TO PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION

Madness Tournament, rather than pause, assess the situation, and wait for the litigation to play out, Kalshi put its foot on the gas pedal—expanding quickly to offering over/under bets, point spreads, player prop bets, and parlays. Kalshi cannot now use its own illegal conduct—and the complications that might ensue if it is ordered to stop violating the law—as a cudgel to bludgeon the scales of justice until the equities and the public interest tilt in its favor. It is Kalshi, not the Tribes, that has "disrupt[ed] the comprehensive regulatory scheme governing the nation's derivatives markets," Opp. at 24, by illegally offering sports gambling on a derivatives exchange. The public interest weighs heavily in favor of complying with the tribal and state gambling laws and regulations that are designed and intended, specifically, to protect the public interest with respect to the risks associated with sports gambling. For these reasons, the balance of the equities and the public interest weigh heavily in favor of the Tribes.

## **CONCLUSION**

For all the foregoing reasons, the Tribes respectfully request that the Court grant their motion.

Respectfully Submitted,

DATED: October 16, 2025          RAPPORT AND MARSTON

By:      /s/ *Lester J. Marston*
         _____
         LESTER J. MARSTON, Attorney for the Blue Lake
         Rancheria, Chicken Ranch Rancheria of Me-Wuk
         Indians, and the Picayune Rancheria of Chukchansi
         Indians

PLAINTIFFS' REPLY TO DEFENDANTS KALSHI INC. AND KALSHIEX LLC'S
OPPOSITION TO PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION

## CERTIFICATE OF SERVICE

I am employed in the County of Mendocino, State of California. I am over the age of 18 years and not a party to the within action; my business address is that of Rapport & Marston, 405 West Perkins Street, Ukiah, CA 95482.

I hereby certify that I electronically filed the foregoing:

**PLAINTIFFS' REPLY TO DEFENDANTS KALSHI INC. AND KALSHIEX LLC'S OPPOSITION TO PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION**

 with the Clerk of the United States District Court for the Eastern District of California by using the CM/ECF system on October 16, 2025.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct; executed on October 16, 2025, at Ukiah, California.

*/s/ Ericka Duncan*
Ericka Duncan

PLAINTIFFS' REPLY TO DEFENDANTS KALSHI INC. AND KALSHIEX LLC'S
OPPOSITION TO PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION