Christopher C. Wheeler (State Bar No. 224872)
cwheeler@fbm.com
Dylan M. Silva (State Bar No. 306363)
dmsilva@fbm.com
FARELLA BRAUN + MARTEL LLP
One Bush Street, Suite 900
San Francisco, California 94104
Telephone: (415) 954-4400
Facsimile: (415) 954-4480

Olivia S. Choe (pro hac vice)
ochoe@milbank.com
Joshua B. Sterling (pro hac vice)
jsterling@milbank.com
MILBANK LLP
1101 New York Avenue, NW
Washington, D.C. 20005
Telephone: (202) 835-7500
Facsimile: (202) 263-7586

Grant R. Mainland (pro hac vice)
gmainland@milbank.com
Karen Wong (pro hac vice)
kwong3@milbank.com
MILBANK LLP
55 Hudson Yards
New York, NY 10001
Telephone: (212) 530-5000
Facsimile: (212) 530-5219

Attorneys for Defendants KALSHI INC.,
KALSHIEX LLC

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION

| | |
|---|---|
| BLUE LAKE RANCHERIA, CHICKEN RANCH RANCHERIA OF ME-WUK INDIANS, and PICAYUNE RANCHERIA OF THE CHUKCHANSI INDIANS,<br><br>Plaintiffs,<br><br>vs.<br><br>KALSHI INC., KALSHIEX LLC, ROBINHOOD MARKETS, INC., ROBINHOOD DERIVATIVES LLC, and DOES 1-20,<br><br>Defendants. | Case No. 3:25-cv-06162-JSC<br><br>**NOTICE OF KALSHI DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' COMPLAINT AND MEMORANDUM IN SUPPORT**<br><br>Date:  March 19, 2026<br>Time:  10:00am<br>Courtroom:  8 (19th Floor)<br>Judge:  Hon. Jacqueline Scott Corley<br><br>**Oral Argument Requested** |

Farella Braun + Martel LLP
One Bush Street, Suite 900
San Francisco, California 94104
(415) 954-4400

KALSHI DEFENDANTS' MOTION TO DISMISS -
Case No. 3:25-cv-06162-JSC

## NOTICE OF MOTION TO DISMISS

Please take notice that on Thursday, March 19, 2026, at 10:00 a.m., before the Honorable Jacqueline Scott Corley, United States District Court, Courtroom 8, 19th Floor, 450 Golden Gate Ave., San Francisco, California, or the next date available to the court, Defendants Kalshi Inc. and KalshiEX LLC (together, "Kalshi") will and hereby do move this Court for an Order dismissing Plaintiffs' Complaint for Declaratory and Injunctive Relief and Money Damages (ECF No. 1) with prejudice for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), and under Federal Rule of Civil Procedure 12(b)(1) as to Count IV.  This Motion is based on this Notice of Motion; the Memorandum of Points and Authorities in Support of the Motion; the supporting materials submitted herewith; all other pleadings, papers, documents, and records on file in this Action; and any arguments and evidence that may be requested by the Court.

## STATEMENT OF THE ISSUES TO BE DECIDED

1.      Whether Plaintiffs have a statutory right of action for violations of the Indian Gaming Regulatory Act ("IGRA"), and if so, whether IGRA applies to Kalshi's offering of sports event contracts on its federally regulated designated contract market.

2.      Whether the Complaint states a claim that Kalshi, a non-tribal business, has violated Plaintiffs' ordinances by offering on an online, nationwide exchange sports event contracts that lack a direct connection to tribal lands.

3.      Whether the Complaint states a claim that Kalshi, a private actor based in and operating from New York City, has infringed upon Plaintiffs' tribal sovereignty.

4.      Whether the Complaint states a claim that Kalshi, by advertising its sports event contracts as legal, has deceived consumers in violation of the Lanham Act.

5.      Whether the Complaint states a claim that Kalshi and Robinhood have engaged in a RICO conspiracy by offering sports event contracts pursuant to the Commodity Exchange Act ("CEA") and under the supervision of the Commodity Futures Trading Commission ("CFTC").

Farella Braun + Martel LLP
One Bush Street, Suite 900
San Francisco, California 94104
(415) 954-4400

KALSHI DEFENDANTS' MOTION TO DISMISS -        ii
Case No. 3:25-cv-06162-JSC

Dated: October 31, 2025

Respectfully submitted,

 /s/ Christopher C. Wheeler

Christopher C. Wheeler (SBN 224872)
cwheeler@fbm.com
Dylan M. Silva (SBN 306363)
dmsilva@fbm.com
FARELLA BRAUN + MARTEL LLP
One Bush Street, Suite 900
San Francisco, California 94104
Telephone: (415) 954-4400
Facsimile: (415) 954-4480

Olivia S. Choe (pro hac vice)
ochoe@milbank.com
Joshua B. Sterling (pro hac vice)
jsterling@milbank.com
MILBANK LLP
1101 New York Avenue, NW
Washington, D.C. 20005
Telephone: (202) 835-7500
Facsimile: (202) 263-7586

Grant R. Mainland (pro hac vice)
gmainland@milbank.com
Karen Wong (pro hac vice)
kwong3@milbank.com
MILBANK LLP
55 Hudson Yards
New York, NY 10001
Telephone: (212) 530-5000
Facsimile: (212) 530-5219

*Attorneys for Defendants Kalshi Inc.*
*and KalshiEX LLC*

Farella Braun + Martel LLP
One Bush Street, Suite 900
San Francisco, California 94104
(415) 954-4400

KALSHI DEFENDANTS' MOTION TO DISMISS -    iii
Case No. 3:25-cv-06162-JSC

# TABLE OF CONTENTS

I.    PRELIMINARY STATEMENT ......................................................................................... 1

II.   BACKGROUND ............................................................................................................... 2

III.  ARGUMENT .................................................................................................................... 4

    A.  LEGAL STANDARD ............................................................................................ 4

    B.  PLAINTIFFS FAIL TO STATE A CLAIM UNDER IGRA (COUNT I). ............... 5

        1.  Plaintiffs Lack a Statutory Right of Action for Violations of IGRA. ............. 5

        2.  UIGEA Governs the Conduct Alleged in the Complaint and Insulates It from Liability in Deference to the CFTC's Exclusive Jurisdiction Over Transactions on DCMs. .................................................................................. 9

        3.  The Complaint's Allegations of Non-Compliance with the CEA Are Irrelevant and Incorrect. .............................................................................. 11

    C.  PLAINTIFFS FAIL TO STATE A CLAIM FOR VIOLATION OF TRIBAL GAMING ORDINANCES (COUNT II). ............................................................. 13

        1.  Plaintiffs Lack Authority to Exercise Tribal Jurisdiction Over Kalshi, a Nonmember ................................................................................................. 13

        2.  The CEA Preempts the Ordinances. ............................................................ 16

    D.  PLAINTIFFS LACK STANDING TO SUE FOR INFRINGEMENT OF TRIBAL SOVEREIGNTY (COUNT IV) ............................................................................ 18

    E.  PLAINTIFFS FAIL TO STATE A LANHAM ACT CLAIM (COUNT V). ......... 19

        1.  Plaintiffs Lack Standing Under the Lanham Act. ........................................ 20

        2.  Plaintiffs Fail to Allege Falsity. .................................................................. 21

        3.  Plaintiffs Do Not Adequately Allege a Likelihood of Deception or Injury. ... 23

    F.  PLAINTIFFS FAIL TO STATE A CIVIL RICO CLAIM (COUNT III) ............... 23

        1.  Plaintiffs Have Not Alleged that Defendants Are Conducting the Affairs of an Association-in-Fact Enterprise. .................................................................... 24

        2.  Plaintiffs Do Not Plausibly Allege Any Predicate Acts of Racketeering. ..... 26

            a.  Plaintiffs Have Not Adequately Allege Wire Fraud. .............................. 26

            b.  Plaintiffs Have Not Adequately Alleged Violations of the Wire Act or 18 U.S.C. § 1955. ...................................................................................... 28

        3.  Plaintiffs Fail to Allege a Cognizable RICO Injury. .................................... 29

IV.   CONCLUSION ............................................................................................................... 30

Farella Braun + Martel LLP
One Bush Street, Suite 900
San Francisco, California 94104
(415) 954-4400

KALSHI DEFENDANTS' MOTION TO DISMISS -      iv
Case No. 3:25-cv-06162-JSC

# TABLE OF AUTHORITIES

**Cases**                                                                                          **Page(s)**

*Alfasigma USA, Inc. v. First Databank, Inc.*,
   2022 WL 899848 (N.D. Cal. Mar. 28, 2022) ................................................................... 20, 21

*Anza v. Ideal Steel Supply Corp.*,
   547 U.S. 451 (2006) ............................................................................................................ 29

*Artichoke Joe's Cal. Grand Casino v. Norton*,
   353 F.3d 712 (9th Cir. 2003) ................................................................................................ 7

*Artichoke Joe's Cal. Grand Casino v. Norton*,
   216 F. Supp. 2d 1084 (E.D. Cal. 2002) ................................................................................ 6

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ........................................................................................................ 4, 13

*In re Baby Foods Prods. Liab. Litig.*,
   2025 WL 2799096 (N.D. Cal. Oct. 1, 2025) ........................................................................ 2

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ............................................................................................................ 4

*BNSF Ry. Co. v. Cal. Dep't of Tax & Fee Admin.*,
   904 F.3d 755 (9th Cir. 2018) .............................................................................................. 25

*Bob Jones Univ. v. United States*,
   461 U.S. 574 (1983) .......................................................................................................... 28

*Cabazon Band of Mission Indians v. Wilson*,
   124 F.3d 1050 (9th Cir. 1997) .............................................................................................. 9

*Cachil Dehe Band of Wintun Indians of the Colusa Indian Cmty. v. California*,
   618 F.3d 1066 (9th Cir. 2010) .............................................................................................. 7

*California v. Iipay Nation of Santa Ysabel*,
   898 F.3d 960 (9th Cir. 2018) ...................................................................................... 1, 9, 10

*California v. Picayune Rancheria of Chukchansi Indians of Cal.*,
   2015 WL 9304835 (E.D. Cal. Dec. 22, 2015) ..................................................................... 7

*Cates v. Cal. Gambling Control Comm'n*,
   154 Cal. App. 4th 1302 (2007) ............................................................................................ 7

*Cayuga Nation v. N.Y. Gaming Comm'n*,
   2025 WL 2161290 (N.D.N.Y. July 30, 2025) ..................................................................... 6

Farella Braun + Martel LLP
One Bush Street, Suite 900
San Francisco, California 94104
(415) 954-4400

*Cayuga Nation v. N.Y. State Gaming Comm'n,*
No. 24-cv-537-BKS-TWD (N.D.N.Y. June 10, 2025) (ECF No. 82)........................ 8

*Chaset v. Fleer/Skybox Int'l, LP,*
300 F.3d 1083 (9th Cir. 2002) ................................................................... 29

*Chavez v. United States,*
683 F.3d 1102 (9th Cir. 2012) ..................................................................... 4

*Child's. Health Def. v. Meta Platforms, Inc.,*
112 F.4th 742 (9th Cir. 2024) ................................................................... 29

*Chilkat Indian Vill. v. Johnson,*
870 F.2d 1469 (9th Cir. 1989) ................................................................... 13

*Clapper v. Amnesty Int'l,*
568 U.S. 398 (2013) ............................................................................... 19

*Cleveland Bakers & Teamsters & Welfare Fund v. AMAG Pharmls., Inc.,*
2025 WL 1024103 (D. Mass. Mar. 12, 2025) ............................................... 26

*Conn. Nat'l Bank v. Germain,*
503 U.S. 249 (1992) ............................................................................... 11

*Crowley Maritime Corp. v. Boston Old Colony Ins. Co.,*
158 Cal. App. 4th 1061 (2008) ..................................................................... 8

*Duke Energy Trading & Mktg., L.L.C. v. Davis,*
267 F.3d 1042 (9th Cir. 2001) ................................................................... 26

*Eclectic Props. E., LLC v. Marcus & Millichap Co.,*
751 F.3d 990 (9th Cir. 2014) ................................................................... 24

*EEOC v. Waffle House, Inc.,*
534 U.S. 279 (2002) ................................................................................. 8

*Evans v. Shoshone-Bannock Land Use Policy Comm'n,*
736 F.3d 1298 (9th Cir. 2013) ................................................................... 16

*Fisher v. District Court,*
424 U.S. 382 (1976) ............................................................................... 16

*Fitzgerald v. Chrysler Corp.,*
116 F.3d 225 (7th Cir. 1997) ................................................................... 24

*Florida v. Seminole Tribe of Fla.,*
181 F.3d 1237 (11th Cir. 1999) ............................................................ 5, 6, 7

*FMC Corp. v. Shoshone-Bannock Tribes,*
942 F.3d 916 (9th Cir. 2019) ................................................................... 16

Farella Braun + Martel LLP
One Bush Street, Suite 900
San Francisco, California 94104
(415) 954-4400

*Fraser v. Team Health Holdings, Inc.*,
  2022 WL 971579 (N.D. Cal. Mar. 31, 2022) ................................................ 24

*Gardner v. Starkist Co.*,
  418 F. Supp. 3d 443 (N.D. Cal. 2019) ........................................................ 25

*Gray v. Golden Gate Nat'l Recreational Area*,
  2012 WL 13140460 (N.D. Cal. July 3, 2012) ................................................ 5

*Harrison v. Jefferson Par. Sch. Bd.*,
  78 F.4th 765 (5th Cir. 2023) ........................................................................ 18

*Hein v. Capitan Grande Band of Diegueno Mission*,
  201 F.3d 1256 (9th Cir. 2000) ............................................................... 5, 6, 9

*HomeLight, Inc. v. Shkipin*,
  721 F. Supp. 3d 1019 (N.D. Cal. 2024) ...................................................... 20

*Hornell Brewing Co. v. Rosebud Sioux Tribal Ct.*,
  133 F.3d 1087 (8th Cir. 1998) ............................................................... 10, 15

*I.C. v. Zynga, Inc.*,
  600 F. Supp. 3d 1034 (N.D. Cal. 2022) ...................................................... 19

*Jackson v. PayDay Fin., LLC*,
  764 F.3d 765 (7th Cir. 2014) ................................................................. 10, 15

*KalshiEX LLC v. CFTC*,
  2024 WL 4164694 (D.D.C. Sept. 12, 2024) ............................................. 4, 12

*KalshiEX LLC v. CFTC*, Appellant Br.,
  2024 WL 4512583 (D.C. Cir. Oct. 16, 2024) ............................................. 22

*KalshiEX v. CFTC*, Appellee Br.,
  2024 WL 4802698 (D.C. Cir. Nov. 15, 2024) ............................................ 27

*KalshiEX LLC v. Flaherty*,
  2025 WL 1218313 (D.N.J. Apr. 28, 2025) ............................................. 22, 28

*KalshiEX LLC v. Hendrick*,
  2025 WL 1073495 (D. Nev. Apr. 9, 2025) ................................................. 22

*KalshiEX LLC v. Hendrick*,
  No. 2:25-cv-575, ECF No. 142 (filed Oct. 17, 2025) ................................. 22

*KalshiEX LLC v. Martin*,
  2025 WL 2194908 (D. Md. Aug. 1, 2025), *appeal filed*, No. 25-1892 (4th Cir.
  Aug. 6, 2025) ............................................................................................... 22

Farella Braun + Martel LLP
One Bush Street, Suite 900
San Francisco, California 94104
(415) 954-4400

*Kearns v. Ford Motor Co.*,
   567 F.3d 1120 (9th Cir. 2009)....................................................................................26

*Lexington Ins. Co. v. Smith*,
   117 F.4th 1106 (9th Cir. 2024)..................................................................10, 14, 15

*Lexington Ins. Co. v. Smith*,
   94 F.4th 870 (9th Cir. 2024)......................................................................14, 15, 18

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*,
   572 U.S. 118 (2014) ............................................................................................20, 21

*Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Curran*,
   456 U.S. 353 (1982) ............................................................................................11, 25

*Michigan v. Bay Mills Indian Cmty.*,
   572 U.S. 782 (2014)..........................................................................................1, 6, 8, 9

*Midwest Grinding Co., v. Spitz 976*,
   F.2d 976 (7th Cir. 1992)...........................................................................................26

*Montana v. United States*,
   450 U.S. 544 (1981) ...........................................................................13, 14, 15, 16

*Morongo Band of Mission Indians v. Rose*,
   893 F.2d 1074 (9th Cir. 1990) .................................................................................13

*Nat'l Farmers Union Ins. Cos. v. Crow Tribe of Indians*,
   471 U.S. 845 (1985)..................................................................................................13

*Nat'l R.R. Passenger Corp. v. Nat'l Assoc. of R.R. Passengers*,
   414 U.S. 453 (1974) ...................................................................................................9

*Nayab v. Capital One Bank*,
   942 F.3d 480 (9th Cir. 2019)...................................................................................13

*NLRB v. Little River Band of Ottawa Indians*,
   788 F.3d 537 (6th Cir. 2015)...................................................................................17

*Oscar v. Univ. Students Co-op Ass'n*,
   965 F.2d 783, (9th Cir. 1992)..................................................................................29

*Ozeran v. Jacobs*,
   798 F. App'x 120 (9th Cir. 2020).............................................................................29

*Pueblo of Pojoaque v. New Mexico*,
   863 F.3d 1226 (10th Cir. 2017).................................................................................9

*QVC Inc. v. Your Vitamins, Inc.*,
   439 F. App'x 165 (3d Cir. 2011)........................................................................22, 23

Farella Braun + Martel LLP
One Bush Street, Suite 900
San Francisco, California 94104
(415) 954-4400

*Reves v. Ernst & Young*,
    507 U.S. 170 (1993) .................................................................................... 24

*Saginaw Cnty. v. STAT Emergency Med. Servs., Inc.*,
    946 F.3d 951 (6th Cir. 2020) ....................................................................... 18

*Salameh v. Tarsadia Hotel*,
    726 F.3d 1124 (9th Cir. 2013) ....................................................................... 4

*San Manuel Indian Bingo & Casino v. NLRB*,
    475 F.3d 1306 (D.C. Cir. 2007) ................................................................... 17

*Santa Clara Pueblo v. Martinez*,
    436 U.S. 49 (1978) ...................................................................................... 17

*Scilex Pharms. Inc. v. Sanofi-Aventis U.S. LLC*,
    2021 WL 11593043 (N.D. Cal. Aug. 16, 2021) ........................................... 23

*Sedima S.P.R.L. v. Imrex Co.*,
    473 U.S. 479 (1985) .................................................................................... 24

*Solis v. Matheson*,
    563 F.3d 425 (9th Cir. 2009) ....................................................................... 17

*Somers v. Apple, Inc.*,
    729 F.3d 953 (9th Cir. 2013) ....................................................................... 29

*Southland Sod Farms v. Stover Seed Co.*,
    108 F.3d 1134 (9th Cir. 1997) ............................................................... 21, 23

*Stahl Law Firm v. Judicate West*,
    2013 WL 4873065 (N.D. Cal. Sept. 12, 2013) ........................................ 3, 19

*Stand Up for California! v. U.S. Department of Interior*,
    959 F.3d 1154 (9th Cir. 2020) ....................................................................... 7

*Stockbridge-Munsee Cmty. v. Wisconsin*,
    922 F.3d 818 (7th Cir. 2019) ..................................................................... 6, 8

*Strate v. A-1 Contractors*,
    520 U.S. 438 (1997) .................................................................................... 13

*Tamiami Partners, Ltd. v. Miccosukee Tribe of Indians of Fla.*,
    63 F.3d 1030 (11th Cir. 1995) ....................................................................... 5

*Taxpayers of Mich. Against Casinos v. Michigan*,
    685 N.W.2d 221 (Mich. 2004) ...................................................................... 8

*ThermoLife Int'l, LLC v. BPI Sports, LLC*,
    2022 WL 612669 (9th Cir. Mar. 2, 2022) ................................................... 20

Farella Braun + Martel LLP
One Bush Street, Suite 900
San Francisco, California 94104
(415) 954-4400

*ThermoLife Int'l, LLC v. Gaspari Nutrition Inc.*,
    648 F. App'x 609 (9th Cir. 2016)..................................................................................22

*In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Pracs., & Prods.*
    *Liab. Litig.*,
    826 F. Supp. 2d 1180 (C.D. Cal. 2011)........................................................................27

*TrafficSchool.com, Inc. v. Edriver Inc.*,
    653 F.3d 820 (9th Cir. 2011).......................................................................................20

*United Centrifugal Pumps v. Schotz*,
    1991 WL 274232 (N.D. Cal. June 12, 1991) ...........................................................5, 26

*United Food & Com. Workers Unions & Emps. Midwest Health Benefits Fund v.*
    *Walgreen Co.*,
    719 F.3d 849 (7th Cir. 2013).......................................................................................24

*United States v. Galecki*,
    89 F.4th 713 (9th Cir. 2023).......................................................................................26

*United States v. Jinian*,
    725 F.3d 954 (9th Cir. 2013).......................................................................................26

*United States v. Miller*,
    953 F.3d 1095 (9th Cir. 2020).....................................................................................27

*United States v. Wheeler*,
    435 U.S. 313 (1978)....................................................................................................13

*Vampire Fam. Brands, LLC v. MPL Brands, Inc.*,
    2021 WL 4134841 (C.D. Cal. Aug. 8, 2021) .............................................................20

*Water Wheel Camp Recreational Area Inc. v. LaRance*,
    642 F.3d 802 (9th Cir. 2011).......................................................................................15

*West Flagler Associates v. Haaland*,
    573 F. Supp. 3d 260 (D.D.C. 2021) ............................................................................21

*West Flagler Associates v. Haaland*,
    71 F.4th 1059 (D.C. Cir. 2023) ..................................................................................21

*Wisconsin v. Ho-Chunk Nation*,
    478 F. Supp. 2d 1093 (W.D. Wis. 2007).......................................................................7

*Yoshikawa v. Seguirant*,
    74 F.4th 1042 (9th Cir. 2023)........................................................................................7

**Statutes**

7 U.S.C. § 1a ....................................................................................................................3, 11, 25

Farella Braun + Martel LLP
One Bush Street, Suite 900
San Francisco, California 94104
(415) 954-4400

KALSHI DEFENDANTS' MOTION TO DISMISS -    x
Case No. 3:25-cv-06162-JSC

7 U.S.C. § 2 ................................................................................................... 3, 9, 11, 16

7 U.S.C. § 7 ........................................................................................................................ 3

7 U.S.C. § 7a-2 .................................................................................................. 3, 12, 25, 27

7 U.S.C. § 13a-1 ................................................................................................................. 2

18 U.S.C. § 1084 ......................................................................................................... 26, 28

18 U.S.C. § 1166 ................................................................................................................. 9

18 U.S.C. § 1343 .............................................................................................................. 26

18 U.S.C. § 1955 .............................................................................................................. 26

25 U.S.C. § 2706 .............................................................................................................. 10

25 U.S.C. § 2710 ...................................................................................................... *passim*

31 U.S.C. § 5362 ................................................................................................... 10, 11, 28

31 U.S.C. § 5363 .............................................................................................................. 10

31 U.S.C. § 5365 ....................................................................................................... 11, 28

California Penal Code § 337a ......................................................................................... 29

Pub. L. 111–203, 124 Stat. 1376, 1666 (2010) ......................................................... 3, 11

Pub. L. No. 106-554, 114 Stat. 2763 (2000) ................................................................ 11

**Other Authorities**

17 C.F.R. § 1.55 (2025)................................................................................................... 26

17 C.F.R. § 38 *et seq.* (2012) ........................................................................................... 3

17 C.F.R. § 38.151(b) (2012) ........................................................................................... 3

17 C.F.R. § 40.2 (2024) ..................................................................................................... 3

17 C.F.R. § 40.11 (2011)........................................................................................... 11, 12

CFTC Release No. 9091-25, *CFTC Staff Issues FCM FAQs,* (June 30, 2025)
     https://www.cftc.gov/PressRoom/PressReleases/9091-25 .................................... 25

S. Rep. No. 91-617 (1969) ............................................................................................. 24

Farella Braun + Martel LLP
One Bush Street, Suite 900
San Francisco, California 94104
(415) 954-4400

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.    PRELIMINARY STATEMENT

Years ago, Congress sought to achieve a delicate balance of federal, state, and tribal interests in regulating gaming activity "on Indian lands."  It struck that balance through IGRA—a statute that applies on Indian territory "and nowhere else."  *Michigan v. Bay Mills Indian Cmty.*, 572 U.S. 782, 795 (2014).  Now, as Kalshi and other prediction markets have begun offering sports event contracts nationwide on federally regulated exchanges, Plaintiffs have perceived a threat to their monopoly over on-reservation gaming.  ECF No. 35 at 16.  They have responded with overheated rhetoric, calling the everyday business activities of Kalshi and Robinhood a criminal racket.  They have also sought a foothold in IGRA to attempt to regulate trading on an exchange operated from thousands of miles away.  If successful, this effort would seriously disrupt a national derivatives market overseen by one federal regulator (the CFTC) pursuant to a preemptive federal statute (the CEA).

But IGRA does not provide Plaintiffs with the foothold they seek.  IGRA does not afford tribes a cause of action except for violations of state-tribal compacts, *see* 25 U.S.C. § 2710(d)(7)(A)(ii), which the Complaint does not and cannot allege.  The IGRA claim at the heart of the Complaint should be dismissed on this basis alone.  And even if the statute created an applicable right of action, the Complaint fails to state a claim under IGRA.  *See California v. Iipay Nation of Santa Ysabel*, 898 F.3d 960 (9th Cir. 2018).  Passed in 1988, IGRA focuses on gaming activity "located" or "conducted" on reservations and does not address internet activity at all.  In 2006, Congress passed the Unlawful Internet Gambling Enforcement Act ("UIGEA") to deal with the question presented here—whether state or tribal law should apply to "bets or wagers" that are "initiated" in a place where they are unlawful.  UIGEA says that state and tribal law generally apply in such situations, but creates a specific exception for transactions subject to the CEA.  It is for this reason that Plaintiffs strain to show that the CEA does not apply because Kalshi has supposedly failed to comply with it—an assertion that, even if true (it is not), would at most raise issues for the CFTC, not empower Plaintiffs to enjoin Kalshi's conduct under IGRA.

Plaintiffs' reliance on tribal ordinances, sovereignty, and self-governance fares no better.  The Complaint does not allege facts showing that Plaintiffs have authority, as a matter of tribal

Farella Braun + Martel LLP
One Bush Street, Suite 900
San Francisco, California 94104
(415) 954-4400

KALSHI DEFENDANTS' MOTION TO DISMISS -
Case No. 3:25-cv-06162-JSC

1  sovereignty or under IGRA, to enforce any ordinances against Kalshi, a nonmember.  And the

2  ordinances are displaced by the CEA when it comes to Kalshi's event contracts in any event.

3  Plaintiffs' invocations of sovereignty and self-governance do not rescue these infirmities, as the

4  Complaint fails to allege any injury to sovereignty that would establish Article III standing.

5      Plaintiffs' remaining claims under the Lanham Act and federal civil RICO statute ask the

6  Court to accept that Kalshi is a fraudulent enterprise that has been deceiving the public and engaging

7  in a criminal conspiracy with Robinhood—all under the supervision of a federal regulator with

8  robust civil enforcement authority over both and the ability to refer criminal matters to the U.S.

9  Department of Justice.  *See* 7 U.S.C. § 13a-1.  These allegations do not even approach plausibility,

10  much less the exacting standards of Federal Rule of Civil Procedure 9(b).  With regard to the

11  Lanham Act claim, the Complaint does not allege a commercial injury necessary to establish

12  standing; false statements of fact (as opposed to opinion); or a likelihood of consumer deception.

13  With regard to the RICO claim, the Complaint alleges nothing more than ordinary business dealings

14  intended to make Kalshi's event contracts broadly available to the market; and the criminal statutes

15  that allegedly give rise to the necessary "predicate acts" are inapplicable as a matter of law.

16      Plaintiffs may be frustrated that they cannot regulate derivatives trading that they speculate

17  diverts patrons from their casinos.  But their frustration should be raised with Congress, not this

18  Court.  It does not give rise to a claim.  The Complaint should be dismissed with prejudice.

19  **II.    BACKGROUND**

20      Kalshi is a New York-based designated contract market ("DCM") under the CEA.  ¶¶ 12-

21  13, 71.[1]  The CFTC designated Kalshi as a contract market in 2020.  ¶ 71; Ex. A.  Since that time,

22  Kalshi has offered a variety of "event contracts" relating to climate, technology, health, popular

23  culture, economics, politics, and, more recently, sports.  ¶¶ 72-73, 108, 127; Exs. B-E.  An event

24  contract is a kind of derivative instrument that permits market participants to trade on certain

25

26  [1] Unless otherwise specified, "¶ __" refers to paragraphs in the Complaint.  "Ex. __" refers to

27  exhibits to the Declaration of Karen Wong, dated October 31, 2025, filed herewith.  The Court can
take judicial notice of these exhibits because they are either incorporated by reference in the
Complaint or are the proper subject of judicial notice under Federal Rule of Evidence 201(b).  *See*

28  *In re Baby Foods Prods. Liab. Litig.*, 2025 WL 2799096, at *6 (N.D. Cal. Oct. 1, 2025).

Farella Braun + Martel LLP
One Bush Street, Suite 900
San Francisco, California 94104
(415) 954-4400

KALSHI DEFENDANTS' MOTION TO DISMISS -        2
Case No. 3:25-cv-06162-JSC

1   "occurrence[s]" or "contingenc[ies]" that are "beyond the control of the parties" and "associated

2   with a financial, commercial, or economic consequence."  7 U.S.C. § 1a(19)(iv); *see also id.* §

3   1a(47)(A)(ii) (defining "swap" to mean contracts for payment "dependent on the occurrence . . . of

4   an event or contingency associated with a potential financial, economic, or commercial

5   consequence").  In 2010, through passage of the Dodd-Frank Act, Congress brought exchange-

6   traded swaps within the "exclusive jurisdiction" of the CFTC.  *See* Pub. L. 111–203, 124 Stat. 1376,

7   1666 (2010); 7 U.S.C. § 2(a)(1)(A) (providing CFTC with "exclusive jurisdiction" over

8   "transactions involving swaps . . . traded or executed on a [DCM]").

9       Kalshi's event contracts are traded exclusively on its DCM.  ¶ 108.  Kalshi has also entered

10   into commercial relationships with third parties relating to its event contracts.  For instance, Kalshi

11   works with Robinhood—an electronic trading platform, registered broker-dealer, and CFTC-

12   registered futures commission merchant ("FCM")—to facilitate trading on Kalshi's DCM by

13   Robinhood customers.  ¶¶ 14, 123, 126.  Kalshi has also contracted with Susquehanna International

14   Group, LLP, which provides market-making services to bolster liquidity in the trading of Kalshi's

15   event contracts.  ¶ 109.

16       Generally, Kalshi has "self-certified" its event contracts pursuant to Section 7a-2(c)(1) of

17   the CEA.  ¶¶ 127-28.  That provision permits a DCM to "list for trading . . . any new contract . . .

18   by providing to the Commission . . . a written certification that the new contract . . . complies with

19   [the CEA] (including regulations under [the CEA])."  7 U.S.C. § 7a-2(c)(1).  CFTC regulations

20   govern what information must be provided to the CFTC in a DCM's self-certification of a new

21   contract.  17 C.F.R. § 40.2 (2024).  In particular, a DCM must provide a "concise explanation" of

22   how the contract complies with the CEA and its "core principles."  *Id.* § 40.2(a)(3)(5); *see also* 7

23   U.S.C. § 7(d); 17 C.F.R. § 38 *et seq* (2012).  One of those core principles is the requirement that a

24   DCM offer "impartial access" to its platform.  17 C.F.R. § 38.151(b) (2012).

25       The CFTC has not taken issue with Kalshi's self-certifications.  ¶ 127.  However, in 2024,

26   the CFTC conducted a review of Kalshi's event contracts relating to political elections pursuant to

27   the CEA's "Special rule for review and approval of event contracts and swaps contracts."  ¶¶ 72-

28   74; 7 U.S.C. § 7a-2(C)(5)(c)(i) (the "Special Rule").  Following that review, the CFTC determined

Farella Braun + Martel LLP
One Bush Street, Suite 900
San Francisco, California 94104
(415) 954-4400

KALSHI DEFENDANTS' MOTION TO DISMISS -     3
Case No. 3:25-cv-06162-JSC

that Kalshi's political event contracts involved "unlawful conduct" and "gaming" (two enumerated categories under the Special Rule). Ex. F. The CFTC further determined that the political event contracts were "contrary to the public interest." *Id.* at 13; ¶ 74. The CFTC's order was later set aside as arbitrary and capricious under the Administrative Procedure Act, *KalshiEX LLC v. CFTC*, 2024 WL 4164694, at *13 (D.D.C. Sept. 12, 2024), and the CFTC ultimately abandoned its appeal from that decision, ¶ 139. The CFTC has made no similar determinations regarding Kalshi's sports event contracts. ¶ 91.

Plaintiffs are federally recognized Indian tribes that operate casinos and other gambling establishments on their respective reservations. ¶¶ 1, 39, 42. Plaintiff Picayune Rancheria conducts class III gaming, as defined by IGRA, pursuant to its tribal-state compact with the State of California. ¶ 11; *see also* 25 U.S.C. § 2710(d)(3) (providing for negotiation of tribal-state compacts relating to class III gaming). Plaintiffs Blue Lake and Chicken Ranch Rancherias lack such a compact and instead conduct class III gaming pursuant to certain procedures prescribed by the Secretary of the Interior ("Secretarial Procedures"). ¶¶ 9-10; *see* 25 U.S.C. § 2710(d)(7)(B)(vii) (providing that Secretary of Interior "shall prescribe" procedures relating to class III gaming in the absence of negotiated compact with state). None of the Plaintiffs offer sports betting at their casinos because sports betting is prohibited under California law. ¶ 42.

## III.   ARGUMENT

### A.   LEGAL STANDARD

To survive a motion to dismiss, a complaint must provide sufficient factual allegations to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The plaintiff must plead facts that "allow[] the court to draw a reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "[B]are assertions" are insufficient to make a claim plausible. *Salameh v. Tarsadia Hotel*, 726 F.3d 1124, 1129 (9th Cir. 2013); *see also Chavez v. United States*, 683 F.3d 1102, 1108 (9th Cir. 2012) (courts must "discount[] conclusory statements, which are not entitled to the presumption of truth"). Additionally, claims that sound in fraud, such as Plaintiffs' Lanham Act claim and civil RICO claim (predicated on wire fraud), must meet Rule 9(b)'s heightened pleading standard. *See Stahl Law*

Farella Braun + Martel LLP
One Bush Street, Suite 900
San Francisco, California 94104
(415) 954-4400

KALSHI DEFENDANTS' MOTION TO DISMISS -     4
Case No. 3:25-cv-06162-JSC

1  *Firm v. Judicate West*, 2013 WL 4873065 (N.D. Cal. Sept. 12, 2013) (applying Rule 9(b) to Lanham

2  Act false advertising claim); *United Centrifugal Pumps v. Schotz*, 1991 WL 274232, at *2 (N.D.

3  Cal. June 12, 1991) (applying Rule 9(b) to RICO claim).

4  **B.      PLAINTIFFS FAIL TO STATE A CLAIM UNDER IGRA (COUNT I).**

5  The premise of Plaintiffs' IGRA claim is that Kalshi is engaging in unlawful class III gaming

6  activity on Plaintiffs' reservations in violation of Section 2710(d)(1) of IGRA.  ¶ 146; *see generally*

7  ¶¶ 143-158.  But Plaintiffs cannot "sue for every violation of IGRA by direct action under the

8  statute," *Hein v. Capitan Grande Band of Diegueno Mission*, 201 F.3d 1256, 1260 (9th Cir. 2000);

9  the right of action created by the statute extends only to violations of state-tribal compacts, which

10  the Complaint does not allege.  The Complaint fails to state an IGRA claim for this reason alone.

11  *See Gray v. Golden Gate Nat'l Recreational Area*, 2012 WL 13140460, at *7 (N.D. Cal. July 3,

12  2012) ("A claim may be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure

13  to state a claim if the plaintiff lacks a private right of action . . . .").  And even if Plaintiffs had a

14  statutory right of action, the Complaint challenges CFTC-regulated derivatives trading that is

15  expressly insulated by UIGEA—the only statute that addresses the lawfulness *vel non* of internet

16  gaming that is unlawful where "bets or wagers" are "initiated."

17  **1.      *Plaintiffs Lack a Statutory Right of Action for Violations of IGRA.***

18  Plaintiffs allege that Section 2710(d)(7)(A)(ii) authorizes them to sue to enjoin Kalshi from

19  engaging in unlawful class III gaming activity on Plaintiffs' reservations.  But the provision on

20  which they rely does no such thing.  Section 2710(d)(7)(A)(ii) provides:

> The United States district courts shall have jurisdiction over . . . any
> cause of action initiated by a State or Indian tribe to enjoin a class III
> gaming activity located on Indian lands **and** conducted in violation of
> any Tribal-State compact entered into under [Section 2710(d)(3)] that
> is in effect . . . (emphasis added).

25  Most courts construing this provision have interpreted it as creating a statutory right of action,

26  albeit a limited one, over which federal district courts have jurisdiction.  *See Hein*, 201 F.3d at 1260

27  (Section 2710(d)(7)(A)(ii) provides limited right of action) (citing *Tamiami Partners, Ltd. v.*

28  *Miccosukee Tribe of Indians of Fla.*, 63 F.3d 1030, 1049 (11th Cir. 1995)); *Florida v. Seminole*

Farella Braun + Martel LLP
One Bush Street, Suite 900
San Francisco, California 94104
(415) 954-4400

KALSHI DEFENDANTS' MOTION TO DISMISS -      5
Case No. 3:25-cv-06162-JSC

1    *Tribe of Fla.*, 181 F.3d 1237, 1245-46 & n.13 (11th Cir. 1999) (same); *Cayuga Nation v. N.Y. State*

2    *Gaming Comm'n*, 2025 WL 2161290, at *3-4 (N.D.N.Y. July 30, 2025) (same); *cf. Bay Mills*, 572

3    U.S. at 787 n.2 (noting that Section 2710(d)(7)(A)(ii), while not limiting federal jurisdiction, "may

4    indicate that a party has no statutory right of action").

5    　　　Courts have applied Section 2710(d)(7)(A)(ii) strictly in accordance with its terms, which

6    authorize suit "not for all 'class III gaming activity located on Indian lands' . . . , but only for such

7    gaming as is 'conducted in violation of any Tribal-State compact . . . that is in effect.'" *Bay Mills*,

8    572 U.S. at 795 n.6; *Seminole Tribe*, 181 F. 3d at 1246 n.13 ("the cause of action expressly created

9    by 27 U.S.C. § 2710(d)(7)(A)(ii) is plainly not available" where "there is no compact"); *Cayuga*

10   *Nation*, 2025 WL 2161290, at *2-3 (interpreting Section 2710(d)(7)(A)(ii) to unambiguously

11   require unlawful class III gaming ***and*** a violation of a compact, and rejecting tribal plaintiffs'

12   argument "that the 'and' in this sentence should instead be understood to mean 'or'").[2]

13   　　　All of this is fatal to Plaintiffs' IGRA claim.  The Complaint acknowledges that two of the

14   three Plaintiffs—Blue Lake and Chicken Ranch Rancherias—do not have compacts with the State

15   of California.  ¶¶ 9-10.  Without a compact, there can be no "violation" of a compact.  *See Seminole*

16   *Tribe*, 181 F.3d at 1246 n.13; *Cayuga Nation*, 2025 WL 2161290, at *3-4.  Plaintiffs attempt to

17   resolve this deficiency by alleging they can sue for a violation of Secretarial Procedures.  ¶ 157

18   ("IGRA establishes a right of action by an 'Indian tribe to enjoin a class III gaming activity located

19   on Indian lands and conducted in violation of Tribal-State compact [or Secretarial Procedures].'")

20   (quoting § 2710(d)(7)(A)(ii)) (bracketed language in Complaint).  But Plaintiffs cannot add

21   language to the statute that is not there.  Congress created a separate right of action in IGRA

22   authorizing the Secretary of the Interior alone to enforce Secretarial Procedures.  25 U.S.C. §

23   2710(d)(7)(A)(iii) (cause of action "initiated by the Secretary to enforce procedures prescribed

24   under subparagraph (B)(vii)"); *see also Artichoke Joe's Grand Cal. Casino v. Norton*, 216 F. Supp.

25

---

26   [2] Plaintiffs understandably do not assert an implied right of action, which courts have declined to
27   infer.  *See Hein*, 201 F.3d at 1260 ("Where IGRA creates a private cause of action, it does so
     explicitly."); *Seminole Tribe*, 181 F.3d at 1248-50; *Cayuga Nation*, 2025 WL 2161290, at *4; *cf.*
27   *Stockbridge-Munsee Cmty. v. Wisconsin*, 922 F.3d 818, 824 (7th Cir. 2019) ("[W]hen a federal
28   statute creates specific private rights of action, the judiciary cannot add others.").

Farella Braun + Martel LLP
One Bush Street, Suite 900
San Francisco, California 94104
(415) 954-4400

KALSHI DEFENDANTS' MOTION TO DISMISS -    6
Case No. 3:25-cv-06162-JSC

2d 1084, 1113 (E.D. Cal. 2002) (IGRA "contemplates a multitude of specific causes of action that may be brought by specified entities or persons," including "suit by [the] Secretary of [the] Interior to enforce procedures for conducting class III gaming") (citing *Seminole Tribe*, 181 F.3d at 1248), *aff'd sub nom. Artichoke Joe's Cal. Grand Casino v. Norton*, 353 F.3d 712 (9th Cir. 2003).

*Stand Up for California! v. U.S. Department of Interior*, 959 F.3d 1154 (9th Cir. 2020), is not to the contrary. *Stand Up* dealt with a different issue—whether an exemption from Johnson Act liability for class III gaming pursuant to tribal-state compacts also existed for gaming pursuant to Secretarial Procedures, even though the exemption did not mention Secretarial Procedures. The court held that it did because Congress clearly intended Secretarial Procedures to authorize class III gaming to the same extent as a compact. But having a substantive right under a statute—here, Indian tribes' right under IGRA to conduct class III gaming activity—is different from having the ability to enforce that substantive right. *Yoshikawa v. Seguirant*, 74 F.4th 1042, 1045 (9th Cir. 2023) (courts must determine whether Congress intended to create not just a "right" but also a "remedy"; "absent such intent, a cause of action does not exist and courts may not create one") (cleaned up). Here, Congress only gave the right to enforce Secretarial Procedures to the Secretary of the Interior. 25 U.S.C. § 2710(d)(7)(A)(iii). In any event, the Court need not decide this issue because the Complaint points to no provision of the Secretarial Procedures that was violated.

As for the sole Plaintiff alleged to have a compact with California—Picayune Rancheria— the Complaint does not and cannot allege any violation of that agreement. As a threshold matter, the compact "is a contract between the Tribe and the State" that is "governed by general federal law principles." *California v. Picayune Rancheria of Chukchansi Indians of Cal.*, 2015 WL 9304835, at *7 (E.D. Cal. Dec. 22, 2015), *aff'd*, 725 F. App'x 591 (9th Cir. 2018); *see also Wisconsin v. Ho-Chunk Nation*, 478 F. Supp. 2d 1093, 1098 (W.D. Wis. 2007), *aff'd in part, vacated in part*, 512 F.3d 921 (7th Cir. 2008) ("A compact is a contract, subject to the ordinary rules of contract construction."). Federal law looks to and relies upon state contract law. *Cachil Dehe Band of Wintun Indians of the Colusa Indian Cmty. v. California*, 618 F.3d 1066, 1073 (9th Cir. 2010); *Cates v. Cal. Gambling Control Comm'n*, 154 Cal. App. 4th 1302, 1312 (2007) ("The Compact is an agreement between the State and the individual tribes and is interpreted as a contract."). It "goes

Farella Braun + Martel LLP
One Bush Street, Suite 900
San Francisco, California 94104
(415) 954-4400

KALSHI DEFENDANTS' MOTION TO DISMISS -    7
Case No. 3:25-cv-06162-JSC

1    without saying that a contract cannot bind a nonparty." *Crowley Maritime Corp. v. Boston Old*

2    *Colony Ins. Co.*, 158 Cal. App. 4th 1061, 1069 (2008) (quoting *EEOC v. Waffle House, Inc.*, 534

3    U.S. 279, 294 (2002)); *see also Taxpayers of Mich. Against Casinos v. Michigan*, 685 N.W.2d 221,

4    230 (Mich. 2004) (non-parties to a tribal-state compact "cannot be bound by [its] terms"), *aff'd in*

5    *part*, *rev'd in part on other grounds*, 732 N.W.2d 487 (Mich. 2007).

6        Given that Section 2710(d)(7)(A)(ii) requires violations of a tribal-state compact, it is

7    doubtful that Congress intended to empower tribes or states to sue third parties—rather than each

8    other—under that provision. Kalshi is aware of only a ***single case*** where a tribe sued a third party

9    under IGRA, and the third party was promptly dropped from the suit after a settlement. *See Cayuga*

10   *Nation v. N.Y. State Gaming Comm'n*, No. 24-cv-537-BKS-TWD (N.D.N.Y. June 10, 2025) (ECF

11   No. 82). At the preliminary injunction hearing, counsel for Plaintiffs offered *Stockbridge-Munsee*

12   as an example of a case in which a third party was sued under Section 2710(d)(7)(A)(ii). Ex. J at

13   55:13-56:25. Counsel was mistaken: the parties to that case were Indian tribes, the State of

14   Wisconsin, and its governor; no third parties were named. 922 F.3d at 818.

15       Even if Kalshi were capable of violating a contract to which it is not a party, the Complaint

16   points to no provision of the Picayune compact that was allegedly violated. In connection with their

17   preliminary injunction motion, Plaintiffs' declarant says Section 4.1(c) "specifically prohibits

18   internet gaming activities such as those being conducted by Kalshi." ECF No. 35-2, ¶ 13. But the

19   compact says no such thing; it merely states what "the Tribe" is and is not authorized to do. Ex. G

20   § 4.1(c). And while the Complaint is full of conclusory assertions that Kalshi is violating the

21   compact, ¶¶ 43, 66-68, a review of the document itself reveals that is not and cannot be so—it

22   governs only the conduct of the Picayune Rancheria and California, the actual parties to the compact.

23   Ex. G §§ 1.0(a), 9.1, 9.4(b), 12.1. Ultimately, Plaintiffs are reduced to arguing that the compact

24   does not "authorize" Kalshi to engage in class III gaming activity. ¶¶ 36, 43. But "unauthorized"

25   conduct is beyond the scope of the statutory right of action; only violations of a compact trigger it.

26   *Cf. Bay Mills*, 572 U.S. at 795 n.6 (noting that states cannot sue to enjoin tribes from conducting

27   class III gaming with no compact because such gaming, even though unauthorized, would not

28   violate a compact). As the Ninth Circuit has recognized, because IGRA "creates a comprehensive

Farella Braun + Martel LLP
One Bush Street, Suite 900
San Francisco, California 94104
(415) 954-4400

KALSHI DEFENDANTS' MOTION TO DISMISS -    8
Case No. 3:25-cv-06162-JSC

1    regulatory scheme and provides for particular remedies, courts should not expand the coverage of

2    the statute." *Hein*, 201 F.3d at 1260 (citing *Nat'l R.R. Passenger Corp. v. Nat'l Assoc. of R.R.*

3    *Passengers*, 414 U.S. 453, 458 (1974)).[3]

4        **2.    UIGEA Governs the Conduct Alleged in the Complaint and Insulates It from**
         **Liability in Deference to the CFTC's Exclusive Jurisdiction Over**
5        **Transactions on DCMs.**

6        Even if Plaintiffs had a statutory right of action, the Complaint nonetheless fails to state a

7    claim under IGRA.  The question presented by Plaintiffs' IGRA claim is whether a company

8    operating an internet gaming platform that can be accessed in a place where it is unlawful is liable

9    under IGRA for conducting class III gaming activity on Indian lands.  Here, the answer is no, for

10   two reasons.  First, Congress did not contemplate this scenario when it passed IGRA in 1988; the

11   statute is "silent" on the issue.  *Iipay Nation*, 898 F.3d at 968 (holding that IGRA did not address

12   internet gaming activity and using UIGEA to guide the analysis).  Second, the statute that **did**

13   address the issue—UIGEA—expressly carved out transactions on DCMs, in furtherance of the

14   CFTC's exclusive jurisdiction over such trading activity.  *See* 7 U.S.C. § 2(a)(1)(A).

15       As an initial matter, even if IGRA governed the analysis, the Complaint fails to state a claim

16   because the conduct alleged does not occur "on Indian lands."  In keeping with its pre-internet

17   passage, IGRA's statutory text is focused on physical territory, requiring that tribes issue a separate

18   license "for each place, facility, or location on Indian lands at which class II gaming is conducted,"

19   25 U.S.C. § 2710(b); authorizing "[c]lass III gaming activities on Indian lands only if such activities

20   are . . . located in a State that permits such gaming," *id.* § 2710(d)(1)(B); and directing the NIGC to

21   monitor gaming "conducted on Indian lands" and "inspect and examine all premises located on

22

23   ───────────────
     [3] This is not to say that **no one** has the power to sue over unlawful class III gaming activity that does
24   not violate the express terms of a compact.  As the Supreme Court recognized in *Bay Mills*, "if a
     tribe opens a casino on Indian lands before negotiating a compact, the surrounding State cannot sue"
25   because there is no violation of a compact; rather, "only the Federal Government can enforce the
     law."  572 U.S. at 795 n.6 (citing 18 U.S.C. § 1166(d)); *see also Cabazon Band of Mission Indians*
26   *v. Wilson*, 124 F.3d 1050, 1059-60 (9th Cir. 1997) ("Outside the express provisions of a compact,
     the enforcement of IGRA's prohibitions on class III gaming remains the exclusive province of the
27   federal government."); *Pueblo of Pojoaque v. New Mexico*, 863 F.3d 1226, 1232 (10th Cir. 2017)
     ("Only the federal government can impose criminal or other sanctions against allegedly-illegal
28   gaming on tribal lands in the absence of a tribal-state compact.").

Farella Braun + Martel LLP
One Bush Street, Suite 900
San Francisco, California 94104
(415) 954-4400

KALSHI DEFENDANTS' MOTION TO DISMISS -      9
Case No. 3:25-cv-06162-JSC

Indian lands on which . . . gaming is conducted," *id.* § 2706(b)(1)-(2).  In related contexts, courts have held that touchpoints with an Indian reservation through the internet alone are insufficient to constitute conduct on Indian lands—including as recently as last year, in an age of pervasive internet usage.  *See Hornell Brewing Co. v. Rosebud Sioux Tribal Ct.*, 133 F.3d 1087, 1093 (8th Cir. 1998) (online advertisements viewed by tribal members did not constitute conduct on Indian lands for tribal jurisdiction purposes); *Jackson v. PayDay Fin., LLC*, 764 F.3d 765, 768-69 (7th Cir. 2014) (tribal members' use of the internet to offer loans to nonmembers did not constitute conduct on Indian lands for tribal jurisdiction purposes); *Lexington Ins. Co. v. Smith* ("*Lexington II*"), 117 F.4th 1106, 1109 (9th Cir. 2024) (denying petition for rehearing *en banc*) (noting that neither *Hornell* nor *Jackson* "involved tribal land").

In any event, IGRA does not govern; UIGEA does.  UIGEA is the statute where Congress turned its attention to the issue presented here.  As the Ninth Circuit explained in *Iipay Nation*:

> The UIGEA was passed to regulate online gambling. . . .  [T]he UIGEA does not prohibit otherwise legal gambling.  But the UIGEA does create a system in which a "bet or wager" must be legal both where it is "initiated" and where it is "received."  This requirement makes sense in light of how the internet operates. . . .  In effect, the UIGEA prevents using the internet to circumvent existing state and federal gambling laws, but it does not create any additional substantive prohibitions. 898 F.3d at 964-65.

The solution Congress devised was simple:  if a "bet or wager" placed through an internet gaming platform is unlawful where it is "initiated, received, or otherwise made," it is a "restricted transaction" that is unlawful under federal law.  31 U.S.C. § 5362(10); *see also id.* § 5363.  And if Congress had stopped there, Plaintiffs might have an argument that Kalshi's sports event contracts are "restricted transactions" because they are allegedly unlawful in the place where the "bets or wagers" are "initiated" (*i.e.*, on Plaintiffs' reservations).  But Congress did not stop there.  Through an exclusion from the definition of "bet or wager," UIGEA expressly carves out "any transaction conducted on . . . a registered entity . . . under the Commodity Exchange Act."  *Id.* § 5362(1)(E)(ii).  The Complaint acknowledges, as it must, that Kalshi's event contracts fall within that carveout.  ¶¶ 48, 55 (alleging that Kalshi is a DCM subject to CFTC oversight under the CEA).  Importantly, Congress created this regulatory construct against the express backdrop of IGRA, and yet declined

Farella Braun + Martel LLP
One Bush Street, Suite 900
San Francisco, California 94104
(415) 954-4400

KALSHI DEFENDANTS' MOTION TO DISMISS -     10
Case No. 3:25-cv-06162-JSC

to make any accommodation in UIGEA for "bets or wagers" that could be "initiated" on Indian lands other than for strictly "intratribal" transactions.  *See* 31 U.S.C. § 5362(10)(C); *see also id.* § 5365(b)(3) (clarifying civil enforcement powers for restricted transactions on Indian lands).

That Congress carved out derivatives trading from UIGEA liability makes sense because Congress had already afforded the CFTC "exclusive jurisdiction" over futures and other derivatives trading activity.  In 1936, Congress passed the CEA to bring a measure of federal regulation to derivatives markets, *see Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Curran*, 456 U.S. 353, 362 (1982), but preserved applicable state law, 7 U.S.C. § 6c.  After decades of experimentation with this concurrent regulatory scheme, in 1974, Congress responded by creating the CFTC and giving it "exclusive jurisdiction" over trading on federally designated "contract market[s]."  7 U.S.C. § 2(a)(1)(A).  In 2000, Congress further amended the CEA to include "events" as a type of commodity. *See* Pub. L. No. 106-554, 114 Stat. 2763 (2000); 7 U.S.C. § 1a(19).  And then in 2010, in response to the 2008 financial crisis, the Dodd-Frank Act brought "swaps" within the scope of the CFTC's exclusive jurisdiction, *see* Pub. L. No. 111-203, 124 Stat. 1376, 1666 (2010), defining the term to encompass event contracts.  7 U.S.C. § 1a(47)(A)(ii).  Against this backdrop, it stands to reason that Congress carved out derivatives trading from UIGEA—to avoid any misperception that it wished to reintroduce the unworkable patchwork of regulation that the CEA had expunged.

Contrary to Plaintiffs' vision—in which only IGRA governs, UIGEA hardly exists, and the CEA does not apply because Kalshi has allegedly failed to comply with it (*see infra* III.B.3)—these three statutes coexist comfortably.  The Court should adopt a reading, easily available here, that harmonizes the statutes, not one that manufactures a "positive repugnancy" among them.  *Conn. Nat'l Bank v. Germain*, 503 U.S. 249, 253 (1992).

### 3.    *The Complaint's Allegations of Non-Compliance with the CEA Are Irrelevant and Incorrect.*

Faced with the CEA's exclusive regulatory scheme, and UIGEA's express confirmation of that scheme in UIGEA, Plaintiffs resort to alleging that Kalshi has failed to comply with the CEA. They ask the Court to declare that Kalshi's event contracts are "outside the permissible scope of the CEA" because they are "in contravention of the prohibition in 17 C.F.R. § 40.11(a)(1)."  Compl.,

Farella Braun + Martel LLP
One Bush Street, Suite 900
San Francisco, California 94104
(415) 954-4400

KALSHI DEFENDANTS' MOTION TO DISMISS -
Case No. 3:25-cv-06162-JSC

11

Prayer for Relief, ¶ 1; *see also* ¶¶ 71-92.  The Complaint does not even ***attempt*** to explain why Plaintiffs would have standing to challenge Kalshi's compliance with the CEA or CFTC regulations. Nor does it attempt to explain why any violation of the CEA or CFTC regulations would mean that the CEA does not apply at all, and that state law and IGRA should govern instead.  That is because these assertions make no sense.  If Kalshi has failed to comply with the CEA or CFTC regulations, that is a matter between Kalshi and its regulator, not a reason to turn to IGRA.

In any event, Plaintiffs' assertions of non-compliance are wrong.  The CEA expressly permits DCMs to self-certify the contracts they wish to list on their exchange. 7 U.S.C. § 7a-2(c)(1). 17 C.F.R. § 40.2 prescribes what information a DCM is required to submit when self-certifying, and there is no well-pleaded allegation that Kalshi failed to do that here.  The CEA provides that the CFTC "shall approve" new contracts as a general matter, but "may determine" whether contracts falling into certain enumerated categories—including the undefined term "gaming"—are "contrary to the public interest." 7 U.S.C. § 7a-2(c)(5)(B)-(C).  In furtherance of that Special Rule, the CFTC promulgated 17 C.F.R. § 40.11, which provides that the CFTC "may determine, based on a review of the terms and conditions of a submission under § 40.2," that a contract potentially involving an enumerated activity should be subject to public interest review by the CFTC.  17 C.F.R. § 40.11(c) (2011).  It further provides that "an order approving or disapproving an agreement" subject to such review be issued within 90 days.  *Id.*  Thus, the text of the rule is clear that, even if a contract falls into a category enumerated in the Special Rule and Rule 40.11(a), it may still be "approv[ed] or disapprov[ed]" following the CFTC's review—the very opposite of the blanket prohibition Plaintiffs assert.  And of course, this is the two-step process that the CFTC followed in *KalshiEX LLC*, 2024 WL 4164694.  *See* Ex. F at 3-4; *see also* Ex. H, at 44786 ("registered entities ***may always*** certify products pursuant to the procedures in § 40.2," subject to public interest review under § 40.11(c) (emphasis added)); Ex. I, at 48970-71 ("The Commission interprets [the Special Rule] to contemplate that the Commission engage in a ***two-step inquiry***." (emphasis added)).

Farella Braun + Martel LLP
One Bush Street, Suite 900
San Francisco, California 94104
(415) 954-4400

KALSHI DEFENDANTS' MOTION TO DISMISS -    12
Case No. 3:25-cv-06162-JSC

### C.    PLAINTIFFS FAIL TO STATE A CLAIM FOR VIOLATION OF TRIBAL GAMING ORDINANCES (COUNT II).

Plaintiffs allege that Kalshi has violated their gaming ordinances (the "Ordinances").  But Plaintiffs' conclusory allegations, *e.g.*, ¶¶ 66, 215, 216, do not satisfy the requirement under Federal Rule of Civil Procedure 8 that Plaintiffs "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Nayab v. Capital One Bank*, 942 F.3d 480, 496 (9th Cir. 2019) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Further, Plaintiffs lack authority to enforce their Ordinances against Kalshi, and the Ordinances are, in any event, preempted by the CEA (and not the other way around).

#### 1.    *Plaintiffs Lack Authority to Exercise Tribal Jurisdiction Over Kalshi, a Nonmember*

Plaintiffs assert that they have "jurisdiction and authority" to enforce their Ordinances against Kalshi.  ¶¶ 160, 161, 164.[4]  But Kalshi is not a member of any tribe; Plaintiffs cannot enforce their Ordinances against Kalshi.  The Supreme Court has spoken:  tribal sovereignty is "not so broad as to support the application" of tribal regulations to non-Indians.  *Montana v. United States*, 450 U.S. 544, 563 (1981); *see id.* at 564 ("implicit divestiture" of tribal sovereignty "has been held to have occurred" in areas "involving the ***relations between an Indian tribe and nonmembers of the tribe***") (emphasis in original) (quoting *United States v. Wheeler*, 435 U.S. 313, 326 (1978)); *Strate v. A-1 Contractors*, 520 U.S. 438, 445 (1997) ("[A]bsent express authorization by federal statute or treaty, tribal jurisdiction over the conduct of nonmembers exists only in limited circumstances."). Where a tribe seeks not to regulate its "internal affairs," but instead to regulate the conduct of non-Indians, "it is pressing 'the outer boundaries of an Indian tribe's power.'"  *Chilkat Indian Vill. v. Johnson*, 870 F.2d 1469, 1474 (9th Cir. 1989) (quoting *Nat'l Farmers Union Ins. Cos. v. Crow Tribe of Indians*, 471 U.S. 845, 851 (1985)); *Morongo Band of Mission Indians v. Rose*, 893 F.2d 1074,

---

[4] To the extent that Plaintiffs argue that they can bring a claim for violation of their Ordinances against Kalshi pursuant to IGRA, they are wrong, for the reasons set forth above.  IGRA provides only that tribes can bring a cause of action to enjoin class III gaming activity that is conducted in violation of a tribal-state compact.  *See supra* III.B.1.  It contains no provisions authorizing tribes to bring a cause of action against private parties in federal court for allegedly violating ordinances.

Farella Braun + Martel LLP
One Bush Street, Suite 900
San Francisco, California 94104
(415) 954-4400

KALSHI DEFENDANTS' MOTION TO DISMISS -
Case No. 3:25-cv-06162-JSC                    13

1  1077 (9th Cir. 1990) (tribal ability to "enforce [their] ordinances against a non-Indian" and "apply

2  [their sovereign] power against one outside of [their] communit[ies]" is "disputed").

3      Only in two limited circumstances can tribes exercise sovereign authority over nonmembers:

4  (1) where a tribe seeks to regulate "the activities of nonmembers who enter consensual relationships

5  with the tribe or its members," and (2) where the conduct of a nonmember "threatens or has some

6  direct effect on the political integrity, the economic security, or the health or welfare of the tribe."

7  *Montana*, 450 U.S. at 565-66; *Lexington Ins. Co. v. Smith* ("*Lexington I*"), 94 F.4th 870, 875-76 (9th

8  Cir. 2024).  Neither exception applies here.

9      As to the first, as the Ninth Circuit has recognized, the exercise of tribal regulatory authority

10  is only proper "when a nonmember's conduct ***relates to tribal lands***."  *Lexington I*, 94 F.4th at 880;

11  *see also id.* (claim must "***bear[] some direct connection to tribal lands***" (emphasis in original,

12  internal citation omitted)).  In *Lexington I*, the court concluded that the "unique facts" and "narrow

13  circumstances" of the case—involving insurance policies marketed directly to an Indian tribe

14  covering business and properties on tribal land exclusively—permitted the exercise of tribal

15  authority. *Id.* at 881 ("Tribal land literally and figuratively underlies the contract at issue here.  What

16  could be more quintessentially tribal-land-based than an insurance policy covering buildings and

17  businesses on tribal land?"); *id.* at 886 (insurance policy "exclusively covered property located on

18  tribal lands" and was "explicitly marketed to tribal entities").  But the Ninth Circuit cautioned that

19  its decision should not be read to "suggest that an off-reservation nonmember company may be

20  subject to tribal jurisdiction ***anytime*** it does business with a tribe or tribal member or provides goods

21  or services on tribal lands."  *Id.* at 887 (emphasis added); *see also Lexington II*, 117 F.4th at 1110

22  ("[T]ribal jurisdiction may be proper under the 'direct connection' test if a cause of action is

23  ***sufficiently tied*** to tribal lands.") (emphasis added).

24      This case does not fall within the "narrow circumstances" the court identified in *Lexington

25  I*.  Plaintiffs fail to allege a "direct connection" between Kalshi's operation, from New York, of a

26  nationally regulated derivatives exchange and Plaintiffs' tribal lands.  Plaintiffs assert that Kalshi

27  makes sports event contracts available over the internet to people—members and nonmembers

28  alike—only some of whom may be on tribal lands.  ¶ 69; *see also* ¶¶ 14-15, 155.  This is true.  But

Farella Braun + Martel LLP
One Bush Street, Suite 900
San Francisco, California 94104
(415) 954-4400

KALSHI DEFENDANTS' MOTION TO DISMISS -    14
Case No. 3:25-cv-06162-JSC

1    it is hardly the kind of "close nexus" to tribal lands required to satisfy *Montana*'s first exception or

2    to justify overriding the "general rule that restricts tribes' inherent sovereign authority over

3    nonmembers on reservation lands." *Lexington I*, 94 F.4th at 875 (emphasis added).  It is instead the

4    kind of activity—conducted by a nonmember over the internet, available nationwide—that courts

5    have rejected as a basis for recognizing tribal jurisdiction.  *Hornell*, 133 F.3d at 1093 (tribal

6    jurisdiction over nonmember company was improper where tribal members alleged they were

7    injured after viewing company's advertisements online); *Jackson*, 764 F.3d at 768-69 (tribal

8    jurisdiction over nonmembers was improper where nonmembers, using the internet, received loans

9    from a company owned by a tribal member); *Lexington II*, 117 F.4th at 1110-11 (distinguishing

10   *Lexington* from *Jackson*, which involved activity "entirely conducted over the Internet," and

11   *Hornell*, where the nonmember "had no connection to the reservation other than advertising on the

12   Internet").  Kalshi's online operation of a nationwide DCM accessible across the United States is

13   not "sufficiently tied" to tribal lands to provide a basis for tribal jurisdiction.[5]

14   Nor have Plaintiffs alleged facts that would support the exercise of tribal jurisdiction under

15   the second *Montana* exception.  Plaintiffs vaguely assert that Kalshi's conduct "directly interferes

16   with the ability of the Tribes to govern themselves under their own laws on their Reservations," and

17   that Kalshi "draws business away from the Tribes' casinos by allowing patrons to participate in class

18   III gaming from their homes," which they surmise has a "direct impact on tribal governmental

19   functions" and a "tangible effect on the services and programs the tribal governments provide to

20   their members and all persons who live, work, and visit the Reservations."  ¶¶ 6, 43, 69.  This is not

21   nearly enough to allege that Kalshi "threatens or has some direct effect on the political integrity, the

22   economic security, or the health or welfare of the tribe."  *Montana*, 450 U.S. at 566.  "*Montana*'s

23

---

24   [5] The Ninth Circuit has also recognized tribes' "inherent authority to exclude, independent from the
     power recognized in *Montana*."  *Water Wheel Camp Recreational Area Inc. v. LaRance*, 642 F.3d

25   802, 805 (9th Cir. 2011).  But that power is similarly linked to the tribes' "sovereign authority over
     tribal land" and does not provide tribes with jurisdiction over nonmember entities like Kalshi,

26   operating from thousands of miles away.  *Id.* at 810-11.  Indeed, the power to exclude is not absolute;
     it gives way where "Congress has said otherwise."  *Id.* at 812-13 (sovereign power to exclude may

27   give way to "competing state interest").  Here, Congress did exactly that in IGRA, UIGEA, and the

28   CEA.  *See supra* III.B.

Farella Braun + Martel LLP
One Bush Street, Suite 900
San Francisco, California 94104
(415) 954-4400

KALSHI DEFENDANTS' MOTION TO DISMISS -
Case No. 3:25-cv-06162-JSC                    15

second exception does not entitle the tribe to complain or obtain relief against every use of fee land that has some adverse effect on the tribe." *Evans v. Shoshone-Bannock Land Use Policy Comm'n*, 736 F.3d 1298, 1306 (9th Cir. 2013) (internal quotation marks and citation omitted). Speculating that some people may trade on Kalshi "from their homes" is not the kind of "catastrophic" impact that would "imperil the subsistence of the tribal community" necessary to support Plaintiffs' attempt to exert sovereign authority over a nonmember.[6]

### 2.    The CEA Preempts the Ordinances.

Even if Plaintiffs had authority to enforce the Ordinances against Kalshi, the claim would fail for the additional reason that the Ordinances are preempted by federal law. Plaintiffs argue that their Ordinances "preempt the field of conduct that the Tribes define as gaming in their Ordinances." ¶ 163. But they have it backwards. Tribal gaming ordinances, if adopted pursuant to IGRA and approved by the Commissioner, permit tribes to regulate gaming activity, as defined in the statute, where that gaming activity is "conducted" on tribal lands. But as set forth above, neither IGRA nor any gaming ordinances adopted pursuant to IGRA can preempt the "exclusive jurisdiction" that the CEA gave to the CFTC to regulate the trading of event contracts on a federally registered DCM. *See* 7 U.S.C. § 2(a)(1)(A); *supra* III.B.3.

Citing *Fisher v. District Court*, 424 U.S. 382 (1976), Plaintiffs argue that the Ordinances preempt "any other federal or state law that conflicts," including "the provisions of the CEA." ¶ 163. But *Fisher* concerned a conflict "between the jurisdiction of *state* and tribal courts." 424 U.S. at 386 (emphasis added). The Supreme Court held that a state court did not have jurisdiction over a tribal adoption matter that was solely "a dispute arising on the reservation among reservation Indians." *Id.* at 387-88. *Fisher*'s express concern was whether the state court had jurisdiction over a "litigation involv[ing] only Indians." *Id.* at 386. It provides no support for Plaintiffs' assertion

---

[6] Citing *FMC Corp. v. Shoshone-Bannock Tribes*, 942 F.3d 916, 939 (9th Cir. 2019), Plaintiffs have claimed that the conduct here "poses a serious risk of harm to the Tribes' gaming operations." ECF No. 58 at 4. *FMC* involved the contamination of tribal lands with "hazardous waste" that was "radioactive, carcinogenic, and poisonous." 942 F.3d at 921. The second *Montana* exception existed because the storage of "millions of tons of hazardous waste on the Reservation" imperiled the "subsistence or welfare" of the tribes. *Id.* at 935. No comparable harm is alleged here.

Farella Braun + Martel LLP
One Bush Street, Suite 900
San Francisco, California 94104
(415) 954-4400

KALSHI DEFENDANTS' MOTION TO DISMISS -    16
Case No. 3:25-cv-06162-JSC

that the Ordinances could somehow preempt a conflicting federal law.  On the contrary, Plaintiffs are sovereigns "with limited powers."  *Solis v. Matheson*, 563 F.3d 425, 429 (9th Cir. 2009).  They are "dependent on, and subordinate to the federal government."  *Id.* at 429-30.  They "retain powers of self-government," but those powers "may be limited, modified, or eliminated by Congress."  *Id.* at 430; *Santa Clara Pueblo v. Martinez*, 436 U.S. 49, 56 (1978) ("Congress has plenary authority to limit, modify, or eliminate powers of local self-government which the tribes otherwise possess.").

For that reason, "Indians and their tribes are equally subject to statutes of general applicability just as any other United States citizen."  *Solis*, 563 F.3d at 430.  A "statute of general applicability that is"—like the CEA—"silent on the issue of applicability to Indian tribes" applies to tribes unless "(1) the law touches exclusive rights of self-governance in purely intramural matters; (2) the application of the law to the tribe would abrogate rights guaranteed by Indian treaties; or (3) there is proof by legislative history or some other means that Congress intended the law not to apply to Indians on their reservations."  *Id.*  None of these conditions exists here.

Plaintiffs contend that permitting Kalshi to operate its exchange pursuant to a uniform federal regulatory scheme would impact their ability "to govern themselves" by drawing business away from their casinos.  ¶¶ 6, 69.  But the fact that a generally applicable federal statute "may incidentally affect the revenue streams of tribal commercial operations that fund tribal governments" does not mean that it "touches exclusive rights of self-governance in purely intramural matters."  *NLRB v. Little River Band of Ottawa Indians*, 788 F.3d 537, 552, 554 (6th Cir. 2015) (applying National Labor Relations Act to nonmember employees of tribal casino did not undermine "tribal self-governance in purely intramural matters," and concluding that while "IGRA provides a statutory basis to regulate tribal gaming activities," it did not follow that "no other federal regulations" could apply); *see also San Manuel Indian Bingo & Casino v. NLRB*, 475 F.3d 1306, 1315 (D.C. Cir. 2007) (finding that operation of tribal casino was not "purely intramural" nor a "traditional attribute of self-government" and affirming application of a law of general applicability whose "total impact on tribal sovereignty amounts to some unpredictable, but probably modest, effect on tribal revenue and the displacement of legislative and executive authority that is secondary to a commercial undertaking").

Farella Braun + Martel LLP
One Bush Street, Suite 900
San Francisco, California 94104
(415) 954-4400

KALSHI DEFENDANTS' MOTION TO DISMISS -
Case No. 3:25-cv-06162-JSC

17

### D.   PLAINTIFFS LACK STANDING TO SUE FOR INFRINGEMENT OF TRIBAL SOVEREIGNTY (COUNT IV)

As a fallback, the Complaint separately alleges that Kalshi has interfered with Plaintiffs' sovereignty by violating the Ordinances. ¶¶ 214-219. They assert that Kalshi's conduct undermines Plaintiffs' ability to regulate gaming on their tribal lands. *Id.* ¶¶ 6, 43, 68, 216, 218. They also claim that Kalshi's sports event contracts have caused them to lose revenues, impacting their government operations. *Id.* ¶¶ 41, 69.

As explained above, Plaintiffs do not have sovereign authority over Kalshi. Under *Montana*, they lack jurisdiction to enforce the Ordinances against nonmembers whose conduct is not "quintessentially tribal-land-based," *Lexington I*, 94 F.4th at 881, but instead offered over the internet. As a result, Plaintiffs do not and cannot assert a cognizable Article III injury to their sovereignty flowing from Kalshi's alleged violation of their Ordinances. *Harrison v. Jefferson Par. Sch. Bd.*, 78 F.4th 765, 770 (5th Cir. 2023) ("[F]or a sovereign interest to serve as [the basis for] a cognizable injury for federal standing, 'the acts of the defendant . . . [must] invade the [government's] sovereign right, resulting in some tangible interference with its authority to regulate or to enforce its laws.'") (quoting *Saginaw Cnty. v. STAT Emergency Med. Servs., Inc.*, 946 F.3d 951, 957 (6th Cir. 2020)). Count IV must therefore be dismissed on standing grounds under Rule 12(b)(1).

Plaintiffs assert that "[a]n actual controversy exists between the Tribes and Kalshi, in that the Tribes contend they have the authority to enforce their Ordinances against Kalshi and prohibit it from engaging in sports gambling on their Reservations, while Kalshi asserts that the Tribes have no such authority." ¶ 217. But "contending"—wrongly—that they have authority to enforce their Ordinances does not create standing; Plaintiffs must ***actually have*** that authority and allege how Kalshi's conduct interferes with it. Nor can Plaintiffs establish injury to their sovereignty merely by alleging that Kalshi is violating the Ordinances. "[S]omeone violat[ing] a law . . . does not by itself injure the government in an Article III way. Only 'actual or threatened interference with [its] authority' does." *Harrison*, 78 F.4th at 771 (quoting *STAT Emergency*, 946 F.3d at 956) (internal quotations omitted). "Violating the law is different from hindering its enforcement." *Id.* at 772.

Farella Braun + Martel LLP
One Bush Street, Suite 900
San Francisco, California 94104
(415) 954-4400

KALSHI DEFENDANTS' MOTION TO DISMISS -     18
Case No. 3:25-cv-06162-JSC

And Plaintiffs do not allege any "tangible interference" with their enforcement authority, *id.* at 770, other than characterizing Kalshi's defense against this suit as an assertion that Plaintiffs "have no such authority." ¶ 217. Plaintiffs cannot manufacture Article III standing by asserting that they have enforcement authority over Kalshi when they do not, and then claiming that Kalshi is hindering that authority by pointing out that it does not exist.

Plaintiffs also allege that Kalshi's sports event contracts "draw[] business" away from Plaintiffs' casinos, resulting in a "[l]oss of revenue" that "has a direct impact on tribal governmental functions." ¶¶ 41, 69, 216, 219. But this "theory of injury rests on an 'attenuated chain of inferences,'" which is not nearly enough. *I.C. v. Zynga, Inc.*, 600 F. Supp. 3d 1034, 1052 (N.D. Cal. 2022) (quoting *Clapper v. Amnesty Int'l*, 568 U.S. 398, 414 n.5 (2013)). Plaintiffs do not, and cannot, offer sports betting at their casinos, ¶ 42, and they do not plausibly allege that, by offering a different product, Kalshi has had a "direct impact on tribal governmental functions." ¶ 69. Even accepting *arguendo* that Kalshi is engaged in "sports gambling" like a sportsbook (it is not), that is—by definition—not a "business" that Kalshi can "draw away" from Plaintiffs' casinos. Under Plaintiffs' logic, any conduct that draws business away from their casinos—the building of a professional sports stadium or concert venue nearby, rezoning of neighboring areas making residential housing more or less attractive, the relocation of a major employer to a different city— would interfere with their right to self-governance. The "attenuated chain of inferences" that Plaintiffs ask the Court to draw does not establish a claim of harm to their sovereign interest.

### E.    PLAINTIFFS FAIL TO STATE A LANHAM ACT CLAIM (COUNT V).

Plaintiffs allege that Kalshi violated the Lanham Act by marketing its sports event contracts as "fully legal and accessible nationwide" and as "betting." ¶ 222. Plaintiffs fail to adequately allege Lanham Act standing, and their claim thus fails at the threshold. Plaintiffs also have not adequately alleged either falsity or consumer deception or injury—certainly not in accordance with the heightened pleading standards of Rule 9(b). *Stahl Law Firm*, 2013 WL 4873065, at *7 (applying Rule 9(b) to Lanham Act false advertising claim and citing cases).

Farella Braun + Martel LLP
One Bush Street, Suite 900
San Francisco, California 94104
(415) 954-4400

KALSHI DEFENDANTS' MOTION TO DISMISS -    19
Case No. 3:25-cv-06162-JSC

1

### 1. Plaintiffs Lack Standing Under the Lanham Act.

To establish standing for a Lanham Act false advertising claim, Plaintiffs must allege (1) "an injury to a commercial interest in reputation or sales," and (2) that their "economic or reputational injury flow[s] directly from the deception wrought by the defendant's advertising." *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 132-33 (2014); *ThermoLife Int'l, LLC v. BPI Sports, LLC*, 2022 WL 612669, at *2 (9th Cir. Mar. 2, 2022).

Because "none of [Kalshi's] statements are alleged to disparage or even refer to [Plaintiffs]," Plaintiffs have not plausibly alleged reputational harm. *HomeLight, Inc. v. Shkipin*, 721 F. Supp. 3d 1019, 1023 (N.D. Cal. 2024); *Alfasigma USA, Inc. v. First Databank, Inc.*, 2022 WL 899848, at *8 (N.D. Cal. Mar. 28, 2022). And Plaintiffs barely attempt to do so, offering only a conclusory allegation that Kalshi's advertisements damaged their goodwill and reputation. ¶ 227. Plaintiffs' allegations of injury to sales are similarly deficient and conclusory. *Id.*

Nor are Plaintiffs entitled to any presumption of injury because, on the face of the Complaint, Kalshi and Plaintiffs are not direct competitors. *TrafficSchool.com, Inc. v. Edriver Inc.*, 653 F.3d 820, 827 (9th Cir. 2011) (requiring that a "plaintiff compete[] directly with [a] defendant" before presuming a commercial injury "sufficient to establish standing"). Kalshi offers event contracts on a wide range of subjects, including sports, politics, and entertainment, on an online-based exchange. ¶¶ 108, 127, 155. Plaintiffs, by contrast, run brick-and-mortar casinos on their reservations that offer slot machines, lottery games, and card games to in-person visitors. ¶ 42. They do not and cannot offer sports betting. *Id.* Plaintiffs' preliminary injunction papers asserted that they compete with Kalshi for the same "consumer wagering dollars," ECF No. 56 at 7, but the Complaint alleges nothing that would allow the Court to reach that conclusion in light of the very different businesses they run and products they offer. *See Vampire Fam. Brands, LLC v. MPL Brands, Inc.*, 2021 WL 4134841, at *7 (C.D. Cal. Aug. 8, 2021) (pre-mixed cocktail distributor did not directly compete with wine and vodka distributor even though both sold alcoholic beverages).

Plaintiffs also offer only a single, conclusory allegation that their alleged injuries occurred "[a]s a result of Kalshi's false and misleading statements." ¶ 227. Elsewhere in the Complaint, Plaintiffs allege—again without offering any concrete facts—that Kalshi and/or Robinhood have

Farella Braun + Martel LLP
One Bush Street, Suite 900
San Francisco, California 94104
(415) 954-4400

"impermissibly diverted revenue that, by law and compact, belongs exclusively to the Plaintiffs." ¶ 212; *see also* ¶ 69. But Plaintiffs do not connect these allegations in any way to Kalshi's advertising. "Determining the actual relationship" between Kalshi's ads (which say nothing about Plaintiffs' casinos) and Plaintiffs' allegedly lost sales "would require precisely the 'speculative . . . proceedings or intricate, uncertain inquiries' that the Supreme Court [has] cautioned against." *Alfasigma*, 2022 WL 899848, at *9 (quoting *Lexmark*, 572 U.S. at 138-40).

At the preliminary injunction hearing, counsel for Plaintiffs, citing *West Flagler Associates v. Haaland*, 573 F. Supp. 3d 260 (D.D.C. 2021), argued that Plaintiffs had shown commercial injury by alleging that individuals who might have played card games or slot machines at Plaintiffs' casinos could instead choose to stay at home transacting on Kalshi's platform. Ex. J at 10:20-11:25. Setting aside the lack of concrete allegations in support of this theory, *West Flagler* is irrelevant here. That case did not involve a claim under the Lanham Act, and the district court—in a ruling vacated on appeal, *West Flagler Associates v. Haaland*, 71 F.4th 1059 (D.C. Cir. 2023)—concluded that the plaintiff had Article III standing based in large part on the results of an "expert" survey that supposedly evidenced competitive injury.[7] Nothing in that decision or, more importantly, in the Complaint establishes the kind of causal link between Kalshi's advertisements and Plaintiffs' alleged injury "that could rule out 'any number of reasons' why Plaintiff[s] may have lost sales." *Alfasigma*, 2022 WL 899848, at *9 (quoting *Lexmark*, 572 U.S. at 140).

### 2. Plaintiffs Fail to Allege Falsity.

Plaintiffs also have not alleged that Kalshi made "a false statement of fact." *Southland Sod Farms v. Stover Seed Co*., 108 F.3d 1134, 1139 (9th Cir. 1997). According to Plaintiffs, ads stating "that Kalshi's sports event contracts are fully legal and accessible nationwide" are false because these event contracts are supposedly "defective[] . . . under 17 C.F.R. [§] 40.2." ¶ 222. As explained above, Kalshi's event contracts are fully compliant with the CFTC's regulations, including 17 C.F.R. §§ 40.2 and 40.11. *See supra* III.B.3. And, in any event, an ad saying that a product is

---

[7] The reliability of that survey evidence is questionable. *See* Opposition to Request for Judicial Notice, ECF No. 60.

Farella Braun + Martel LLP
One Bush Street, Suite 900
San Francisco, California 94104
(415) 954-4400

KALSHI DEFENDANTS' MOTION TO DISMISS -     21
Case No. 3:25-cv-06162-JSC

1  "legal" is an "inactionable opinion," and not a statement of fact.  *ThermoLife Int'l, LLC v. Gaspari*

2  *Nutrition Inc.*, 648 F. App'x 609, 614-15 (9th Cir. 2016).

3          While courts recognize an exception to this rule where the speaker "lacks a good faith belief

4  in the truth of the statement," that exception does not apply here because (1) Kalshi has complied

5  with the CEA and CFTC's requirements; (2) two federal district courts have agreed with Kalshi that

6  state gambling laws are preempted by the CEA, *see KalshiEX LLC v. Hendrick*, 2025 WL 1073495,

7  at *8 (D. Nev. Apr. 9, 2025); *KalshiEX LLC v. Flaherty*, 2025 WL 1218313, at *7 (D.N.J. Apr. 28,

8  2025);[8] and (3) the CFTC itself has agreed that, "due to federal preemption, event contracts never

9  violate state law when they are traded on a DCM."  Appellant Br. at *27, *KalshiEX LLC v. CFTC*,

10  2024 WL 4512583 (D.C. Cir. Oct. 16, 2024).  Plaintiffs assert that "Kalshi knew, or should have

11  known, that its advertising was false" as "numerous online users have expressed concern regarding

12  the legality of these contracts."  ¶ 223 (citing ¶ 100, summarizing social media comments and

13  referring to a Reddit page).  But these kinds of anonymous comments—which could have been made

14  by competitors or bots or trolls—are of "limited value."  *QVC Inc. v. Your Vitamins, Inc.*, 439 F.

15  App'x 165, 168-69 (3d Cir. 2011).  Plaintiffs cannot seriously suggest that Kalshi, while operating

16  under the regulatory oversight of the CFTC, somehow believed based on a smattering of social

17  media comments that it was not a duly registered DCM authorized to operate a nationwide exchange.

18          Plaintiffs also complain that Kalshi's ads falsely refer to sports event contracts as "betting."

19  ¶¶ 222-23, 225.  But elsewhere in their Complaint, Plaintiffs allege—in accusing Kalshi of violating

20  a compact, Secretarial Procedures, and the Ordinances—that Kalshi *is* engaged in betting.  ¶ 43

21  (alleging that Kalshi is "offering for play to the general public the class III game of sports betting");

22  ¶ 69 (same); ¶ 63 (alleging that Kalshi is offering "betting on whether the 49ers will win the Super

23

---

24  [8] In one of these cases, *Hendrick*, the state has asked the court to vacate the preliminary injunction
that the court entered in favor of Kalshi on grounds that in another case, involving another party,

25  the same court concluded that the event contracts at issue were not swaps.  *KalshiEX LLC v.*
*Hendrick*, No. 2:25-cv-575, ECF No. 142 (filed Oct. 17, 2025).  That decision does not affect the

26  court's holding in *Hendrick* that the CEA preempts state laws when it comes to event contracts
traded on a CFTC-registered DCM like Kalshi.  *Cf. KalshiEX LLC v. Martin*, 2025 WL 2194908

27  (D. Md. Aug. 1, 2025), *appeal filed*, No. 25-1892 (4th Cir. Aug. 6, 2025) (in a decision currently on

28  appeal, declining to grant a preliminary injunction in favor of Kalshi on the record before the court).

Farella Braun + Martel LLP
One Bush Street, Suite 900
San Francisco, California 94104
(415) 954-4400

KALSHI DEFENDANTS' MOTION TO DISMISS -    22
Case No. 3:25-cv-06162-JSC

1  Bowl"). Plaintiffs cannot have it both ways, seeking to hold Kalshi liable for offering sports betting

2  *and* for deceiving consumers by saying that is what they are doing.

### 3. Plaintiffs Do Not Adequately Allege a Likelihood of Deception or Injury.

4  Plaintiffs' Lanham Act claim fails for the additional and independent reason that they have

5  failed to adequately allege that Kalshi's ads "deceived or ha[ve] the tendency to deceive a substantial

6  segment of its audience." *Southland*, 108 F.3d at 1139. They make a single allegation that Kalshi's

7  "advertisements have deceived, and are still likely to deceive, consumers into believing that Kalshi

8  was associated with or created [] a gambling platform affirmatively endorsed by the federal

9  government." ¶ 225. This conclusory allegation is deficient under Rule 9(b). Nowhere do Plaintiffs

10  allege that Kalshi has ever made any statements representing—or even suggesting—that they had

11  received federal endorsement, and "the law does not impute representations of government approval

12  in the absence of explicit claims." *Scilex Pharms. Inc. v. Sanofi-Aventis U.S. LLC*, 2021 WL

13  11593043, at *8 (N.D. Cal. Aug. 16, 2021) (dismissing false advertising claim based on allegations

14  that ads implied governmental approval and citing cases).

15  Plaintiffs' references to social media reactions to Kalshi's posts (without providing the actual

16  posts that are purportedly the subject of these comments), ¶¶ 100, 225, fail for the reasons set forth

17  above. Indeed, Plaintiffs nowhere allege a connection between these comments and the "universe

18  of consumers whose views are relevant." *QVC Inc.*, 439 F. App'x at 168-69. And for the same

19  reasons that they cannot establish Lanham Act standing, *see supra* III.E.1, Plaintiffs have not

20  sufficiently alleged that they were or are "likely to be injured as a result of [Kalshi's

21  advertisements]." *Southland*, 108 F.3d at 1139.

### F. PLAINTIFFS FAIL TO STATE A CIVIL RICO CLAIM (COUNT III).

23  Plaintiffs accuse Kalshi (a DCM) and Robinhood (an FCM) of engaging in a criminal

24  racketeering enterprise in full view of their federal regulator. They allege that Kalshi and Robinhood

25  are violating the civil RICO statute by (1) offering a new product, ¶¶ 172-74; (2) entering into a

26  business relationship that involves "revenue sharing" and the integration of their platforms, ¶¶ 176,

27  178-80; and (3) making different legal arguments in response to challenges by state regulators, ¶

28  183. According to Plaintiffs, Kalshi and Robinhood have "consciously disregard[ed]" the

Farella Braun + Martel LLP
One Bush Street, Suite 900
San Francisco, California 94104
(415) 954-4400

KALSHI DEFENDANTS' MOTION TO DISMISS -    23
Case No. 3:25-cv-06162-JSC

"concerns" of regulators by offering sports event contracts notwithstanding a "mutual awareness of the ongoing regulatory scrutiny surrounding such products." ¶ 170.

Big picture: it cannot be a violation of RICO for regulated entities to offer a product that certain states or tribes have challenged in court. That is especially true here, where the exclusive federal regulator has not challenged the product in question. RICO was enacted to eliminate "the infiltration of organized crime and racketeering into legitimate organizations operating in interstate commerce." S. Rep. No. 91-617, at 76 (1969); *Fitzgerald v. Chrysler Corp.,* 116 F.3d 225, 227 (7th Cir. 1997) (prototypical RICO case is one in which a person "bent on criminal activity" uses control of a legitimate firm to perpetrate criminal activities). RICO does not apply to routine commercial activity in a routine commercial relationship, and it does not empower Plaintiffs to challenge the judgment of the CFTC in permitting Kalshi and Robinhood to offer sports event contracts.

To make out a claim that Defendants are "conducting the affairs" of an association-in-fact enterprise in violation of 18 U.S.C. § 1962(c), Plaintiffs must show that Defendants (1) participated in the conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity and (5) proximately caused injury to Plaintiffs' business or property. *Eclectic Props. E., LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 997 (9th Cir. 2014) (citing *Sedima S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 497 (1985)). Plaintiffs fail to adequately allege any of these elements.

### 1. Plaintiffs Have Not Alleged that Defendants Are Conducting the Affairs of an Association-in-Fact Enterprise.

To plead an association-in-fact enterprise, courts require something that "indicate[s] how the cooperation" between businesses "exceed[s] that inherent in every commercial transaction." *United Food & Com. Workers Unions & Emps. Midwest Health Benefits Fund v. Walgreen Co.*, 719 F.3d 849, 856 (7th Cir. 2013). RICO does not punish "routine commercial relationship[s]." *Fraser v. Team Health Holdings, Inc.*, 2022 WL 971579, at *11 (N.D. Cal. Mar. 31, 2022) (no enterprise where businesses were plausibly engaged in ordinary-course venture). Similarly, courts do not find that commercial parties are "conducting the affairs" of a RICO enterprise absent something beyond routine commercial activity characteristic of each defendant's individual business. *Reves v. Ernst & Young*, 507 U.S. 170, 185 (1993) (routine activity by each defendant insufficient to constitute

Farella Braun + Martel LLP
One Bush Street, Suite 900
San Francisco, California 94104
(415) 954-4400

KALSHI DEFENDANTS' MOTION TO DISMISS -    24
Case No. 3:25-cv-06162-JSC

1    "conduct[ing] or participat[ing] in the conduct of the '*enterprise's* affairs,'" as opposed to "their

2    *own* affairs") (emphasis in original); *Gardner v. Starkist Co.*, 418 F. Supp. 3d 443, 461 (N.D. Cal.

3    2019) ("routine commercial dealings" insufficient to allege defendants "committed acts towards

4    [an] alleged common purpose").

5            Plaintiffs assert that Defendants are conducting the affairs of an association-in-fact

6    enterprise "to design, market, distribute, and widely disseminate event contracts based on sports

7    outcomes."  ¶ 170.  But it is the business of Kalshi as a DCM to operate an exchange where event

8    contracts are traded, and it is the business of Robinhood as an FCM to solicit and accept orders to

9    trade. *See* 7 U.S.C. § 1a(6) (defining DCMs); *id.* § 1a(28) (defining FCMs); *see also* CFTC Release

10   No. 9091-25, *CFTC Staff Issues FCM FAQs* (June 30, 2025), https://www.cftc.gov/PressRoom/

11   PressReleases/9091-25 (FCMs "perform critical functions necessary for the efficient operation of

12   the futures and cleared swaps markets" operated by DCMs by acting as "intermediaries, facilitating

13   transactions between FCM customers on one side and contract markets and clearing organizations

14   on the other"); *Merrill Lynch*, 456 U.S. at 360  (describing FCMs as "essential participants" in

15   futures markets).

16           Plaintiffs contend that Kalshi contributes to the alleged enterprise by "self-certify[ing]"

17   event contracts "on sports outcomes" and by challenging efforts of state regulators to limit Kalshi's

18   offerings as "federal[ly] preempt[ed]" or illegal, ¶¶ 183, 185, while Robinhood allegedly "allows

19   users to access Kalshi's event contracts directly within the Robinhood app" in exchange for a "$0.01

20   commission per contract traded," ¶ 179.  But Plaintiffs do not allege that such conduct extends

21   beyond routine commercial activity—nor could they, considering that Congress itself created the

22   self-certification process.  *See* 7 U.S.C. § 7a-2(5)(c).  And the revenue-sharing arrangement alleged

23   in the Complaint is commonplace, not nefarious.  *See, e.g.*, *Curran*, 456 U.S. at 359 (explaining that

24   DCMs and FCMs "are financed by commissions on the purchase and sale of futures contracts made

25   over the exchange" and that FCMs have "an interest in maximizing the activity on the exchange").

26   As for Kalshi's legal challenges to what it views as unlawful state cease-and-desist letters, that is

27   not the "conduct" of a RICO enterprise; it is an effort by a regulated entity to avoid regulatory chaos.

28   *See, e.g.*, *BNSF Ry. Co. v. Cal. Dep't of Tax & Fee Admin.*, 904 F.3d 755 (9th Cir. 2018) (affirming

Farella Braun + Martel LLP
One Bush Street, Suite 900
San Francisco, California 94104
(415) 954-4400

KALSHI DEFENDANTS' MOTION TO DISMISS -    25
Case No. 3:25-cv-06162-JSC

injunctive relief in favor of railroad company on grounds that federal law preempted state regulation); *Duke Energy Trading & Mktg., L.L.C. v. Davis*, 267 F.3d 1042 (9th Cir. 2001) (granting injunctive relief in favor of energy supplier on grounds that federal law preempted state regulation).

Finally, Plaintiffs point to Robinhood's incorporation of Kalshi's foundational and regulatory documents into its platform as going beyond "standard commercial dealings." ¶ 180. But this integration is ***required*** by CFTC.  17 C.F.R. § 1.55 (2025).  Complying with federal regulations is not the conduct of a RICO enterprise.  *Cf. Cleveland Bakers & Teamsters & Welfare Fund v. AMAG Pharms., Inc.*, No. 23-12575-FDS, 2025 WL 1024103, at *7 (D. Mass. Mar. 12, 2025) ("It would be inconsistent with the FDCA regulatory regime to submit a drug manufacturer to liability under the federal mail- and wire-fraud statutes for (1) doing something that the FDA requires or (2) failing to do something that the FDA prohibits.").

### 2.    *Plaintiffs Do Not Plausibly Allege Any Predicate Acts of Racketeering.*

Plaintiffs allege three predicate acts of racketeering: (1) wire fraud, 18 U.S.C. § 1343; (2) transmitting wagering information, *id.* § 1084; and (3) operating an illegal gambling business, *id.* § 1955.  Under Rule 9(b), civil RICO claims relying on alleged wire fraud must "state with particularity the circumstances constituting fraud," requiring allegations that specify "who, what, when, where, and how."  *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009); *United Centrifugal Pumps*, 1991 WL 274232, at *2 ("[A]llegations of predicate RICO acts which sound in fraud are subject to the particularity and specificity requirements of Rule 9(b).").  The Complaint does not do that with respect to wire fraud in particular, nor does it satisfy Plaintiffs' pleading obligations with respect to any other predicate acts.

### a.    **Plaintiffs Have Not Adequately Allege Wire Fraud.**

Courts do "not look favorably" on RICO cases predicated on mail and wire fraud, in part because "all modern business transactions entail use of the mails or wires."  *Midwest Grinding Co. v. Spitz,* 976 F.2d 1016, 1025 (7th Cir. 1992) (collecting cases).  To plead wire fraud, a plaintiff must allege three elements with the specificity: (1) a scheme to defraud; (2) use of the wires to further the fraudulent scheme; and (3) specific intent to defraud.  *United States v. Galecki*, 89 F.4th 713, 737 (9th Cir. 2023); *United States v. Jinian*, 725 F.3d 954, 960 (9th Cir. 2013) ("[T]here is no

Farella Braun + Martel LLP
One Bush Street, Suite 900
San Francisco, California 94104
(415) 954-4400

KALSHI DEFENDANTS' MOTION TO DISMISS -    26
Case No. 3:25-cv-06162-JSC

fraudulent scheme without specific intent.") (citation omitted).  Courts require that the defendant act with the intent "not only to make false statements or utilize other forms of deception, but also to deprive a victim of money or property by means of those deceptions."  *United States v. Miller*, 953 F.3d 1095, 1101 (9th Cir. 2020).  "In other words, a defendant must intend to deceive ***and*** cheat." *Id.* (emphasis in original).

Plaintiffs allege that Kalshi has perpetrated a "scheme to defraud by false representations," arguing that Kalshi engaged in "the systematic misrepresentation of unlawful gaming contracts as legitimate commodity contracts tradable on a CFTC-regulated exchange, in direct conflict with the CEA and CFTC regulations."  ¶¶ 190-91.  The only specific statements they point to are (1) Kalshi's self-certification of sports event contracts on January 22, 2025; and (2) Robinhood's March 17, 2025 press release, linking to Kalshi's self-certification.  ¶¶ 192-94.[9]  They argue that it was false for Kalshi to "present[] these gaming contracts as CEA-compliant, despite a demonstrable insufficiency in establishing compliance with the CEA's provisions against gaming, specifically 7 U.S.C. § 7a-2(c)(5)(C) and 17 C.F.R. § 40.11."  ¶ 192.

Kalshi is a CFTC-regulated exchange.  ¶ 71.  There was nothing false—let alone recklessly or patently false—about Kalshi's self-certification, which complied with the procedures Congress established in the CEA and the CFTC regulations promulgated thereunder.  *See supra* III.B.3. Plaintiffs assert that Kalshi's self-certification represented a "rapid and contradictory shift" without "legal justification," apparently referring to previous litigation in the District of Columbia involving Kalshi's political event contracts.  *See* ¶¶ 76, 192.  But Kalshi's position in that case was not contradictory.  In its litigation with the CFTC, Kalshi at most acknowledged that it was a closer call whether sports event contracts—as opposed to political event contracts—constituted "gaming" under 17 C.F.R. § 40.11(a).  But Kalshi's position then as now was that Congress empowered the CFTC to conduct public interest review of contracts that may involve the enumerated categories in § 40.11(a).  Br. of Appellee KalshiEX LLC, *KalshiEX LLC v. CFTC*, 2024 WL 4802698, at *45

---

[9] Plaintiffs also engage in impermissible group pleading as to the two Kalshi defendants.  ¶ 3.  *See In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Pracs., & Prods. Liab. Litig.*, 826 F. Supp. 2d 1180, 1201 (C.D. Cal. 2011).

Farella Braun + Martel LLP
One Bush Street, Suite 900
San Francisco, California 94104
(415) 954-4400

KALSHI DEFENDANTS' MOTION TO DISMISS -    27
Case No. 3:25-cv-06162-JSC

(D.C. Cir. Nov. 15, 2024) (observing that it was "sensible for Congress to empower the CFTC to at least review the category of game-based contracts"). There is nothing "contradictory" about that.[10]

### b. Plaintiffs Have Not Adequately Alleged Violations of the Wire Act or 18 U.S.C. § 1955.

Plaintiffs' second alleged predicate act is violation of the Wire Act. ¶ 202. For at least two reasons, these allegations also fail. First, Defendants are not "engaged in the business of betting or wagering." 18 U.S.C. § 1084(a). Plaintiffs allege in conclusory fashion that Kalshi's event contracts constitute "'bets or wagers' within the meaning of [the statute]." ¶ 200. But the Wire Act does not define "bets or wagers." And UIGEA—the only federal law that does define the term "bet or wager"—expressly carves out transactions conducted on DCMs like Kalshi. 31 U.S.C. § 5362(1)(E)(ii); *see supra* III.B.2. That definition, which postdated the Wire Act, is entitled "to great weight." *Bob Jones Univ. v. United States*, 461 U.S. 574, 588 n.10 (1983).[11] Reading the term "bets or wagers" to include DCM transactions for purposes of the Wire Act would effectively nullify UIGEA by subjecting the very transactions UIGEA explicitly excludes from its enforcement provisions to criminal penalties under the Wire Act—a result Congress surely did not intend.

Second, Kalshi's alleged conduct does not violate the Wire Act because the statute only prohibits activity that is illegal under state law. 18 U.S.C. § 1084(b) (exempting bets or wagers placed "from a state … where [such] betting … is legal into a state… in which such betting is legal"). State laws prohibiting gambling are—when it comes to event contracts that trade on a DCM— preempted by the CEA; Kalshi's conduct is thus not illegal under state law, and the Wire Act does not apply. *See* 7 U.S.C. §§ 7a-2(5)(c)(i)(v), 2(a)(1)(A); *Flaherty*, 2025 WL 1218313, at *5 ("[T]he exclusive-jurisdiction language reflects an intent to occupy the field."). For the same reason, Plaintiffs' third alleged predicate act also fails, as it, too, is premised on violation of preempted state

---

[10] To the extent that Plaintiffs rely on the advertising statements they point to in their Lanham Acct claim to support the alleged wire fraud predicate act, those statements are not "false" for the reasons set forth above and thus cannot support a wire fraud claim. *See supra* III.E.2.

[11] This is especially so given that UIGEA expressly references the Wire Act. *See* 31 U.S.C. § 5365(c)(2) (referring to 18 U.S.C. § 1084(d)).

Farella Braun + Martel LLP
One Bush Street, Suite 900
San Francisco, California 94104
(415) 954-4400

KALSHI DEFENDANTS' MOTION TO DISMISS -     28
Case No. 3:25-cv-06162-JSC

1    law. ¶¶ 204 *et seq.* (alleging that Kalshi is engaged in an "illegal gambling business" under

2    18 U.S.C. § 1955 because it is in violation of California Penal Code § 337a).

### 3. *Plaintiffs Fail to Allege a Cognizable RICO Injury.*

4        Finally, the Complaint fails to allege either an "injury [that] was proximately caused by the

5    prohibited conduct," or a "concrete financial loss." *Chaset v. Fleer/Skybox Int'l, LP*, 300 F.3d 1083,

6    1086 (9th Cir. 2002) (citation omitted). "[T]o establish proximate causation, a civil RICO plaintiff

7    must plead and prove that there is 'some direct relationship between the injury asserted and the

8    injurious conduct alleged.'" *Ozeran v. Jacobs*, 798 F. App'x 120, 122 (9th Cir. 2020) (quoting *Anza*

9    *v. Ideal Steel Supply Corp.*, 547 U.S. 451, 457 (2006)). A plaintiff cannot sustain a civil RICO

10    claim where it "was injured only indirectly by virtue of the collateral impact of the defendants'

11    [conduct]." *Id.* (affirming dismissal of civil RICO claim premised on alleged loss of market share

12    due to defendants' alleged unlawful acts). "A claim is cognizable under [RICO] only if the

13    defendant's alleged violation proximately caused the plaintiff's injury." *Anza*, 547 U.S. at 462.

14        Here, Plaintiffs vaguely allege that they have lost revenue because Defendants offer sports

15    event contracts, while Plaintiffs are unable to offer sports betting. This allegation proves too much.

16    Defendants are not "divert[ing] revenue" from sports gaming that "belongs exclusively to the

17    Tribes," ¶ 212, because the Tribes cannot conduct such gaming. On the face of the Complaint, it is

18    California gaming law, not Defendants' conduct, that has caused Plaintiffs' alleged loss of revenue.

19    Moreover, where a plaintiff's theory of injury "relies on users' independent propensities" between

20    two different products—here, slot machines and card games at brick-and-mortar casinos versus

21    sports-related event contracts traded over the internet—the "causal chain" is "too attenuated to

22    establish the direct relationship that RICO requires." *Child's. Health Def. v. Meta Platforms, Inc.*,

23    112 F.4th 742, 766 (9th Cir. 2024); *Anza*, 547 U.S. at 460 (proximate cause requirement intended

24    to prevent "these types of intricate, uncertain inquiries from overrunning RICO litigation"); *Somers*

25    *v. Apple, Inc.*, 729 F.3d 953, 963 (9th Cir. 2013) (no cognizable injury to competition where the

26    relevant parties are not in the same market); *Chaset*, 300 F.3d at 1087 ("expectancy interest" that

27    RICO plaintiff would have received more revenue absent defendants' conduct insufficient); *Oscar*

28

Farella Braun + Martel LLP
One Bush Street, Suite 900
San Francisco, California 94104
(415) 954-4400

KALSHI DEFENDANTS' MOTION TO DISMISS -    29
Case No. 3:25-cv-06162-JSC

1   *v. Univ. Students Co-op Ass'n*, 965 F.2d 783, 787 (9th Cir. 1992) ("purely speculative" loss not

2   cognizable under RICO).

## IV.    CONCLUSION

4          Kalshi respectfully requests that the Court dismiss the Complaint with prejudice under

5   Federal Rule of Civil Procedure 12(b)(6) as to Counts I, II, III, and V, and under Federal Rule of

6   Civil Procedure 12(b)(1) as to Count IV.

7    Dated: October 31, 2025                      Respectfully submitted,

9                                                 /s/ Christopher C. Wheeler

10                                                Christopher C. Wheeler (SBN 224872)
                                                  cwheeler@fbm.com
11                                                Dylan M. Silva (SBN 306363)
                                                  dmsilva@fbm.com
12                                                FARELLA BRAUN + MARTEL LLP
                                                  One Bush Street, Suite 900
13                                                San Francisco, California 94104
                                                  Telephone: (415) 954-4400
14                                                Facsimile: (415) 954-4480

16                                                Olivia S. Choe (pro hac vice)
                                                  ochoe@milbank.com
17                                                Joshua B. Sterling (pro hac vice)
                                                  jsterling@milbank.com
18                                                MILBANK LLP
                                                  1101 New York Avenue, NW
19                                                Washington, D.C. 20005
                                                  Telephone: (202) 835-7500
20                                                Facsimile: (202) 263-7586

21                                                Grant R. Mainland (pro hac vice)
                                                  gmainland@milbank.com
22                                                Karen Wong (pro hac vice)
                                                  kwong3@milbank.com
23                                                MILBANK LLP
                                                  55 Hudson Yards
24                                                New York, NY 10001
                                                  Telephone: (212) 530-5000
25                                                Facsimile: (212) 530-5219

27                                                *Attorneys for Defendants Kalshi Inc.*
                                                  *and KalshiEX LLC*

Farella Braun + Martel LLP
One Bush Street, Suite 900
San Francisco, California 94104
(415) 954-4400

KALSHI DEFENDANTS' MOTION TO DISMISS -    30
Case No. 3:25-cv-06162-JSC