Mark R. Conrad (CA Bar No. 255667)
**CONRAD | METLITZKY | KANE LLP**
217 Leidesdorff Street
San Francisco, CA 94111
Tel:    (415) 343-7100
Fax:    (415) 343-7101
Email: mconrad@conmetkane.com

Mithun Mansinghani (admitted *pro hac vice*)
**LEHOTSKY KELLER COHN LLP**
629 W. Main Street
Oklahoma City, OK 73102
Tel:    (512) 693-8350
Email: mithun@lkcfirm.com

Antony L. Ryan (admitted *pro hac vice*)
Kevin J. Orsini (admitted *pro hac vice*)
Brittany L. Sukiennik (admitted *pro hac vice*)
**CRAVATH, SWAINE & MOORE LLP**
Two Manhattan West
375 Ninth Avenue
New York, NY 10001
Tel:    (212) 474-1000
Fax:    (212) 474-3700
Email: aryan@cravath.com
Email: korsini@cravath.com
Email: bsukiennik@cravath.com

*Attorneys for Robinhood Markets, Inc.,
and Robinhood Derivatives, LLC*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| BLUE LAKE RANCHERIA, CHICKEN RANCH RANCHERIA OF ME-WUK INDIANS, AND PICAYUNE RANCHERIA OF THE CHUKCHANSI INDIANS, <br><br> Plaintiffs, <br><br> v. <br><br> KALSHI INC., KALSHIEX LLC, ROBINHOOD MARKETS, INC., ROBINHOOD DERIVATIVES LLC, AND DOES 1-20, <br><br> Defendants. | CASE NO. 3:25-cv-06162-JSC <br><br> **ROBINHOOD DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS** <br><br> Date:        Thursday, March 19, 2026 <br> Time:       10:00 AM PST <br> Judge:      Hon. Jacqueline Scott Corley <br> Courtroom:  8, 19th Floor |

1

**TABLE OF CONTENTS**

2
**Page**

3
INTRODUCTION ..................................................................................................................1

4
ARGUMENT .......................................................................................................................1

5
    I.       PLAINTIFFS HAVE ABANDONED THEIR CAUSES OF ACTION AGAINST
           ROBINHOOD OTHER THAN RICO...................................................................1

6

7
         A.      Plaintiffs Have Abandoned Their IGRA Claim Against Robinhood and
               Have Not Alleged Facts To Support an IGRA Violation for Purposes of
               Their RICO Claim................................................................................................2

8

9
         B.      Plaintiffs Have Abandoned Their Claims Against Robinhood for Violation
               of Plaintiffs' Gaming Ordinances and for Infringement on Tribal
               Sovereignty. .......................................................................................................2

10

11
    II.      PLAINTIFFS FAIL TO ADEQUATELY PLEAD THEIR CIVIL RICO CLAIM
           AGAINST ROBINHOOD. ...................................................................................3

12
         A.      Plaintiffs Lack Statutory Standing To Bring Their Civil RICO Claim. .................3

13
         B.      Plaintiffs Fail To Plead That Robinhood Engaged in a Predicate Act of
                Racketeering Conduct. ........................................................................................5

14

15
         C.      Plaintiffs' Allegations That Robinhood and Kalshi Conducted a
               Legitimate Business Activity Cannot Support a Claim of a RICO
               Enterprise. ..........................................................................................................9

16

17
    III.     PLAINTIFFS FAIL TO PLEAD A CLAIM AGAINST ROBINHOOD
           MARKETS, INC. ...............................................................................................10

18
CONCLUSION....................................................................................................................10

19

20

21

22

23

24

25

26

27

28

**INTRODUCTION**

Plaintiffs seek to stretch the bounds of the Indian Gaming Regulatory Act ("IGRA"), tribal law and the Racketeer Influenced and Corrupt Organizations Act ("RICO") in order to protect themselves from alleged competitive injury from Defendants' operation of federally licensed derivatives trading businesses. As Robinhood Markets, Inc. and Robinhood Derivatives, LLC (together, "Robinhood") showed in their opening brief in support of this Motion ("Br."), Plaintiffs' theory is foreclosed by controlling precedent from the Supreme Court and the Ninth Circuit. In their Response to Defendants' Motions to Dismiss (the "Opposition" or "Opp."), Plaintiffs abandon most of their claims against Robinhood, maintaining only the civil RICO claim. *See* Opp. at 1 n.1. Plaintiffs' RICO claim against Robinhood fails for three separate reasons. *First*, Plaintiffs lack statutory standing because they rely on a theory of competitive injury (diversion of customers from Plaintiffs' casinos) that the Supreme Court and Ninth Circuit have repeatedly held cannot support a civil RICO claim. *See infra* Part II.A. *Second*, Plaintiffs do not plead predicate offenses because, as the Commodity Futures Trading Commission ("CFTC") recently confirmed, offering sports-related event contracts is authorized by the CFTC under the Commodity Exchange Act's ("CEA") grant of exclusive jurisdiction to the CFTC to regulate event contracts traded on designated contract markets ("DCMs"), and is exempted by the Unlawful Internet Gambling Enforcement Act's ("UIGEA") carve-out for trading on DCMs. *See infra* Part II.B. *Third*, Plaintiffs impermissibly characterize a standard, federally regulated distribution arrangement between a futures commission merchant ("FCM") like Robinhood and a DCM like KalshiEX LLC (together with Kalshi, Inc., "Kalshi") as an "association-in-fact enterprise." *See infra* Part II.C. *Finally*, Plaintiffs fail to plead any facts to support a claim against Robinhood Markets, Inc. ("RHM"). *See infra* Part III.

**ARGUMENT**

**I.    PLAINTIFFS HAVE ABANDONED THEIR CAUSES OF ACTION AGAINST ROBINHOOD OTHER THAN RICO.**

Plaintiffs "only bring one claim, for civil RICO, against Robinhood." Opp. at 1 n.1. Accordingly, Plaintiffs have abandoned their other causes of action against Robinhood.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**A.    Plaintiffs Have Abandoned Their IGRA Claim Against Robinhood and Have Not Alleged Facts To Support an IGRA Violation for Purposes of Their RICO Claim.**

Robinhood briefly addresses IGRA because, despite abandoning the IGRA claim against Robinhood, Plaintiffs continue repeatedly to rely on a claim of an IGRA violation in support of their civil RICO claim.  *See* Opp. at 36-37, 38-40 (IGRA), 37-38, 41 ("class III gaming").  As Robinhood explained, Robinhood's off-reservation conduct in offering its customers trading in federally regulated event contracts does not violate IGRA.  Br. at 9-13.

*First*, Robinhood does not violate IGRA because sports-related event contracts are not "class III gaming."  25 U.S.C. § 2710(d)(1).  Sports-related event contracts are a form of federally licensed derivatives trading, subject to a comprehensive regulatory scheme under the "exclusive jurisdiction" of the CFTC.  *See* Br. at 3-6.  Moreover, Congress made clear in UIGEA that transactions conducted on a CFTC-regulated DCM, like Kalshi's, are not "bets or wagers."  31 U.S.C. § 5362(1)(E)(ii).  Plaintiffs' only response is that they have alleged that the conduct here *is* in fact class III gaming, and the Court must accept these allegations as true.  Opp. at 10.  Not so.  Whether the conduct at issue here is class III gaming is a question of statutory interpretation, *see Nelson v. Heiss*, 271 F.3d 891, 893 (9th Cir. 2001) (noting that "issues of statutory construction are questions of law"), and the answer is that it is not, *see* Br. at 9-10.

*Second*, Robinhood does not violate IGRA because its offer of sports-related event contracts does not take place "on Indian lands."  25 U.S.C. § 2710(d)(1).  Robinhood's conduct does not become activity "on Indian lands" when, as here, a commercial service is simply accessible to tribal members and non-Indians, even when on Indian lands, over the Internet.  *See Hornell Brewing Co. v. Rosebud Sioux Tribal Ct.*, 133 F.3d 1087, 1093 (8th Cir. 1998) ("Advertising outside the Reservation and on the Internet … cannot be said to constitute non-Indian use of Indian land.").

**B.    Plaintiffs Have Abandoned Their Claims Against Robinhood for Violation of Plaintiffs' Gaming Ordinances and for Infringement on Tribal Sovereignty.**

Plaintiffs do not respond to Robinhood's showing that Robinhood has neither violated Plaintiffs' gaming ordinances, Br. at 13-16, nor infringed on any sovereign right, *id.* at 17-19.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## II. PLAINTIFFS FAIL TO ADEQUATELY PLEAD THEIR CIVIL RICO CLAIM AGAINST ROBINHOOD.

Plaintiffs fail to plausibly allege that they were injured as the direct victims of any alleged RICO scheme under Section 1962(c) for three independent reasons:  (1) their indirect competitor-injury theory does not confer civil RICO standing; (2) they rely on predicate offenses that cannot be squared with the CEA's grant of exclusive jurisdiction to the CFTC nor with UIGEA's carve-out for CFTC-regulated exchange activity; and (3) they impermissibly characterize a standard arrangement between an FCM and a DCM as an "association-in-fact enterprise."

### A.    Plaintiffs Lack Statutory Standing To Bring Their Civil RICO Claim.

Plaintiffs fail to plausibly allege they have standing to bring their civil RICO claim.  To have RICO standing, Plaintiffs must allege that their injuries were directly caused "by reason of" the alleged racketeering.  18 U.S.C. § 1964(c); *Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 456-57 (2006).  For an injury to be caused "by reason of" the alleged racketeering, a plaintiff must show "that the racketeering activity was … a proximate cause of his injury." *Rezner v. Bayerische Hypo-und Vereinsbank AG*, 630 F.3d 866, 871, 873 (9th Cir. 2010) (citing *Holmes v. Sec. Inv'r Prot. Corp.*, 503 U.S. 258, 268 (1992)).  Therefore, only *direct* victims of the alleged predicate violations—not indirect business competitors— have standing to pursue civil RICO claims.  *Anza*, 547 U.S. at 458-60; *see Rezner*, 630 F.3d at 873-74.  To assess whether a party has civil RICO standing, courts analyze the class of persons a predicate statute is intended to protect to understand who the direct victims of the alleged scheme are.  *See Anza*, 547 U.S. at 457-60 (competitor's injury of lost sales was not proximately caused by alleged tax fraud because the "direct victim of this conduct was the State … not [competitor]").  Plaintiffs do not meaningfully engage with the requirement that their injuries be directly caused "by reason of" the alleged racketeering.  18 U.S.C. § 1964(c); *Anza*, 547 U.S. at 456-57.  Their argument is insufficient for several reasons.

*First*, Plaintiffs do not address the fact that their alleged competitive injury cannot form the basis of a RICO claim under their chosen statutory predicates—the Wire Act, the Illegal Gambling Business Act and the Wire Fraud statute.  *See Lancaster Cmty. Hosp. v. Antelope Valley Hosp. Dist.*, 940 F.2d 397, 405-06 (9th Cir. 1991) (holding that competitive injury cannot support a RICO claim under mail fraud and related statutes); *see also United States v. Garlick*, 240 F.3d 789, 792 (9th Cir. 2001) (explaining that "[t]he

3

1    legislative history of the wire fraud statute … reveals it was meant to replicate the mail fraud statute").

2    Even if it were true (and it is not) that Defendants used the mails or interstate wires to misrepresent the

3    nature of sports-related event contracts, only customers who spent money trading those contracts could

4    have been deprived of a cognizable property interest.  The direct victims of any purported RICO scheme

5    based on those predicates would therefore be consumers, not business competitors.

6        *Second*, Plaintiffs argue they have standing because they "have exclusivity regarding class III

7    gaming," so loss of revenue to their casinos was a "concrete and foreseeable" injury from Robinhood's

8    offer of sports-related event contracts.  *See* Opp. at 41-42.  This argument fails too because, again,

9    insulating gambling businesses from competition is not the purpose of any of the criminal statutes that

10    Plaintiffs plead as RICO predicates.  *See Lancaster Cmty. Hosp.*, 940 F.2d at 405-06.  Further, as the

11    Supreme Court has repeatedly instructed, the central question is whether the alleged RICO violation

12    directly led to Plaintiffs' injuries, and "foreseeability does not cut it."  *Med. Marijuana, Inc. v. Horn*, 604

13    U.S. 593, 612 (2025) (citation omitted).  Plaintiffs cannot rely on this foreseeability argument to support

14    statutory standing for a civil RICO claim.

15        Plaintiffs also attempt to cure the lack of any direct injury by trying to recharacterize their alleged

16    injuries as "illegal encroachment[s] on [their] monopol[ies]," such that they claim their injuries are not

17    "contingent on consumer choice."  Opp. at 41.  This argument fails for several reasons.  To the extent

18    Plaintiffs argue that their injuries are something besides diverted revenue, that would not be a cognizable

19    injury under civil RICO because civil RICO requires a concrete financial loss.  *See Hazari v. Cnty. of

20    Santa Clara*, No. 19-CV-04392-BLF, 2025 WL 1828514, at *4 (N.D. Cal. July 1, 2025) ("With respect to

21    the injury element, a plaintiff 'must show proof of concrete financial loss.'" (citation omitted)).  But to

22    the extent Plaintiffs do complain of diverted revenue, Plaintiffs' alleged injuries necessarily *are* contingent

23    on customer choice because such diversion could only have occurred if consumers made intervening

24    choices to forgo patronizing Plaintiffs' casinos.  Indeed, Plaintiffs themselves say that their theory of

25    encroachment upon their monopolies is based on "diverting revenue that belongs to the Tribes."  Opp. at

26    41-42.  Plaintiffs therefore lack statutory standing to bring their civil RICO claim.

27

28

**B.     Plaintiffs Fail To Plead That Robinhood Engaged in a Predicate Act of Racketeering Conduct.**

Plaintiffs' Opposition also fails to cure the deficiencies in pleading each of the alleged predicate acts:   (1) interstate transmission of wagering information under 18 U.S.C. § 1084; (2) operation of an illegal gambling business under 18 U.S.C. § 1955; and (3) wire fraud under 18 U.S.C. § 1343.

**a.     Plaintiffs Do Not Plausibly Plead Interstate Transmission of Wagering Information Under 18 U.S.C. § 1084.**

Defendants' conduct cannot violate the Wire Act both because it is exempted by UIGEA and is legal under the CEA.   Plaintiffs' arguments to the contrary fail.   *First*, Plaintiffs' arguments about the inapplicability of UIGEA are misplaced.   As a threshold matter, Plaintiffs are wrong to claim that the Court must "ignore the Tribes' factual allegations" in order to determine UIGEA controls here.   Opp. at 39.   The applicability of UIGEA is a question of law, not fact.   *See Nelson*, 271 F.3d at 893 (noting that "issues of statutory construction are questions of law").

Accepting all of Plaintiffs' allegations as true, UIGEA exempts Robinhood's conduct from gaming regulation.   UIGEA regulates gaming that crosses the borders of state or Indian lands.   31 U.S.C. § 5363. And UIGEA *expressly* carves out trading on CFTC-regulated exchanges by defining "bet or wager" to exclude "any transaction conducted on or subject to the rules of a registered entity or exempt board of trade under the [CEA]."   *Id.* § 5362(1)(E)(ii); *see also* Supplement to the Motion of the Commodity Futures Trading Comm'n for Leave to File an Out-of-time Amicus Curiae Brief, ECF No. 38-2 ("CFTC Amicus Br."), *N. Am. Derivatives Exch., Inc. v. Nevada*, No. 25-7187 (9th Cir. Feb. 17, 2026), at 24 n.15 (explaining that UIGEA's carve-out "reinforc[es] the field-preemptive effect of the CFTC's exclusive jurisdiction").   Accordingly, in denying Plaintiffs' motion for a preliminary injunction, this Court recognized that the challenged event contracts fall within UIGEA's exemption for transactions regulated under the CEA.   *See Blue Lake Rancheria v. Kalshi Inc.*, No. 25-cv-06162-JSC, 2025 WL 3141202, at *6 (N.D. Cal. Nov. 10, 2025), *appeal filed*, No. 25-7504 (9th Cir. Nov. 25, 2025).

Plaintiffs' reliance on UIGEA's non-alteration clause, 31 U.S.C. § 5361(b), is misplaced.   *See* Opp. at 39-40.   Robinhood does not contend that UIGEA amends or "alters" the Wire Act.   Rather, it contends that consistent-usage principles require reading the same terms across related federal statutes in harmony with the CEA's exclusive jurisdiction provision.   *See Corner Post, Inc. v. Bd. of Governors of Fed. Rsrv.*

1   *Sys.*, 603 U.S. 799, 818-19 (2024).  Plaintiffs argue that *Corner Post* is inapposite because it "did not

2   involve the importation of definitions from a later-enacted statute that Congress expressly stated would

3   not alter existing gambling laws."  Opp. at 40.  But again, nothing in any previous statute is being "altered"

4   as Plaintiffs claim.  The Wire Act does not define "bet" or "wager."  *See* 18 U.S.C. § 1084(a).  Using

5   UIGEA's definition to inform the meaning of undefined terms in the Wire Act avoids statutory collision

6   and is not an "alteration" of other law.  Thus, UIGEA governs.[1]

7           *Second*, Robinhood's offer of sports-related event contracts cannot be a Wire Act violation because

8   it is legal under the CEA, which grants "exclusive jurisdiction" to the CFTC to regulate contracts traded

9   on DCMs.  7 U.S.C. § 2(a)(1)(A); H.R. Conf. Rep. No. 93-1383, at 35 (1974) (the CEA "preempt[s] the

10  field insofar as futures regulation is concerned"), *reprinted in* 1974 U.S.C.C.A.N. 5894, 5897.

11  Congressional statements about the creation of the CFTC confirm that Congress provided the CFTC with

12  exclusive jurisdiction in order to "avoid unnecessary, overlapping and duplicative regulation."  *FTC v.*

13  *Ken Roberts Co.*, 276 F.3d 583, 588 (D.C. Cir. 2001) (citations and quotations omitted).  The CEA's design

14  and legislative history show that "Congress intended to subject" commodity futures and derivatives "to

15  only one set of regulations."  *Gade v. Nat'l Solid Wastes Mgmt. Ass'n*, 505 U.S. 88, 99 (1992).  Indeed, in

16  separate litigation concerning sports-related event contracts, the CFTC explained that "Congress intended

17  the CFTC to have exclusive jurisdiction over federally registered DCMs and transactions conducted on

18  those exchanges."  CFTC Amicus Br. at 21.  Critically, the CFTC also confirmed the CEA's "broad

19  preemption of other potentially applicable state *and federal* laws."  *Id.* at 11 (emphasis added).  Applying

20  the Wire Act to routine order routing, execution, clearing and settlement mandated by the CEA for activity

21  between FCMs like Robinhood and DCMs like Kalshi would directly conflict with Congress's grant that

22  the CFTC "shall have exclusive jurisdiction" over trading on DCMs.  7 U.S.C. § 2(a)(1)(A).

### b.     Plaintiffs Do Not Plausibly Plead the Operation of an Illegal Gambling Business Under 18 U.S.C. § 1955.

24          For similar reasons, Plaintiffs have not plausibly alleged that Robinhood is operating an illegal

25  gambling business in violation of 18 U.S.C. § 1955.  Plaintiffs again incorrectly treat the question of

---

[1] Plaintiffs' reliance on *Murphy v. NCAA*, 584 U.S. 453 (2018), is also misguided.  Opp. at 40.  While states may regulate sports gambling under *Murphy*, sports-related event contracts traded on a DCM are not gambling subject to state regulation because they are subject to the CFTC's exclusive jurisdiction.

1    whether Robinhood "operat[es] … an illegal gambling business" as a factual allegation, which the Court

2    must accept as true, rather than a legal one. Opp. at 38-40. Section 1955 applies only to gambling that is

3    illegal under state law. *See* 18 U.S.C. § 1955(b)(1)(i). Where the CEA grants the CFTC exclusive

4    jurisdiction over trading on a DCM, state gambling restrictions that would purport to regulate—and even

5    criminalize—that federally regulated conduct are preempted. *See* Br. at 22. Given the CEA authorization

6    and the UIGEA exemption, the definitions of "gambling" and "gambling business" in Section 1955 do not

7    apply to Robinhood's federally regulated derivatives trading business. *See id.* This is especially true here,

8    where Robinhood's conduct is not *illegal* in any sense because it is *legal* under the CEA and UIGEA.

9        Plaintiffs argue that Robinhood cannot rely on CEA authorization, Opp. at 7-8, 22, 32, but

10   Plaintiffs do not engage with the statutory text, legislative history or case law establishing that Congress

11   "preempt[ed] the field insofar as futures regulation is concerned." 7 U.S.C. § 2(a)(1)(A); *see also* H.R.

12   Conf. Rep. No. 93-1383, at 35, 1974 U.S.C.C.A.N. at 5897. The grant of "exclusive jurisdiction" to the

13   CFTC displaces regulation both by States (*e.g.*, California gambling law) and under other Federal laws

14   (*e.g.*, IGRA). *See* S. Rep. No. 93-1131, at 6 (1974) ("[T]he Commission's jurisdiction, where applicable,

15   supersedes State as well as Federal agencies."), *reprinted in* 1974 U.S.C.C.A.N. 5843, 5848. Congress

16   again recognized this grant of exclusive jurisdiction in the UIGEA carve-out. As a matter of law, therefore,

17   Section 1955 cannot apply to DCM-traded event contracts regulated by the CFTC.

18        **c.    Plaintiffs Do Not Plausibly Plead Wire Fraud Under 18 U.S.C. § 1343.**

19       Plaintiffs likewise do nothing to cure the pleading deficiencies in their wire fraud claim, namely

20   the lack of any plausible allegations in the Complaint supporting an inference that Defendants acted with

21   an intent to defraud. Plaintiffs acknowledge that civil RICO claims based on wire fraud are subject to the

22   heightened pleading standard of Fed. R. Civ. P. 9(b), requiring a plaintiff to plead fraud with particularity.

23   *See* Opp. at 37. But Plaintiffs' only specific allegations regarding Defendants' intent to defraud are that

24   Kalshi previously told courts that certain contracts involve gaming and that Robinhood urged the CFTC

25   to take a narrow approach to defining gaming. *Id.* at 38. Plaintiffs argue that this shows Defendants

26   "knew they could not list event contracts that involve gaming." *Id.* Not so. Robinhood commented on a

27   proposed rulemaking that the CFTC should take a narrow approach to the definition of gaming; this does

28   not reflect Robinhood's understanding of the current state of the law. Moreover, these allegations fall far

1    short of showing Defendants intended "to deceive *and* cheat." *United States v. Miller*, 953 F.3d 1095,

2    1101 (9th Cir. 2020) (emphasis in original).  Good-faith legal positions publicly advanced before courts

3    and regulators, and ongoing engagement with the CFTC about event contracts, do not support an inference

4    of fraudulent intent.

5           Plaintiffs also argue that Defendants cannot point to the classification of sports-related event

6    contracts as transactions in commodities for future delivery or as "swaps" to demonstrate the failure of

7    Plaintiffs' Wire Act allegations.  *See* Opp. at 38-39.  Plaintiffs argue that they "alleged facts showing these

8    contracts could not be swaps" and that "every court who has considered" the issue "has found that these

9    contracts cannot be swaps."  *Id.* at 39.  Plaintiffs are incorrect.  Whether or not sports-related event

10   contracts are considered "swaps" is a question of law, such that Plaintiffs' factual allegations on the issue

11   are irrelevant.  *See Nelson*, 271 F.3d at 893.  Indeed, the CFTC has permitted these contracts to trade on a

12   DCM, which indicates the CFTC has authorized them as compliant with the CEA.  Moreover, multiple

13   courts, including this one, have held that these contracts *are* subject to the CFTC's exclusive jurisdiction.

14   *See KalshiEX LLC v. Flaherty*, No. 25-cv-2152, 2025 WL 1218313, at *6 (D.N.J. Apr. 28, 2025), *appeal*

15   *filed*, No. 25-1922 (3d Cir. filed May 15, 2025; argued Sept. 10, 2025); *Blue Lake Rancheria*, 2025 WL

16   3141202, at *7; *KalshiEX LLC v. Orgel*, No. 26-cv-00034, 2026 WL 474869, at *7 (M.D. Tenn. Feb. 19,

17   2026).  The CFTC has deemed these contracts to be subject to its regulation, and Plaintiffs' factual

18   allegations cannot overcome the CFTC's exclusive jurisdiction to make that determination.

19          Plaintiffs' argument that Defendants cannot rely on federal preemption is similarly misguided.

20   Plaintiffs argue that "courts across the country have rejected this argument."  Opp. at 39.  But other federal

21   courts, including this one, have reached the opposite conclusion.  *Blue Lake Rancheria*, 2025 WL

22   3141202, at *7; *Flaherty*, 2025 WL 1218313, at *6; *Orgel*, 2026 WL 474869, at *9-10.  Defendants' belief

23   in the legal basis for their position, consistent with court holdings, cannot amount to an intent to defraud.

24   *See Omnicare, Inc. v. Laborers Dist. Council Const. Indus. Pension Fund*, 575 U.S. 175, 186 (2015)

25   (holding that "sincere statement[s]" that "we believe we are obeying the law" cannot form the basis for

26   securities fraud claims); *Blue Lake Rancheria*, 2025 WL 3141202, at *2.

27

28

### C. Plaintiffs' Allegations That Robinhood and Kalshi Conducted a Legitimate Business Activity Cannot Support a Claim of a RICO Enterprise.

Plaintiffs also fail to plead an association-in-fact enterprise because they do not distinguish Robinhood and Kalshi's "routine commercial dealing" from a truly joint enterprise premised on a common unlawful purpose. *See Fraser v. Team Health Holdings, Inc.*, No. 20-CV-04600-JSW, 2022 WL 971579, at *11 (N.D. Cal. Mar. 31, 2022) ("Courts routinely reject attempts to characterize routine commercial relationships as RICO enterprises."). Plaintiffs suggest they have sufficiently pleaded this element because the definition of an association-in-fact enterprise is to be interpreted broadly. Opp. at 35. But Plaintiffs must plead an association-in-fact enterprise that is distinct from the Defendants' ordinary business affairs and has a structure separate from each entity's own operations. *See Gardner v. Starkist Co.*, 418 F. Supp. 3d 443, 461 (N.D. Cal. 2019). Plaintiffs' claim fails because it neither distinguishes Defendants' ordinary business conduct nor alleges a structure separate from each entity's own operations.

Here, Plaintiffs point to two facts to attempt to distinguish the conduct of the alleged "enterprise" from each Defendant's own affairs. Neither is sufficient. *First*, Plaintiffs argue that Defendants' conduct exceeded typical commercial conduct because they supposedly offered class III gaming on the Tribes' Indian lands, in violation of IGRA and California law. Opp. at 36. As Robinhood has shown, Defendants' conduct is authorized by the CEA and does not violate IGRA or California law. *See* Br. at 7-19. Even if Plaintiffs were correct that this conduct constituted illegal activity, that would still be insufficient to allege an association-in-fact enterprise because it still would not explain how Defendants' conduct went beyond each of their respective operations. *See Gomez v. Guthy-Renker, LLC*, No. EDCV 14-01425 JGB (KKx), 2015 WL 4270042, at *11 (C.D. Cal. July 13, 2015). The Complaint describes nothing more than each entity conducting itself consistent with the roles inherent in the federally regulated futures trading system established by the CEA and CFTC regulations.

*Second*, Plaintiffs contend that because Robinhood uses a "direct revenue-sharing model" for event contracts instead of the "payment for order flow" model it uses for stock trading, its conduct was not routine. Opp. at 36. But Plaintiffs have failed to allege that such an approach is not ordinary business conduct for futures trading. *See Reves v. Ernst & Young*, 507 U.S. 170, 185 (1993) (ordinary conduct by each defendant insufficient to constitute "conduct[ing] or participat[ing] in the conduct of the '*enterprise's*

1    affairs,'" as opposed to "their *own* affairs" (emphasis in original)).  Indeed, payment of commissions

2    amounts to an ordinary, regulated FCM–DCM relationship, not an association-in-fact enterprise.  *See* 7

3    U.S.C. § 1a(28)(A) (definition of "futures commission merchant"); *see also* Comptroller of the Currency,

4    *Futures Commission Merchant Activities* at 7 (Nov. 1995, amended Mar. 20, 2025) (stating that FCMs

5    typically earn "commissions from trades"), *available at* https://www.occ.gov/publications-and-

6    resources/publications/comptrollers-handbook/files/futures-commission-merchant-act/pub-ch-futures-

7    commission-merchant-activities.pdf.  The allegations describe conduct inherent in most, if not every,

8    commercial relationship between an FCM and a DCM, which cannot form the basis for a RICO enterprise.

9          In addition to failing to distinguish Defendants' ordinary business conduct, Plaintiffs fail to allege

10   a structure separate from each entity's own operations—Robinhood, an FCM that accepts and solicits

11   event contract orders from customers, and Kalshi, a DCM that executes those orders.  Plaintiffs do not

12   even address this requirement.  This is fatal to their RICO claim.  *See Gomez*, 2015 WL 4270042, at *9.

### III.   PLAINTIFFS FAIL TO PLEAD A CLAIM AGAINST ROBINHOOD MARKETS, INC.

14         Because Plaintiffs have not specifically pleaded that RHM engaged in any conduct in violation of

15   RICO, the Court should also dismiss all claims against RHM.  Plaintiffs try to save their pleading failure

16   by claiming that, since they collectively referred to "Defendants," each of their allegations and claims

17   "apply to all of the defendants" unless "explicitly stated against a specific defendant."  Opp. at 42-43.

18   That type of group pleading is insufficient to survive a motion to dismiss.  *See Johnson v. Am. Cas. Co. of

19   Reading Pa.*, No. 09-2125 SC, 2011 WL 3739032, at *2 (N.D. Cal. Aug. 23, 2011).

20         By only using the general term "Defendants," and without pleading any specific allegations against

21   RHM, all Plaintiffs have done is allege that RHM is Robinhood Derivatives, LLC's parent.  But a parent

22   corporation is not liable for the acts of a subsidiary simply by virtue of its ownership of the subsidiary.

23   *See Murphy Tugboat Co. v. Shipowners & Merchants Towboat Co.*, 467 F. Supp. 841, 854 (N.D. Cal.

24   1979), *aff'd sub nom. Murphy Tugboat Co. v. Crowley*, 658 F.2d 1256 (9th Cir. 1981).  Plaintiffs' claim

25   against RHM therefore fails.

### CONCLUSION

27         For the reasons set forth here and in Robinhood's opening brief, Robinhood requests that this Court

28   dismiss Plaintiffs' single claim for a civil RICO violation against Robinhood.

Dated this 23rd day of February, 2026.

**CRAVATH, SWAINE & MOORE LLP**


/s/ *Antony L. Ryan*
ANTONY L. RYAN
KEVIN J. ORSINI
BRITTANY L. SUKIENNIK


**LEHOTSKY KELLER COHN LLP**


/s/ *Mithun Mansinghani*
MITHUN MANSINGHANI


**CONRAD | METLITZKY | KANE LLP**


/s/ *Mark R. Conrad*
MARK R. CONRAD


*Attorneys for Robinhood Markets, Inc.,*
*and Robinhood Derivatives, LLC*