1  Christopher C. Wheeler (SBN 224872)
   cwheeler@fbm.com
2  Dylan M. Silva (SBN 306363)
   dmsilva@fbm.com
3  FARELLA BRAUN + MARTEL LLP
   One Bush Street, Suite 900
4  San Francisco, California 94104
   Telephone: (415) 954-4400
5  Facsimile: (415) 954-4480

6  Olivia S. Choe (pro hac vice)
   ochoe@milbank.com
7  Joshua B. Sterling (pro hac vice)
   jsterling@milbank.com
8  MILBANK LLP
   1101 New York Avenue, NW
9  Washington D.C. 20005
   Telephone: (202) 835-7500
10 Facsimile: (202) 263-7586

11 Grant R. Mainland (pro hac vice)
   gmainland@milbank.com
12 Karen Wong (pro hac vice)
   kwong3@milbank.com
13 MILBANK LLP
   55 Hudson Yards
14 New York, New York 10001
   Telephone: (212) 530-5000
15 Facsimile: (212) 530-5219

16 *Attorneys for Defendants Kalshi Inc. and
   KalshiEX LLC*

17

                    UNITED STATES DISTRICT COURT
18                 NORTHERN DISTRICT OF CALIFORNIA
                      SAN FRANCISCO DIVISION
19

20 BLUE LAKE RANCHERIA, CHICKEN          Case No. 3:25-cv-06162
   RANCH RANCHERIA OF ME-WUK
21 INDIANS, and PICAYUNE RANCHERIA       **REPLY BRIEF IN SUPPORT OF KALSHI**
   OF THE CHUKCHANSI INDIANS,            **DEFENDANTS' MOTION TO DISMISS**
22                                       **PLAINTIFFS' COMPLAINT**
                  Plaintiffs,
23                                       Judge:         Jacqueline Scott Corley
            vs.                          Hearing Date:  March 19, 2026
24                                       Hearing Time:  10:00 a.m.
   KALSHI INC., KALSHIEX LLC,            Courtroom:     8
25 ROBINHOOD MARKETS, INC.,
   ROBINHOOD DERIVATIVES LLC, and
26 DOES 1-20,

27                  Defendants.

28

Farella Braun + Martel LLP
One Bush Street, Suite 900       KALSHI DEFENDANTS' REPLY IN SUPPORT OF
San Francisco, California 94104  MOTION TO DISMISS
(415) 954-4400                   Case No. 3:25-cv-06162

## <u>TABLE OF CONTENTS</u>

I.     PRELIMINARY STATEMENT ........................................................................ 1

II.    ARGUMENT.................................................................................................... 3

    A.     PLAINTIFFS FAIL TO STATE AN IGRA CLAIM (COUNT I) ........................... 3

        1.     Plaintiffs Have No Right of Action Under IGRA to Enjoin Kalshi's Conduct........................................................................................... 3

        2.     Congress Did Not Empower Tribes to Regulate Derivatives Trading on CFTC-Designated Contract Markets ..................................... 5

        3.     Plaintiffs' Attack on Kalshi's CEA Compliance Cannot Rescue Their IGRA Claim................................................................................ 7

    B.     PLAINTIFFS FAIL TO STATE AN ORDINANCE CLAIM (COUNT II). ........... 8

        1.     IGRA Does Not Give the Tribe Jurisdiction Over Kalshi. ......................... 8

        2.     The CEA Preempts the Ordinances. ...................................................... 10

    C.     PLAINTIFFS' SOVEREIGNTY CLAIM FAILS TO SATISFY ARTICLE III'S CASE-OR-CONTROVERSY REQUIREMENT (COUNT IV). ............................. 11

    D.     PLAINTIFFS FAIL TO STATE A LANHAM ACT CLAIM (COUNT V)........... 12

        1.     The Opposition Fails to Remedy Plaintiffs' Lack of Standing.................... 12

        2.     The Opposition Does Not Identify Any Well-Pleaded Allegation of Falsity. ............................................................................................. 14

        3.     The Opposition Does Not Identify Any Well-Pleaded Allegation of Consumer Deception. ........................................................................ 16

    E.     PLAINTIFFS FAIL TO STATE A CIVIL RICO CLAIM (COUNT III). .............. 17

        1.     Plaintiffs Have Not Alleged Any Predicate Acts. ...................................... 17

            a.     Wire Fraud ................................................................................... 17

            b.     The Wire Act and 18 U.S.C. § 1955................................................. 18

        2.     Plaintiffs Have Not Alleged a RICO Enterprise........................................ 19

        3.     Plaintiffs Have Not Alleged a RICO Injury. ............................................. 20

III.   CONCLUSION................................................................................................ 20

Farella Braun + Martel LLP
One Bush Street, Suite 900
San Francisco, California 94104
(415) 954-4400

KALSHI DEFENDANTS' REPLY                    ii
Case No. 3:25-cv-06162

1

# TABLE OF AUTHORITIES

2

**Cases**          **Page(s)**

3

*Am. Agric. Movement, Inc. v. Bd. of Trade of Chi.*,
   977 F.2d 1147 (7th Cir. 1992) ...........................................................................7

4

5

*Anza v. Ideal Steel Supply Corp.*,
   547 U.S. 451 (2006)...........................................................................................20

6

*Ariix, LLC v. NutriSearch Corp.*,
   985 F.3d 1107 (9th Cir. 2021) .........................................................................14

7

8

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)...............................................................................13, 20

9

*Atkinson Trading Co. v. Shirley*,
   532 U.S. 645 (2001)...........................................................................................9

10

11

*Bibeau v. Pac. Nw. Rsch. Found. Inc.*,
   188 F.3d 1105 (9th Cir. 1999) ...........................................................................4

12

13

*Big Lagoon Rancheria v. California*,
   789 F.3d 947 (9th Cir. 2015) .............................................................................7

14

*Branch v. Smith*,
   538 U.S. 254 (2003)...........................................................................................19

15

16

*Bugenig v. Hoopa Valley Tribe*,
   266 F.3d 1201 (9th Cir. 2001) .........................................................................10

17

18

*Cabazon Band of Mission Indians v. Wilson*,
   124 F.3d 1050 (9th Cir. 1997) ......................................................................3, 5

19

*California v. Iipay Nation of Santa Ysabel*,
   898 F.3d 960 (9th Cir. 2018) ...........................................................1, 5, 6, 11

20

21

*Cayuga Nation v. N.Y. Gaming Comm'n*,
   2025 WL 2161290 (N.D.N.Y. July 30, 2025) ....................................................4

22

23

*Chaset v. Fleer/Skybox Int'l, LP*,
   300 F.3d 1083 (9th Cir. 2002) .........................................................................20

24

*Chicken Ranch Rancheria of Me-Wuk Indians v. California*,
   42 F.4th 1024 (9th Cir. 2022) ............................................................................3

25

26

*Child.'s Health Def. v. Meta Platforms, Inc.*,
   112 F.4th 742 (9th Cir. 2024) .........................................................................20

27

28

Farella Braun + Martel LLP
One Bush Street, Suite 900
San Francisco, California 94104
(415) 954-4400

KALSHI DEFENDANTS' REPLY        iii
Case No. 3:25-cv-06162

*Citizens for a Better Env't-Cal. v. Union Oil Co. of Cal.*,
   861 F. Supp. 889 (N.D. Cal. 1994) ................................................................. 2, 3

*Coastal Abstract Serv., Inc. v. First Am. Title Ins. Co.*,
   173 F.3d 725 (9th Cir. 1999) .............................................................. 14, 15, 16

*Cousins v. Sec'y of U.S. Dep't of Transp.*,
   880 F.2d 603 (1st Cir. 1989) ......................................................................... 7

*Cyph, Inc. v. Zoom Video Commc'ns, Inc.*,
   642 F. Supp. 3d 1034 (N.D. Cal. 2022) ......................................................... 8

*Edwards v. Marin Park, Inc.*,
   356 F.3d 1058 (9th Cir. 2004) ..................................................................... 18

*EEOC v. Cherokee Nation*,
   871 F.2d 937 (10th Cir. 1989) ..................................................................... 10

*Enigma Software Grp. USA, LLC v. Malwarebytes, Inc.*,
   69 F.4th 665 (9th Cir. 2023) ........................................................................ 15

*Food Mktg. Inst. v. Argus Leader Media*,
   588 U.S. 427 (2019) ...................................................................................... 4

*Ho-Chunk, Inc. v. Sessions*,
   894 F.3d 365 (D.C. Cir. 2018) ..................................................................... 10

*Jackson v. Payday Fin., LLC*,
   764 F.3d 765 (7th Cir. 2014) ....................................................................... 12

*KalshiEX LLC v. Flaherty*,
   2025 WL 1218313 (D.N.J. Apr. 28 2025) ............................................... 15, 19

*KalshiEX LLC v. Martin*,
   793 F. Supp. 3d 667 (D. Md. 2025) ............................................................... 8

*KalshiEX LLC v. Orgel*,
   2026 WL 474869 (M.D. Tenn. Feb. 19, 2026) ................................... 8, 15, 19

*KalshiEX, LLC v. Hendrick*,
   2025 WL 3286282 (D. Nev. Nov. 24, 2025) ................................................. 8

*Kentucky v. Biden*,
   57 F.4th 545 (6th Cir. 2023) ......................................................................... 5

*Leist v. Simplot*,
   638 F.2d 283 (2d Cir. 1980) ...................................................................... 7, 8

Farella Braun + Martel LLP
One Bush Street, Suite 900
San Francisco, California 94104
(415) 954-4400

KALSHI DEFENDANTS' REPLY
Case No. 3:25-cv-06162

iv

*Lexington Ins. Co. v. Smith* (*Lexington I*),
  94 F.4th 870 (9th Cir. 2024) .................................................................................9

*Lexington Ins. Co. v. Smith* (*Lexington II*),
  117 F.4th 1106 (9th Cir. 2024) ............................................................................12

*Maffick LLC v. Facebook, Inc.*,
  2021 WL 1893074 (N.D. Cal. May 11, 2021) ...........................................12, 13, 14

*McLaughlin v. Homelight, Inc.*,
  2021 WL 5986913 (C.D. Cal. Sep. 17, 2021) ...................................................12, 14

*Med. Marijuana, Inc. v. Horn*,
  604 U.S. 593 (2025) ...........................................................................................20

*Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Curran*,
  456 U.S. 353 (1982) .............................................................................................8

*Michigan v. Bay Mills Indian Cmty.*,
  572 U.S. 782 (2014)..........................................................................3, 5, 11, 12

*MillerKing v. DoNotPay, Inc.*,
  702 F. Supp. 3d 762 (S.D. Ill. 2023)................................................................12, 13

*Montana v. United States*,
  450 U.S. 544 (1981) .......................................................................................2, 8, 9

*Morton v. Mancari*,
  417 U.S. 535 (1974) ............................................................................................10

*Murphy v. NCAA*,
  584 U.S. 453 (2018) ............................................................................................19

*NLRB v. Little River Band of Ottawa Indians*,
  788 F.3d 537 (6th Cir. 2015) .......................................................................2, 9, 11, 12

*Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*,
  575 U.S. 175 (2015)............................................................................................16

*Plains Com. Bank v. Long Fam. Land & Cattle Co.*,
  554 U.S. 316 (2008)..........................................................................................9, 12

*Pulse Health LLC v. Akers Biosciences, Inc.*,
  2017 WL 1371272 (D. Or. Apr. 14, 2017) ..........................................................13

*QVC Inc. v. Your Vitamins, Inc.*,
  439 F. App'x 165 (3d Cir. 2011) ........................................................................17

Farella Braun + Martel LLP
One Bush Street, Suite 900
San Francisco, California 94104
(415) 954-4400

KALSHI DEFENDANTS' REPLY          v
Case No. 3:25-cv-06162

*Scilex Pharms. Inc. v. Sanofi-Aventis U.S. LLC*,
    2021 WL 11593043 (N.D. Cal. Aug. 16, 2021) ................................................................ 17

*Sokaogon Chippewa Cmty. v. Babbitt*,
    214 F.3d 941 (7th Cir. 2000) ........................................................................................ 12

*Solis v. Matheson*,
    563 F.3d 425 (9th Cir. 2009) ........................................................................................ 10

*South Carolina v. Catawba Indian Tribe, Inc.*,
    476 U.S. 498 (1986) ....................................................................................................... 10

*Southland Sod Farms v. Stover Seed Co.*,
    108 F.3d 1134 (9th Cir. 1997) ............................................................................... 15, 16

*Spokeo, Inc. v. Robins*,
    578 U.S. 330 (2016) ....................................................................................................... 11

*Stahl Law Firm v. Judicate West*,
    2013 WL 4873065 (N.D. Cal. Sep. 12, 2013) .............................................................. 15

*Stand Up for Cal.! v. U.S. Dep't of the Interior*,
    959 F.3d 1154 (9th Cir. 2020) ........................................................................................ 4

*Stifel, Nicolaus & Co. v. Lac du Flambeau Band of Lake Superior Chippewa Indians*,
    807 F.3d 184 (7th Cir. 2015) ..................................................................................... 2, 9

*Strate v. A-1 Contractors*,
    520 U.S. 438 (1997) ......................................................................................................... 9

*Swartz v. KPMG LLP*,
    476 F.3d 756 (9th Cir. 2007) ........................................................................................ 18

*TrafficSchool.com, Inc. v. Edriver Inc.*,
    653 F.3d 820 (9th Cir. 2011) ........................................................................................ 13

*United Food & Com. Workers Unions & Emps. Midwest Health Benefits Fund v. Walgreen Co.*,
    719 F.3d 849 (7th Cir. 2013) ........................................................................................ 20

*United States v. Collazo*,
    984 F.3d 1308 (9th Cir. 2021) ........................................................................................ 3

*United States v. Doe*,
    701 F.2d 819 (9th Cir. 1983) ........................................................................................ 11

Farella Braun + Martel LLP
One Bush Street, Suite 900
San Francisco, California 94104
(415) 954-4400

*United States v. Galecki*,
    89 F.4th 713 (9th Cir. 2023) ................................................................................. 17

*United States v. Miller*,
    953 F.3d 1095 (9th Cir. 2020) .............................................................................. 17

*United States v. Wheeler*,
    435 U.S. 313 (1978) ................................................................................................. 8

*Vampire Fam. Brands, LLC v. MPL Brands, Inc.*,
    2021 WL 4134841 (C.D. Cal. Aug. 6, 2021) .................................................... 13

*W. Flagler Assocs. v. Haaland*,
    573 F. Supp. 3d 260 (D.D.C. 2021) .................................................................... 14

*Wisconsin v. Ho-Chunk Nation*,
    512 F.3d 921 (7th Cir. 2008) ................................................................................. 3

*Yazoo & Miss. Valley R.R. Co. v. Thomas*,
    132 U.S. 174 (1889) ........................................................................................... 5, 9

**Statutes**

7 U.S.C. § 2 ...................................................................................................... 1, 10, 19

7 U.S.C. § 25 ................................................................................................................. 8

18 U.S.C. § 1084 ........................................................................................................ 17

18 U.S.C. § 1166 .......................................................................................................... 9

18 U.S.C. § 1343 ........................................................................................................ 17

18 U.S.C. § 1955 .................................................................................................. 17, 18

25 U.S.C. § 2701 .......................................................................................................... 5

25 U.S.C. § 2705 .......................................................................................................... 5

25 U.S.C. § 2710 .................................................................................................. *passim*

28 U.S.C. § 1331 ........................................................................................................ 11

31 U.S.C. § 5361 .......................................................................................................... 6

31 U.S.C. § 5362 .................................................................................................. *passim*

44 U.S.C. § 1507 .......................................................................................................... 4

Farella Braun + Martel LLP
One Bush Street, Suite 900
San Francisco, California 94104
(415) 954-4400

KALSHI DEFENDANTS' REPLY
Case No. 3:25-cv-06162

vii

Wis. Stat. § 945.01 ............................................................................................................. 18

Wis. Stat. § 945.03 ............................................................................................................. 18

**Other Authorities**

17 C.F.R. § 40.11 ................................................................................................................. 7

73 Fed. Reg. 25,669 (May 7, 2008) .................................................................................. 2, 7

Brief for CFTC as Amicus Curiae Supporting Appellant, *N. Am. Derivatives Exch., Inc. v. Nevada*, No. 25-7187 (9th Cir. Feb. 17, 2026), Dkt. 38.2 ............................................................. *passim*

Grant Harvey, *Meta's $72B Superintelligence Bet is Building a Future that Could Kill Its Own Apps*, The Neuron (July 31, 2025), https://www.theneuron.ai/explainer-articles/metas-72b-superintelligence-bet-is-building-a-future-that-could-kill-its-own-apps ........................................................... 16

James Royal, *Options vs. stocks: Which one is better for you?*, Yahoo! Finance (Aug. 25, 2025), https://finance.yahoo.com/news/options-vs-stocks-one-better-210539982.html ................................................................................................................. 16

Farella Braun + Martel LLP
One Bush Street, Suite 900
San Francisco, California 94104
(415) 954-4400

KALSHI DEFENDANTS' REPLY
Case No. 3:25-cv-06162

## I.    PRELIMINARY STATEMENT

The Complaint alleges that Kalshi is a designated contract market ("DCM") regulated by the CFTC and subject to the CEA.  ¶ 71;[1] *see also* ECF No. 75 ("Opposition" or "Opp."), at 2.  That indisputable fact is fatal to Plaintiffs' IGRA claim.  No matter how strenuously Plaintiffs insist that IGRA authorizes them to regulate Kalshi's federal exchange, they cannot change Congress's treatment of DCMs.  In enacting UIGEA in 2006, Congress ensured that transactions on DCMs would remain subject to the CFTC's exclusive jurisdiction, even if they might otherwise meet the definition of "bet or wager" and be unlawful under state or tribal law in the place where the transaction is "initiated."  Surely Congress did not create that carveout while also intending for tribes to regulate those transactions under IGRA—a statute passed in 1988 before the advent of the internet.  *California v. Iipay Nation of Santa Ysabel*, 898 F.3d 960, 964 n.6, 968 (9th Cir. 2018).  As this Court already held, IGRA does not apply to Kalshi's event contracts.  ECF No. 71 at 2.

Plaintiffs protest that the Court's decision leads to an "implied repeal" of IGRA by UIGEA.  Not so.  As the CFTC recently explained in an amicus brief to the Ninth Circuit, the CEA's 1974 amendments vested the CFTC with exclusive jurisdiction to regulate trading on DCMs.  Brief for CFTC as Amicus Curiae Supporting Appellant at 21-26, *N. Am. Derivatives Exch., Inc. v. Nevada*, No. 25-7187 (9th Cir. Feb. 17, 2026), Dkt. 38.2 ("CFTC Amicus"); *see also* 7 U.S.C. § 2(a)(1)(A).  UIGEA merely preserved that exclusive jurisdiction, making clear that DCMs are excluded from state and tribal regulation.  It did nothing to repeal IGRA because it was the 1974 amendments to the CEA, not UIGEA, that preempted state and tribal regulation of transactions on DCMs.  UIGEA simply ensured that the uniform federal regulatory scheme governing derivatives exchanges was not inadvertently undermined by an internet gambling statute.

Plaintiffs also contend that UIGEA's carveout does not apply because Kalshi's sports event contracts are not swaps.  The Complaint's only theory as to why they are not swaps or futures—that they serve "no hedging or other economic purpose" (¶ 63)—assumes a requirement that is nowhere

---

[1] Unless otherwise specified, "¶ _" refers to paragraphs in the Complaint.  ECF No. 1.  Capitalized terms are as defined in Kalshi's moving brief (ECF No. 67, "Moving Brief" or "Mov. Br.").  "Ex. __" refers to exhibits to the Declaration of Karen Wong, dated February 23, 2026, filed herewith.

Farella Braun + Martel LLP
One Bush Street, Suite 900
San Francisco, California 94104
(415) 954-4400

KALSHI DEFENDANTS' REPLY                    1
Case No. 3:25-cv-06162

1    in the statute.  In fact, Congress **removed** a preexisting "economic purpose" requirement in the 2000

2    amendments to the CEA.  *See* 73 Fed. Reg. 25,669, 25,672 (May 7, 2008).  In any event, the Court

3    need not decide whether these contracts are swaps, futures, or some other instrument, because the

4    UIGEA carveout applies to "any transaction" conducted on a DCM, 31 U.S.C. § 5362(1)(E)(ii), and

5    thus to the transactions on Kalshi's DCM that the Complaint alleges are at issue.  ¶ 71.

6         Plaintiffs' defense of their ordinance and sovereignty claims fares no better.  Plaintiffs claim

7    (Opp. 20-21), without support, that IGRA abrogated the strict limits on tribal authority over

8    nonmembers set forth in the Supreme Court's decision in *Montana v. United States*, 450 U.S. 544

9    (1981).  But two circuit courts have found otherwise.  *Stifel, Nicolaus & Co. v. Lac du Flambeau*

10   *Band of Lake Superior Chippewa Indians*, 807 F.3d 184, 207-08 (7th Cir. 2015); *NLRB v. Little*

11   *River Band of Ottawa Indians*, 788 F.3d 537, 553-54 (6th Cir. 2015).  And Plaintiffs seem to

12   abandon any claim to **sovereign** authority over Kalshi, arguing instead that Plaintiffs' authority

13   derives from IGRA.  Whatever the force of that argument, it cannot cure the Complaint's failure to

14   identify any injury to Plaintiffs' sovereignty as required under Article III.

15        As to their Lanham Act claim, Plaintiffs argue that Kalshi's statements of opinion are

16   actionable because Kalshi lacked good faith, pointing to Kalshi's statements in a different legal

17   proceeding involving a different type of event contract.  But Plaintiffs ignore both controlling Ninth

18   Circuit law and this Court's conclusion to the contrary.  Nor can Plaintiffs rescue their RICO claim.

19   Instead, they advance a bizarre hypothesis that Kalshi is misleading the courts (but not customers)

20   and harming Plaintiffs' non-existent sports betting business.

21        Unable to defend the deficiencies in their Complaint, Plaintiffs repeatedly claim that Kalshi

22   is "offering a different version of the facts."  *E.g.*, Opp. 34, 39.  But the Moving Brief assumes the

23   Complaint's factual allegations are true.  There is no dispute as to what Kalshi is (a CFTC-registered

24   DCM), the products Kalshi offers (self-certified event contracts, including sports-related), or from

25   where its exchange can be accessed (nationwide).  Rather, Kalshi challenges the **sufficiency** of the

26   Complaint, which is riddled with dispositive legal flaws.  On a motion to dismiss, it is proper for

27   courts to resolve "complex, novel issues of statutory interpretation" (Opp. 3).  *See, e.g., Citizens for*

28   *a Better Env't-Cal. v. Union Oil Co. of Cal.*, 861 F. Supp. 889, 897 (N.D. Cal. 1994), *aff'd*, 83 F.3d

Farella Braun + Martel LLP
One Bush Street, Suite 900
San Francisco, California 94104
(415) 954-4400

KALSHI DEFENDANTS' REPLY                    2
Case No. 3:25-cv-06162

1  1111 (9th Cir. 1996) ("legal issues on which the actionability of the claim depends can and should

2  be resolved" on a motion to dismiss).  The Complaint should be dismissed with prejudice.

## II.     ARGUMENT

### A.     PLAINTIFFS FAIL TO STATE AN IGRA CLAIM (COUNT I)

#### 1.  Plaintiffs Have No Right of Action Under IGRA to Enjoin Kalshi's Conduct.

Plaintiffs do not dispute that, to sue under 25 U.S.C. § 2710(d)(7)(A)(ii), a plaintiff must allege a violation of a state-tribal compact.  *See* Mov. Br. 5-6.  Plaintiffs instead argue that Picayune Rancheria's compact and Blue Lake and Chicken Ranch Rancherias' Secretarial Procedures (the "Compact and Procedures") do not authorize Kalshi to conduct class III gaming on Plaintiffs' lands and therefore Plaintiffs have alleged a violation of a compact.  Opp. 5.  Not so.

*First*, Plaintiffs' reading would render the statutory language, "and conducted in violation of any Tribal-State compact," 25 U.S.C. § 2710(d)(7)(A)(ii), wholly superfluous.  *See United States v. Collazo*, 984 F.3d 1308, 1326 (9th Cir. 2021) ("The canon against surplusage is strongest where, as here, an interpretation would render superfluous another part of the same statutory scheme." (citation modified)).  Section 2710(d)(1) provides that class III gaming unauthorized by a compact is unlawful. But Congress did not authorize tribes to sue for "unauthorized" class III gaming activity generally. Congress created a right of action only where the conduct in question is "in violation of" a compact. ECF No. 71 at 8-9 (differentiating between unauthorized activity and activity that violates a compact); *Michigan v. Bay Mills Indian Cmty.*, 572 U.S. 782, 795 n.6 (2014) (states cannot sue tribes under Section 2710(d)(7)(A)(ii) for unauthorized gaming without a compact); *see* Mov. Br. Section III.B.1. That is why the Ninth Circuit has already rejected the precise argument that Plaintiffs press here. *Cabazon Band of Mission Indians v. Wilson*, 124 F.3d 1050, 1059-60 (9th Cir. 1997) (holding that state had no cause of action to enjoin tribe's operation of unauthorized "slot machine" gaming, even though the applicable tribal-state compact "authorized only simulcast horse racing").  Moreover, the alleged violation must "relate[] to a compact provision agreed upon pursuant to the IGRA negotiation process" between the tribe and the state, *Wisconsin v. Ho-Chunk Nation*, 512 F.3d 921, 933 (7th Cir. 2008), which Plaintiffs concede is "narrowly restricted by Congress."  Opp. 12 (citing *Chicken Ranch Rancheria of Me-Wuk Indians v. California*, 42 F.4th 1024, 1034 (9th Cir. 2022)).

Farella Braun + Martel LLP
One Bush Street, Suite 900
San Francisco, California 94104
(415) 954-4400

KALSHI DEFENDANTS' REPLY                    3
Case No. 3:25-cv-06162

1    Nor can Plaintiffs rewrite the statute by quoting from legislative history.  *E.g.*, Opp. 5 (citing

2    Senate report).  The text of the statute controls.  *Food Mktg. Inst. v. Argus Leader Media*, 588 U.S.

3    427, 436 (2019) (legislative history cannot "muddy" the meaning of "clear statutory language"); *see*

4    *also Cayuga Nation v. N.Y. Gaming Comm'n*, 2025 WL 2161290, at *2-3 (N.D.N.Y. July 30, 2025)

5    (declining to adopt invocation of Senate report because Section 2710(d)(7)(A) is unambiguous).

6    *Second*, Plaintiffs fail to explain how Kalshi—a non-party to the Compact and Procedures—

7    could be in violation of any of them.  Plaintiffs claim that a compact has a dual character as both a

8    "private contract" and as "regulatory law," such that parties "breach" the contract, while non-parties

9    "violate" the "regulatory law."  Opp. 8-9, 12.  This construct makes no sense and has no basis in IGRA.

10   Indeed, Plaintiffs concede that under IGRA, a compact is a "narrow" agreement regarding the "rights

11   and obligations between two sovereigns"—*i.e.*, between a tribe and a state.  Opp. 9 n.4.  Plaintiffs

12   suggest it is Kalshi's burden to show its conduct is not prohibited by IGRA (*id.*), but they have it

13   backwards: it is Plaintiffs' burden to sufficiently plead a violation.

14   Plaintiffs argue, without any authority, that secretarial procedures (and thus compacts) have

15   regulatory power over non-parties.  Opp. 9-10.  But secretarial procedures effectively function as a

16   compact, serving as a backstop where a state fails to negotiate with a tribe in "good faith."  *Stand Up*

17   *for Cal.! v. U.S. Dep't of the Interior*, 959 F.3d 1154, 1161 (9th Cir. 2020).  Having urged the Court

18   to treat secretarial procedures as equivalent to compacts for purposes of Section 2710(d)(7)(A)(ii),

19   Plaintiffs cannot now recharacterize secretarial procedures as "regulations."  Plaintiffs further rely on

20   44 U.S.C. § 1507 and *Bibeau v. Pac. Nw. Rsch. Found. Inc.*, 188 F.3d 1105, 1110 (9th Cir. 1999),

21   *amended*, 208 F.3d 831 (9th Cir. 2000), to argue that Kalshi was on "constructive notice" that it would

22   be subject to the Compact or Procedures because they were published in the Federal Register.  Opp. 6

23   n.3.  But Section 1507 only provides for "constructive notice" where a party is "subject to or affected

24   by" a rule or regulation.  The Compact and Procedures only prescribe ***Plaintiffs'*** conduct.  ECF No.

25   67-8 § 3.0; Ex. K § 3.0(d); Ex. L § 3.0(d).  Because they "impose[] no obligations" on third parties, it

26   is irrelevant whether Kalshi was "constructively" aware of them.  *Bibeau*, 188 F.3d at 1110-111.

27   Section 2710(d)(3)(C)(v), which provides that a compact may include provisions relating to

28   "remedies for breach of contract," Opp. 10-12, helps Kalshi, not Plaintiffs.  It reflects Congress's

Farella Braun + Martel LLP
One Bush Street, Suite 900
San Francisco, California 94104
(415) 954-4400

KALSHI DEFENDANTS' REPLY                    4
Case No. 3:25-cv-06162

understanding that a compact is a contract. *See* Mov. Br. 7-8. That compacts govern state-tribal relations, not the conduct of non-parties, is entirely consistent with IGRA's purpose, which was to restore a measure of ***state jurisdiction*** to gaming regulation while also respecting tribal sovereignty. *See Bay Mills*, 572 U.S. at 795 n.6 (IGRA addresses "vacuum of state authority over gaming in Indian country" through a "compact-based solution"). IGRA does so by listing the procedures states and tribes must follow (and the topics they must address) in forming a compact as well as a structure for federal oversight. *See* 25 U.S.C. §§ 2705, 2710(d). Plaintiffs' reference to the inclusion of dispute resolution provisions in the Compact (Opp. 10-11) only underscores its contractual nature, as the provisions expressly provide for disputes between the parties to the Compact—*i.e.*, the tribe and state—to be heard in federal court. *E.g.*, ECF No. 67-8 at 27-28. Plaintiffs' suggestion that a compact, "once concluded," (Opp. 11), evolves from a contract into a regulatory device is entirely divorced from the statutory text, and Plaintiffs identify no court that has adopted such a theory.

Plaintiffs claim, citing Congress's findings, that IGRA gave tribes the "exclusive right to regulate gaming activity on Indian lands." *E.g.*, Opp. 6 (citing 25 U.S.C. § 2701(5)). But Congress's "findings" merely reflect the circumstances that led it to enact IGRA and "cannot enlarge or confer powers." *See Yazoo & Miss. Valley R.R. Co. v. Thomas*, 132 U.S. 174, 188 (1889); *Kentucky v. Biden*, 57 F.4th 545, 551 (6th Cir. 2023) ("A congressional expression of purpose has as much real-world effect as a congressional expression of apology." (citation modified)). As Plaintiffs recognize (Opp. 11-12), "[o]utside the express provisions of a compact, the enforcement of IGRA's prohibitions on class III gaming remains the exclusive province of the federal government." *Cabazon*, 124 F.3d at 1059.

## 2. Congress Did Not Empower Tribes to Regulate Derivatives Trading on CFTC-Designated Contract Markets

This dispute arises at the intersection of three federal statutes—the CEA, IGRA, and UIGEA. Plaintiffs claim (Opp. 15) that "UIGEA is inapplicable" to this case, but the Ninth Circuit has concluded the opposite: IGRA is "silent" on the kind of online activity at issue in this case, which is precisely why Congress enacted UIGEA. *Ipay Nation*, 898 F.3d at 968. As the Court has already recognized, all three statutes can be harmonized. The CEA regulates derivatives markets. IGRA

Farella Braun + Martel LLP
One Bush Street, Suite 900
San Francisco, California 94104
(415) 954-4400

KALSHI DEFENDANTS' REPLY    5
Case No. 3:25-cv-06162

1  regulates gaming activity physically conducted "**on** Indian lands," like poker tables or slots.  UIGEA

2  regulates "bets or wagers" placed via the internet, but carves out from that definition the distinct and

3  limited category of transactions that occur **on a DCM**.  UIGEA preserved Congress's decision—

4  decades earlier—to vest the CFTC with exclusive jurisdiction to regulate DCMs.  Mov. Br. 10-11.

5       Plaintiffs respond by arguing that UIGEA's carveout for derivatives trading does not apply

6  because a provision in UIGEA states that it "'shall [not] be construed as altering, limiting, or

7  extending'" any federal or state law or state-tribal compact concerning gambling.  Opp. 14-15 (quoting

8  31 U.S.C. § 5361(b)).  But Kalshi does not ask the Court to interpret UIGEA as doing any of those

9  things.  Kalshi does not suggest that UIGEA "implied[ly] repeal[ed]" a congressional decision made

10 when enacting IGRA to allow tribes to regulate gaming conducted nationally over the internet.  Opp.

11 14-15.  Rather, the point is that, when Congress passed IGRA, it did not **consider** the issue at all

12 because, as the Ninth Circuit recognized in *Iipay Nation*, the internet had not been introduced to the

13 public yet.  898 F.3d at 964 n.6 ("We note that Congress passed IGRA in 1988—a few years before

14 the internet became publicly available. . . . [T]he statute nowhere referenced the internet, or other

15 networking capabilities that reach beyond Indian lands."); *see also* ECF No. 71 at 9 ("The UIGEA,

16 unlike IGRA, expressly addresses internet gaming that can be accessed in locations where such gaming

17 is unlawful, **including Indian lands**." (citing 31 U.S.C. § 5362(10))).  That IGRA addressed

18 "electronic" forms of gaming (Opp. 14-15) has no bearing on internet-based activity.  And when

19 Congress **did** address such activity through UIGEA, it adopted the formulation advocated by

20 Plaintiffs—that "bets or wagers" shall be deemed to occur where they are "initiated" and subject to

21 tribal and state gaming laws—**except** with respect to transactions conducted on DCMs.  Plaintiffs

22 simply pretend that this carveout does not exist.[2]

23      Nor can Plaintiffs escape the UIGEA carveout by arguing that Kalshi seeks dismissal based on

24 disputed allegations concerning the true nature of Kalshi's event contracts.  Opp. 18-19.  As an initial

25

26 _____

27 [2] Plaintiffs' effort to spin *Iipay Nation* in its favor falls flat.  Opp. 16-17.  The Ninth Circuit
   acknowledged that under UIGEA, internet bets or wagers are deemed to occur where they are
   "initiated." *Iipay Nation*, 898 F.3d at 968.  In so holding, the court found that UIGEA did not alter

28 IGRA precisely because IGRA was "silent" on the issue. *Id.*

Farella Braun + Martel LLP
One Bush Street, Suite 900
San Francisco, California 94104
(415) 954-4400

KALSHI DEFENDANTS' REPLY                    6
Case No. 3:25-cv-06162

1  matter, whether Kalshi's event contracts qualify as "true" derivatives (in Plaintiffs' parlance) is a legal

2  question, not a factual one.  *See* ¶¶ 61-63.  And Plaintiffs' allegation that Kalshi's contracts are not

3  "true" derivatives because they allegedly lack any "hedging or other economic purpose" (¶ 63) is

4  incorrect under federal law.  The CEA contains no such requirement.  The CEA *previously* imposed

5  an "economic purpose" requirement, but Congress eliminated it in 2000.  73 Fed. Reg. at 25,672.  In

6  any event, the Court need not decide whether Kalshi's event contracts are swaps, futures, or some

7  other instrument, because UIGEA insulates from state or tribal liability not just swaps, but "*any*

8  *transaction* conducted on . . . a registered entity . . . under the Commodity Exchange Act" (*i.e.*, a

9  DCM).  31 U.S.C. § 5362(1)(E)(ii).  Kalshi's sports event contracts qualify.  ¶¶ 71, 108; Opp. 2.

10      **3.   Plaintiffs' Attack on Kalshi's CEA Compliance Cannot Rescue Their IGRA Claim.**

11      The Moving Brief explained why Plaintiffs' reading of the CEA's Special Rule and 17 C.F.R.

12  § 40.11 is irrelevant and wrong.  Mov. Br. 11-12.  The CFTC itself has recently confirmed that it

13  believes Kalshi's sports event contracts "fall comfortably within the [CEA's] reach," and thus within

14  the agency's "exclusive jurisdiction" to regulate trading on DCMs.  CFTC Amicus at 19-21; *see also*

15  Ex. M at 5 (CFTC press release announcing withdrawal of rule proposal that would have prohibited

16  sports-related event contracts and staff advisory cautioning DCMs regarding sports event contracts);

17  Ex. N (CFTC Chairman remarks directing the same).  If Plaintiffs want to argue that Kalshi's event

18  contracts fail to comply with the CEA and CFTC regulations (Opp. 18-20)—an argument which

19  necessarily challenges the CFTC's oversight—the mechanism for doing so is an action against the

20  CFTC under the Administrative Procedure Act ("APA").  *See Big Lagoon Rancheria v. California*,

21  789 F.3d 947, 953 (9th Cir. 2015) (en banc) (state may not "use a collateral proceeding to end-run the

22  procedural requirements governing [review of administrative action]" (citation modified)); *Cousins v.*

23  *Sec'y of U.S. Dep't of Transp.*, 880 F.2d 603, 605-06 (1st Cir. 1989) ("The APA was intended to

24  provide . . . a single uniform method for review of agency action.").

25      While Plaintiffs protest that the CFTC's exclusive jurisdiction to regulate DCMs is only vis-à-

26  vis other federal agencies (Opp. 19), courts disagree.  *See Am. Agric. Movement, Inc. v. Bd. of Trade*

27  *of Chi.*, 977 F.2d 1147, 1155-57 (7th Cir. 1992) (CFTC's exclusive jurisdiction preempts state laws

28  that "directly affect trading on or the operation of a futures market"); *Leist v. Simplot*, 638 F.2d 283,

Farella Braun + Martel LLP
One Bush Street, Suite 900
San Francisco, California 94104
(415) 954-4400

KALSHI DEFENDANTS' REPLY                7
Case No. 3:25-cv-06162

322 (2d Cir. 1980); *see also KalshiEX LLC v. Orgel*, 2026 WL 474869, at *7 (M.D. Tenn. Feb. 19, 2026) ("Kalshi is likely to succeed on the merits because sports event contracts are 'swaps' and conflict preemption applies."). Even the district court in Nevada, which held that sports event contracts are not swaps (after initially holding the opposite), recognized the preemptive effect of the CEA on state regulation. *KalshiEX, LLC v. Hendrick*, 2025 WL 3286282, at *5 (D. Nev. Nov. 24, 2025).[3] Plaintiffs also misconstrue *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Curran*, 456 U.S. 353, 387, 394-95 (1982), which held only that the 1974 amendments to the CEA did not interfere with the implied cause of action to enforce the CEA that was later codified in the statute. *See* 7 U.S.C. § 25.

Plaintiffs double down on the idea that IGRA must apply if Kalshi's sports event contracts violate the CEA or CFTC regulations. Opp. 18. They cite no authority for this theory, and it makes no sense. If Kalshi is in violation of the CEA (it is not), it does not magically become subject to IGRA. *See supra* Section II.B.1-2. Nor is UIGEA's carveout somehow dependent on whether the contracts comply with the CEA. *See* 31 U.S.C. § 5362(1)(E)(ii).

## B.    PLAINTIFFS FAIL TO STATE AN ORDINANCE CLAIM (COUNT II).

### 1.    IGRA Does Not Give the Tribe Jurisdiction Over Kalshi.

Plaintiffs claim Kalshi is violating their gaming Ordinances, but they are unable to point to a single provision in the Complaint identifying a violation.[4] In any event, Plaintiffs have no sovereign authority over nonmembers, and certainly not over one that is based in New York and runs a nationwide derivatives exchange.[5] *Montana*, 450 U.S. at 563-64 (quoting *United States v. Wheeler*, 435 U.S. 313, 323, 326 (1978) ("relations between an Indian tribe and nonmembers" are one of the

---

[3] Kalshi has appealed the *Hendrick* decision, *appeal filed*, No. 25-07516 (9th Cir. Nov. 28, 2025), as well as the court's decision in *KalshiEX LLC v. Martin*, 793 F. Supp. 3d 667 (D. Md. 2025), *appeal filed*, No. 25-01892 (4th Cir. Aug. 6, 2025).

[4] Plaintiffs insist they may allege a violation of their Ordinances without identifying any specific provision that has been violated and then fix this deficiency in the Opposition. Opp. 22. Wrong. A complaint "may not be amended by the briefs in opposition to a motion to dismiss." *Cyph, Inc. v. Zoom Video Commc'ns, Inc.*, 642 F. Supp. 3d 1034, 1043 (N.D. Cal. 2022) (citation modified).

[5] Plaintiffs protest that there are "complex, disputed" factual issues regarding the location of Kalshi's activity. Opp. 8, 17-18. But it is undisputed that Kalshi operates an internet-based exchange accessible by individuals located on Plaintiffs' tribal lands. *See, e.g.*, ¶¶ 68-69, 154-56.

Farella Braun + Martel LLP
One Bush Street, Suite 900
San Francisco, California 94104
(415) 954-4400

KALSHI DEFENDANTS' REPLY          8
Case No. 3:25-cv-06162

"many. . . attributes of sovereignty" that tribes have lost)); *Plains Com. Bank v. Long Fam. Land & Cattle Co.*, 554 U.S. 316, 327 (2008); *Strate v. A-1 Contractors*, 520 U.S. 438, 445-46 (1997); *Lexington Ins. Co. v. Smith* ("*Lexington I*"), 94 F.4th 870, 875-76 (9th Cir. 2024). Plaintiffs make no attempt to argue either of the two narrow exceptions to this rule apply here. *See* Mov. Br. 13-16; Opp. 20-23. Instead, they claim—without any support—that "the *Montana* framework" is "inapplicable" because Congress "explicitly delegated" this authority to them in IGRA. Opp. 21.

Two circuit courts disagree. In *Stifel*, nonmembers argued that a tribe lacked authority to enforce IGRA's provisions and tribal law against them in tribal court. The Seventh Circuit agreed, holding that neither *Montana* exception applied. 807 F.3d at 207-08. And in *NLRB*, the Sixth Circuit relied on *Montana* in finding that IGRA did not preclude application of a federal statute to the tribe's operation of its casino. 788 F.3d at 553-54 ("[T]he presumption of applicability of federal statutes . . . is grounded on the *Montana* presumption that tribes lack the inherent power to govern the activities of nonmembers. . . . IGRA provides a statutory basis to regulate tribal gaming activities, but from that fact it does not follow that Congress intended that no other federal regulations apply to a tribe's operation of a commercial gaming facility.").

It is true that tribes may exercise jurisdiction over nonmembers when specifically authorized by federal statute or treaty, *see Strate*, 520 U.S. at 445, but Plaintiffs point to nothing in IGRA indicating Congress "expressly conferred" such authority. *Atkinson Trading Co. v. Shirley*, 532 U.S. 645, 649-50 (2001). Plaintiffs repeatedly say Section 2701(5) gives them the "exclusive right to regulate gaming activity on Indian lands" (Opp. 21), but that provision in the statute's preamble, which merely describes the circumstances that led Congress to enact the legislation, *Yazoo*, 132 U.S. at 188, does not "specifically authorize[]," *Stifel*, 807 F.3d at 205, or "expressly confer[]," *Atkinson*, 532 U.S. at 649-50, tribal jurisdiction over nonmembers. Indeed, the only provision of IGRA that does provide tribes with "exclusive" authority is limited to class I gaming and thus inapplicable to Plaintiffs' claimed authority to regulate Kalshi's activity as class III gaming. 25 U.S.C. § 2710(a)(1).[6]

---

[6] IGRA also confers "exclusive jurisdiction" on the federal government—not tribes—to prosecute violations of state gambling laws occurring on Indian lands, unless that authority has been conferred through a tribal-state compact on the relevant state. 18 U.S.C. § 1166(d).

Farella Braun + Martel LLP
One Bush Street, Suite 900
San Francisco, California 94104
(415) 954-4400

1    Nor do the other provisions Plaintiffs cite say anything about—let alone "expressly confer[]"—

2    tribal jurisdiction over nonmembers, other than licensees, which Kalshi is not.  Opp. 21.  Plaintiffs

3    point to 25 U.S.C. § 2710(d)(2)(A), but that provision *limits* tribal authority to regulate *licensees*; it

4    does not bestow upon tribes broad authority to regulate all nonmembers.  *Id.* (ordinances where a tribe

5    authorizes any person or entity to engage in class III gaming must satisfy Section 2710(b), which sets

6    forth conditions and required federal approvals for ordinances governing tribal gaming licenses).  It

7    certainly does not evince Congressional intent to give Plaintiffs authority over nonmember non-

8    licensees like Kalshi.  *Compare Bugenig v. Hoopa Valley Tribe*, 266 F.3d 1201, 1215-18 (9th Cir.

9    2001) (Congress "expressly" gave authority to tribe to regulate logging where Congress ratified tribal

10   constitution explicitly referring to regulating nonmembers).

11       **2.  The CEA Preempts the Ordinances.**

12       In any event, the CEA preempts the Ordinances.  7 U.S.C. § 2(a)(1)(A); *see* Mov. Br. 16-17.

13   Plaintiffs argue the CEA does not apply to tribes, but the general rule is that tribes are subject to

14   statutes of general applicability.  *Solis v. Matheson*, 563 F.3d 425, 430 (9th Cir. 2009).  Plaintiffs

15   provide no reason why any of the narrow exceptions to that rule apply here (*see* Opp. 23), and no

16   answer to Kalshi's cases establishing that none do (Mov. Br. 16-17).[7]  Plaintiffs lean heavily on the

17   Indian canon of construction, but it "applies only to statutes that are . . . ambiguous," *Ho-Chunk, Inc.*

18   *v. Sessions*, 894 F.3d 365, 369 n.4 (D.C. Cir. 2018), and does not "permit disregard of the clearly

19   expressed intent of Congress" to confer exclusive jurisdiction over DCMs to the CFTC, *South*

20   *Carolina v. Catawba Indian Tribe, Inc.*, 476 U.S. 498, 506 (1986).

21       Plaintiffs also suggest that the Ordinances cannot be preempted because, like the Compacts

22   and Procedures, they are akin to federal regulations.  Opp. 22-23.  Plaintiffs are not federal regulators.

23   And in any event, the CEA supersedes other federal law—including federal regulations—when it

24   comes to trading on DCMs like Kalshi.  7 U.S.C. § 2(a)(1)(A) (providing that CEA "supersede[s]"

25

26   [7] Plaintiffs cite *EEOC v. Cherokee Nation*, 871 F.2d 937 (10th Cir. 1989).  Opp. 23.  That case
     merely noted that the rule governing statutes of general applicability was "not applicable to treaty
27   cases."  *Cherokee Nation*, 871 F.2d at 938 n.3.  Plaintiffs also cite *Morton v. Mancari*, 417 U.S. 535,
     550-51 (1974), but it says nothing about whether generally applicable federal statutes apply to tribes,
28   holding only that repeals by implication are limited to instances when statutes are irreconcilable.

Farella Braun + Martel LLP
One Bush Street, Suite 900
San Francisco, California 94104
(415) 954-4400

KALSHI DEFENDANTS' REPLY                 10
Case No. 3:25-cv-06162

1    jurisdiction of Securities and Exchange Commission with respect to transactions on DCMs); *see also*

2    *United States v. Doe*, 701 F.2d 819, 823 (9th Cir. 1983) ("Where an administrative regulation conflicts

3    with a statute, the statute controls.").

4         Plaintiffs state that "there is no conflict between the CEA and IGRA." Opp. 23. Kalshi agrees.

5    *See supra* Section II.A.2-3. IGRA ***does not address*** the internet-based transactions on Kalshi's DCM.

6    *See Iipay Nation*, 898 F.3d at 968 ("IGRA is silent" with respect to the internet); *Bay Mills*, 572 U.S.

7    at 795. The CEA does. And in UIGEA, Congress expressly preserved the CFTC's existing regulatory

8    authority over such transactions. 31 U.S.C. § 5362(1)(E)(2); *see also* Mov. Br. 9-11.

9    **C.    PLAINTIFFS' SOVEREIGNTY CLAIM FAILS TO SATISFY ARTICLE III'S CASE-**

10   **OR-CONTROVERSY REQUIREMENT (COUNT IV).**

11        The crux of Count IV is that Kalshi is infringing upon Plaintiffs' sovereignty by conducting

12   "sports gambling activities . . . in direct violation of the Tribes' duly enacted gaming Ordinances."

13   ¶ 215. But Plaintiffs have no sovereign interest that could be injured by Kalshi's conduct and thus

14   have suffered no Article III injury. Mov. Br. 18-19. Plaintiffs suggest they have a sovereign right to

15   be free from competition that might be posed by Kalshi (Opp. 25-26), but they have no answer to the

16   rule that "inherent tribal sovereignty can be implicitly divested by comprehensive federal regulatory

17   schemes"—like the CEA—"that are silent as to Indian tribes." *NLRB*, 788 F.3d at 548; Mov. Br. 17.

18        Instead, Plaintiffs point to 28 U.S.C. § 1331, saying it "gives a district court subject matter

19   jurisdiction to decide any claim alleging a violation of IGRA." Opp. 24. But Count IV does not even

20   mention IGRA; that is Count I. And IGRA does not "render[] commercial gaming an untouchable

21   aspect of tribal self-governance." *NLRB*, 788 F.3d at 553. Kalshi understands that the Court would

22   have federal question jurisdiction over a dispute properly arising under IGRA. Even where a court

23   has subject matter jurisdiction over a dispute, however, plaintiffs must still satisfy Article III's case-

24   or-controversy requirement. *See Spokeo, Inc. v. Robins*, 578 U.S. 330, 341 (2016) (injury-in-fact

25   requirement is not "automatically satisf[ied] . . . whenever a statute grants a person a statutory right

26   and purports to authorize that person to sue to vindicate that right"). Plaintiffs attempt to resolve their

27   standing problem by claiming that Kalshi "admits to hindering rather than violating" enforcement of

28   the Ordinances. Opp. 25. But pointing out that Plaintiffs lack authority to enforce their Ordinances

Farella Braun + Martel LLP
One Bush Street, Suite 900
San Francisco, California 94104
(415) 954-4400

KALSHI DEFENDANTS' REPLY                    11
Case No. 3:25-cv-06162

1    against Kalshi is not "hindering" enforcement.  Mov. Br. 18; *supra* Section II.B.

2        Plaintiffs continue to assert that Kalshi is interfering with "tribal self-government" by drawing

3    business away from their casinos, comparing Kalshi's operation of a national exchange from New

4    York to the construction of a sports stadium on Plaintiffs' lands.  Opp. 25-26.  But as the Ninth Circuit

5    explained in *Lexington II*, activity "entirely conducted over the Internet" is distinguishable from

6    activity physically conducted on tribal land.  *Lexington Ins. Co. v. Smith* (*Lexington II*), 117 F.4th

7    1106, 1110-11 (9th Cir. 2024) (denying petition for rehearing en banc); *see also Bay Mills*, 572 U.S.

8    at 795 ("Everything—literally everything—in IGRA affords tools (for either state or federal officials)

9    to regulate gaming on Indian lands, *and nowhere else*.") (emphasis added); *Jackson v. Payday Fin.,*

10   *LLC*, 764 F.3d 765, 782 (7th Cir. 2014) (quoting *Plains Com. Bank*, 554 U.S. at 327) ("[T]he

11   sovereignty that the Indian tribes retain is of a unique and limited character.  It centers on the land held

12   by the tribe and on the tribal members within the reservation.").  Plaintiffs have done nothing to bolster

13   the "attenuated chain of inferences" upon which their theory of injury rests.  *See* Mov. Br. 18-19.

14       Even if Kalshi were somehow "drawing business away" from Plaintiffs' casinos, which do not

15   offer sports betting, that would not constitute harm to Plaintiffs' *sovereign* interests.  Mov. Br. 17-19;

16   *cf. Sokaogon Chippewa Cmty. v. Babbitt*, 214 F.3d 941, 946-47 (7th Cir. 2000) (tribe lacked legally

17   protected interest sufficient to support intervention where it claimed its "casino operations will become

18   less profitable" due to "economic competition").  Nor would "drawing business away" from Plaintiffs'

19   casinos constitute cognizable interference with their self-governance.  *NLRB*, 788 F.3d at 553.  Count

20   IV fails to establish a justiciable case or controversy and should be dismissed with prejudice.

21   **D.    PLAINTIFFS FAIL TO STATE A LANHAM ACT CLAIM (COUNT V).**

22       **1.    The Opposition Fails to Remedy Plaintiffs' Lack of Standing.**

23       Plaintiffs say they have adequately alleged a commercial injury sufficient to establish standing

24   under *Lexmark* by asserting that Kalshi "draws business away from the Tribes' casinos."  Opp. 28.

25   "[S]uch shapeless allegations of harm" do not suffice.  *Maffick LLC v. Facebook, Inc.*, 2021 WL

26   1893074, at *4 (N.D. Cal. May 11, 2021); *see also McLaughlin v. Homelight, Inc.*, 2021 WL 5986913,

27   at *2 (C.D. Cal. Sep. 17, 2021) ("summary" allegations that defendant "diverts potential consumers"

28   were insufficient); *MillerKing v. DoNotPay, Inc.*, 702 F. Supp. 3d 762, 772 (S.D. Ill. 2023) (conclusory

Farella Braun + Martel LLP
One Bush Street, Suite 900
San Francisco, California 94104
(415) 954-4400

KALSHI DEFENDANTS' REPLY          12
Case No. 3:25-cv-06162

1    allegation of diverted business without facts making allegations plausible is insufficient).

2        Plaintiffs also suggest that the Court can infer injury to sales because they are "in direct

3    competition with" Kalshi.  Opp. 29.  "[C]onclusions[] are not entitled to the assumption of truth."

4    *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).  Plaintiffs do not explain how Kalshi offers consumers

5    something "identical" to Plaintiffs, *MillerKing*, 702 F. Supp. 3d at 773, nor even that they "vie for the

6    same dollars from the same consumer[s]."  *TrafficSchool.com, Inc. v. Edriver Inc.*, 653 F.3d 820, 827

7    (9th Cir. 2011); *see also Vampire Fam. Brands, LLC v. MPL Brands, Inc.*, 2021 WL 4134841, at *7

8    (C.D. Cal. Aug. 6, 2021) (pre-mixed cocktail distributor did not directly compete with wine and vodka

9    distributor even though both sold alcoholic beverages).  Kalshi runs a nationwide, online exchange

10   that offers event contracts, some of which involve sports.  Plaintiffs operate brick-and-mortar casinos

11   in California that offer slot machines, lottery games, and cards to in-person visitors.  Plaintiffs do ***not***

12   offer sports betting—and under California law, they ***cannot***.  ¶¶ 42, 202.  Plaintiffs' theory of injury

13   is "too attenuated," as Plaintiffs "do[] not currently sell" competing products. *Vampire*, 2021 WL

14   4134841, at *7.  And in no way do Plaintiffs plead that Kalshi's advertisements have "penetrate[d] the

15   relevant market, whatever that might be." *Maffick*, 2021 WL 1893074, at *4 (citation modified).

16       Nor have Plaintiffs alleged harm to their commercial reputations.  Plaintiffs concede that none

17   of Kalshi's ads refer to Plaintiffs or their casinos, but they ask the Court to conclude they will suffer

18   future "lost revenue," preventing them from offering "services and support to their members" and

19   eventually damaging their "reputation and goodwill." Opp. 29.  This is pure speculation. *Pulse Health*

20   *LLC v. Akers Biosciences, Inc.*, 2017 WL 1371272, at *7 (D. Or. Apr. 14, 2017) (no standing where

21   "potential injury" to "future commercial activity" was "purely speculative" because the plaintiff "ha[d]

22   not entered the market").  And it does not fall within the statute's "zone of interests." *Maffick*, 2021

23   WL 1893074, at *4-5 ("reputational injury must . . . be of a commercial nature").

24       Plaintiffs point to no causal link between Kalshi's advertisements and any alleged injury to

25   Plaintiffs nor any authority to support Plaintiffs' theory that Kalshi's "broad marketing strategy,"

26   which they claim is "designed to attract sports gamblers," somehow "divert[s] business" from their

27   casinos.  Opp. 30.  Plaintiffs misleadingly assert that Kalshi's ads "necessarily impact[] brick-and-

28   mortar sports betting facilities like the Tribes' Casinos," (*id.*), but Plaintiffs' casinos ***do not and cannot***

Farella Braun + Martel LLP
One Bush Street, Suite 900
San Francisco, California 94104
(415) 954-4400

KALSHI DEFENDANTS' REPLY                    13
Case No. 3:25-cv-06162

offer sports betting. The lone paragraph in the Complaint that even mentions any Lanham Act injury (¶ 227) offers only the kind of threadbare, "conclusory, speculative allegations" that courts routinely reject. *McLaughlin*, 2021 WL 5986913, at *2; *see also Maffick*, 2021 WL 1893074, at *5 (criticizing such allegations as "ipse dixit and not the pleading of facts"). Plaintiffs cite paragraph 69 (Opp. 28-29), which says **nothing** about Kalshi's advertisements, and paragraphs 93-98 (Opp. 30), which describe Kalshi's social media posts, but do not allege any purported impact. Nor can Plaintiffs overcome these deficiencies by citing a District of Columbia district court decision that relied on a survey conducted years ago by a purported expert examining a different casino market operating under a different legal regime in a different state. Opp. 30.[8] Even viewed in its "totality" (Opp. 29), the Complaint does not allege that potential patrons of Plaintiffs' casinos "viewed" Kalshi's ads, "let alone that the advertising influenced" their consumer decisions. *McLaughlin*, 2021 WL 5986913, at *2 (no standing where plaintiff failed to allege that misleading statements caused potential customers to choose competitors or plaintiff to lose transactions); *Maffick*, 2021 WL 1893074, at *4-5 (similar).

### 2. The Opposition Does Not Identify Any Well-Pleaded Allegation of Falsity.

The heart of Plaintiffs' Lanham Act claim is that Kalshi has made "false and misleading statements" about "its sports event contracts," including that they "are fully legal and accessible nationwide" and are sometimes referred to as "betting." ¶ 222. Yet as this Court has held, "Kalshi's advertisement is merely stating an opinion its product is legal," and therefore "is not literally or facially false." ECF No. 71 at 4 (citation modified).

The Lanham Act prohibits only "false or misleading representations of fact, not simply statements of opinion." *Ariix, LLC v. NutriSearch Corp.*, 985 F.3d 1107, 1121 (9th Cir. 2021). Because purported interpretations of "the meaning of a statute or regulation are opinion statements, and not statements of fact," they "are not generally actionable under the Lanham Act." *Coastal*

---

[8] In that case, the plaintiff offered a purported expert analysis that supposedly showed how online sports gambling would affect certain casinos in Florida. *W. Flagler Assocs. v. Haaland*, 573 F. Supp. 3d 260, 268 (D.D.C. 2021), *rev'd on other grounds*, 71 F.4th 1059 (D.C. Cir. 2023). The author of that analysis has since been sued for misappropriating and fabricating data during the course of his employment, including during the period when he authored the report referenced in *West Flagler*. *See* ECF No. 60-2. In any event, the Complaint here offers no such facts or analysis.

Farella Braun + Martel LLP
One Bush Street, Suite 900
San Francisco, California 94104
(415) 954-4400

KALSHI DEFENDANTS' REPLY                    14
Case No. 3:25-cv-06162

1   *Abstract Serv., Inc. v. First Am. Title Ins. Co.*, 173 F.3d 725, 731 (9th Cir. 1999).  Nevertheless,

2   Plaintiffs insist "Kalshi's statements about the legality of its platform are objectively verifiable claims"

3   and are actionable under the Lanham Act.  Opp. 32.  The only case they cite, however, involved a

4   defendant software company describing a competitor's product as "malicious" and a "threat" to

5   consumers, *see Enigma Software Grp. USA, LLC v. Malwarebytes, Inc.*, 69 F.4th 665, 672 (9th Cir.

6   2023), and is inapposite to Plaintiffs' claim accusing Kalshi of making statements that concern the

7   legality of ***its own*** business.  Plaintiffs also neglect to analyze Kalshi's statements in their "full

8   context," *Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1139 (9th Cir. 1997), which contain

9   qualifiers such as "on Kalshi" or "with Kalshi."  ECF No. 1, Compl. Ex. A.

10      Plaintiffs say that even if Kalshi's ads are statements of opinion, they are nevertheless

11  actionable because Kalshi "lack[ed] a good faith belief" in the truth of its statements.  Opp. 32.  But

12  Plaintiffs allege no facts in support, let alone as required by Rule 9(b).  And Plaintiffs' argument that

13  its claim does not "sound[] in fraud," Opp. 27, flies in the face of Plaintiffs' accusation that Kalshi

14  misled consumers while lacking a "good faith belief" in the truth of its statements.  *Id.* at 32.  Other

15  district courts in the Ninth Circuit have applied Rule 9(b) to Lanham Act false advertising claims,

16  while the Ninth Circuit itself "has applied Rule 9(b) to other types of false advertising claims."  *Stahl*

17  *Law Firm v. Judicate West*, 2013 WL 4873065, at *7 (N.D. Cal. Sep. 12, 2013) (collecting cases).

18      Plaintiffs point to their allegations—on information and belief—that Kalshi has "knowledge"

19  that the legality of its products is "highly questionable and widely criticized" and that in previous

20  litigation over political event contracts, Kalshi made arguments regarding Congress's intent as to

21  contracts that "serve no commercial purpose."  Opp. 32; ¶¶ 91, 119.  Neither allegation demonstrates

22  that Kalshi—which has adhered to the CEA and CFTC regulations in self-certifying its event contracts

23  (Mov. Br. 12)—lacked a good faith belief in its compliance with the law, as this Court expressly found.

24  ECF No. 71 at 4 ("Plaintiffs have not shown . . . that Kalshi lacks a good-faith belief in the opinion's

25  truth."); *see also* CFTC Amicus at 15-20 (explaining sports event contracts traded on CFTC-registered

26  DCMs are swaps under the CEA); *Orgel*, 2026 WL 474869 at *7-10; *KalshiEX LLC v. Flaherty*, 2025

27  WL 1218313, at *7 (D.N.J. Apr. 28, 2025).  Kalshi has appealed adverse decisions.  *See infra* Section

28  II.E(1)(b). Plaintiffs cannot point to any particularized allegations that Kalshi "clearly intended" that

Farella Braun + Martel LLP
One Bush Street, Suite 900
San Francisco, California 94104
(415) 954-4400

KALSHI DEFENDANTS' REPLY          15
Case No. 3:25-cv-06162

1    stray social media posts be understood as objective fact or any support for its odd contention (Opp.

2    31) that Kalshi's statements cannot be opinions unless preceded by a disclaimer.  The single case

3    Plaintiffs cite sets forth no such requirement.  *Omnicare, Inc. v. Laborers Dist. Council Constr. Indus.*

4    *Pension Fund*, 575 U.S. 175, 183-84 (2015) (comparing "two hypothetical statements").

5           Acknowledging the basic weakness in their Lanham Act claim as pled, the Opposition (at 30)

6    claims that Plaintiffs also have alleged that Kalshi has falsely stated it "conducts sports betting."  But

7    the Complaint says the opposite, repeatedly alleging that Kalshi is ***in fact*** conducting sports betting.

8    *E.g.*, ¶¶ 4, 68.  Plaintiffs point to paragraphs alleging that Kalshi's social media posts refer to "betting."

9    Opp. 33 (citing ¶¶ 94, 96).  But those paragraphs do not allege it is "false" for Kalshi to say it conducts

10   sports betting—presumably because the gravamen of Plaintiffs' case is that Kalshi is doing exactly

11   that.  Plaintiffs try to elide this inconsistency as "pleading in the alternative."  *Id.*  But the problem is

12   one of legal sufficiency.  In any event, statements characterizing Kalshi's offerings as "betting"—a

13   generalized term used in popular media to describe all kinds of investments[9]—are not "specific and

14   measurable claim[s], capable of being proved false or of being reasonably interpreted as a statement

15   of objective fact"; they are thus non-actionable.  *Coastal Abstract*, 173 F.3d at 731.

16        **3.  The Opposition Does Not Identify Any Well-Pleaded Allegation of Consumer**
17            **Deception.**

18          As the Moving Brief explained, Plaintiffs have also failed to allege consumer deception, much

19   less with particularity.  The Opposition points only to conclusory allegations and purported social

20   media posts (Opp. 34 (citing ¶¶ 225-26)) and identifies no particularized facts suggesting that Kalshi's

21   statements have deceived or influenced the purchasing decisions of "a substantial segment" of

22   Plaintiffs' consumer base.  *Southland Sod*, 108 F.3d at 1139.  Social media reactions—none of which

23   suggests consumer deception and all of which could be comments by bots, trolls, or even Plaintiffs'

24

25   _____

     [9] *See, e.g.*, James Royal, *Options vs. stocks: Which one is better for you?*, Yahoo! Finance (Aug. 25,
26   2025),   https://finance.yahoo.com/news/options-vs-stocks-one-better-210539982.html   (a   stock
     option is a "side bet among traders"); Grant Harvey, *Meta's $72B Superintelligence Bet is Building*
27   *a    Future    that    Could    Kill    Its    Own    Apps*,    The    Neuron    (July    31,    2025),
     https://www.theneuron.ai/explainer-articles/metas-72b-superintelligence-bet-is-building-a-future-
28   that-could-kill-its-own-apps (Meta is "betting on a world" powered by personalized AI).

Farella Braun + Martel LLP
One Bush Street, Suite 900
San Francisco, California 94104
(415) 954-4400

KALSHI DEFENDANTS' REPLY                          16
Case No. 3:25-cv-06162

1  tribal members—say nothing about the "universe of consumers whose opinions are relevant." *QVC*

2  *Inc. v. Your Vitamins, Inc.*, 439 F. App'x 165, 168-69 (3d Cir. 2011).  And Plaintiffs do not explain

3  how their allegation that consumers are deceived into believing Kalshi's platform is "affirmatively

4  endorsed by the federal government" (Opp. 34 (quoting ¶ 225)) is plausible when courts refuse to

5  "impute representations of government approval in the absence of explicit claims."  *Scilex Pharms.*

6  *Inc. v. Sanofi-Aventis U.S. LLC*, 2021 WL 11593043, at *8 (N.D. Cal. Aug. 16, 2021) (citation

7  modified) (dismissing claim based on allegations that ads implied governmental approval).

8  **E.      PLAINTIFFS FAIL TO STATE A CIVIL RICO CLAIM (COUNT III).**

9         Plaintiffs defend their RICO claim by insisting that their legal conclusions are allegations of

10  fact (*e.g.*, Opp. 36, 39) and accusing Defendants of "offering a different version of the facts" (*id.* 34).

11  All of this is meant to distract from the absurdity of this claim, which would require the Court to

12  believe that federally regulated derivatives market participants are engaged in a criminal racket.

13         **1.   Plaintiffs Have Not Alleged Any Predicate Acts.**

14         The Complaint identifies three predicate acts:  wire fraud (18 U.S.C. § 1343); transmitting

15  wagering information in violation of the Wire Act (18 U.S.C. § 1084); and operation of an illegal

16  gambling business (18 U.S.C. § 1955).  ¶ 187; *see also* Opp. 37.  None is adequately alleged.

17             ***a.  Wire Fraud***

18         Plaintiffs fail to allege wire fraud, not least because Plaintiffs cannot point to any intent to

19  defraud.  Plaintiffs identify a single paragraph in the Complaint that selectively refers to arguments

20  made by counsel in prior litigation concerning political event contracts.  Opp. 38 (citing ¶¶ 120-21).

21  Advocacy in a separate legal proceeding regarding a different issue does not show a specific intent to

22  "deceive and cheat."  *See United States v. Miller*, 953 F.3d 1095, 1101 (9th Cir. 2020).  Ignoring this

23  Court's decision denying Plaintiffs' request for a preliminary injunction, (ECF No. 71 at 4), Plaintiffs

24  accuse Defendants of providing no "legal support" for their belief that they operate legally.  Opp. 38.

25  Plaintiffs again have it backwards:  it is ***their*** burden to plead with particularity a willful act carried

26  out with the intent that an illicit purpose be achieved, not ***Defendants'*** burden to prove they believed

27  in the legality of their conduct.  *See United States v. Galecki*, 89 F.4th 713, 737-38 (9th Cir. 2023).

28         Nor have Plaintiffs alleged a fraudulent scheme.  The Opposition puzzlingly asserts that

Farella Braun + Martel LLP
One Bush Street, Suite 900
San Francisco, California 94104
(415) 954-4400

KALSHI DEFENDANTS' REPLY                                  17
Case No. 3:25-cv-06162

1  Defendants are "collect[ing] money . . . for class III gaming," while claiming "in their briefing"—but

2  "not in their advertisements"—that "they are selling federally regulated derivatives contracts."  Opp.

3  37-38.  In other words, Plaintiffs' theory is that Defendants are defrauding ***the courts*** through their

4  "briefing" by hiding the fact that they are "conducting class III gaming," while not hiding any of this

5  from ***the public*** to whom they are advertising and from whom they "collect money."  *Id.*; *see also*

6  ¶¶ 93-107.  This cannot be fraud—let alone the type of scheme to defraud contemplated by RICO.

7  Plaintiffs also conflate wire fraud with the other two asserted predicate acts.  *E.g.*, Opp. 35

8  ("Defendants committed wire fraud in violation of the Wire Act and 18 U.S.C. § 1955").  Even if

9  Plaintiffs adequately alleged violations of the Wire Act and Section 1955 (they have not), that would

10  not suffice to allege wire fraud pursuant to Rule 9(b).[10]  *Edwards v. Marin Park, Inc.*, 356 F.3d 1058,

11  1065-67 (9th Cir. 2004).

### b.  The Wire Act and 18 U.S.C. § 1955

13  Plaintiffs also do little in the Opposition to defend their claims under the Wire Act and

14  18 U.S.C. § 1955.  Both require Kalshi's alleged conduct to be illegal under state law.[11]  As the Moving

15  Brief explained (at 28-29), Kalshi's conduct is not.  First, federal law exempts Kalshi's event contracts

16  from the definition of "bet or wager," such that the Wire Act (which hinges on state law) does not

17  apply.  Second, even if state gambling laws applied, they would be preempted by the CEA.

18  Plaintiffs argue that construing the term "bet or wager" for purposes of the Wire Act by taking

19  into account Congress's decision in UIGEA to expressly exclude DCM transactions would require the

20  Court to ignore their "factual allegations."  Opp. 39.  Nonsense.  Statutory interpretation is a matter of

21  law.  And the Complaint itself alleges that Kalshi's event contracts are traded on a DCM and thus fall

22

---

23  [10] Additionally, Rule 9(b) "does not allow a complaint to merely lump multiple defendants together."  *Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007); *see also* Mov. Br. 27 n.9.

24  [11] Plaintiffs contend that they alleged "Kalshi's contracts constitute unlawful wagers under

25  § 945.03."  Opp. 40.  There is no reference to a "§ 945.03" in the Complaint and Kalshi can find no such provision in the California code relevant to the instant proceedings.  To the extent Plaintiffs

26  seek to rely on Wisconsin state law Section 945.03, which criminalizes commercial gambling, (i) that provision is inapplicable and (ii) Section 945.01(1)(a)(1), which Plaintiffs also cite (Opp.

27  40), expressly carves out from the definition of "bet" those transactions "for the purchase or sale at a future date of securities or other commodities."  Wis. Stat. §§ 945.01(1)(a)(1), 945.03.  Plaintiffs

28  concede that transactions on Kalshi are contracts that fall within that carveout.  ¶ 71.

Farella Braun + Martel LLP
One Bush Street, Suite 900
San Francisco, California 94104
(415) 954-4400

KALSHI DEFENDANTS' REPLY                    18
Case No. 3:25-cv-06162

squarely within the carveout.  ¶ 71.  Nor do Plaintiffs dispute (1) that UIGEA is the only federal law that defines what a "bet or wager" is, and (2) that in enacting UIGEA, Congress expressly considered the Wire Act.  Mov. Br. 28 & n.11.  It is "the most rudimentary rule of statutory construction" that "courts do not interpret statutes in isolation, but in the context of the *corpus juris* of which they are a part, including later-enacted statutes." *Branch v. Smith*, 538 U.S. 254, 281 (2003) (if the meaning that the "legislature attached to the words of a former statute" can be "gathered from a subsequent statute *in pari materia*," that meaning "will govern the construction of the first statute" (citation modified)). Plaintiffs cite *Murphy v. NCAA*, 584 U.S. 453 (2018), arguing that it disproves any argument that the CEA, as amended, "created a whole new system for regulating sports betting."  Opp. 40.  Kalshi has never claimed that the CEA regulates sports betting; on the contrary, the whole point is that the CEA regulates derivatives markets, while leaving other matters (like sportsbooks) to the states. *Murphy* says nothing about how this Court should interpret UIGEA, the Wire Act, or Section 1955.

Plaintiffs argue that federal preemption does not apply because Plaintiffs have alleged a violation of IGRA, a federal law.  Opp. 39.  But IGRA is beside the point; Plaintiffs must allege a predicate act to sustain their RICO claim, and the acts they assert require that they allege that Kalshi's operation of a DCM violates state gambling laws.  Plaintiffs cannot do that because those laws are preempted as applied to transactions on DCMs.  *See* 7 U.S.C. § 2(a)(1)(A); *Flaherty*, 2025 WL 1218313, at *4-6 (Kalshi likely to succeed in establishing field preemption); *Orgel*, 2026 WL 474869 at *7 ("Kalshi is likely to succeed on the merits because sports event contracts are 'swaps' and conflict preemption applies.");  CFTC Amicus at 21-27.  Plaintiffs cite three district court decisions, claiming that they rejected the preemptive authority of the CEA.  Opp. 39.  All three decisions are on appeal, and the CFTC has filed an amicus brief explaining that sports event contracts are covered by the CEA and subject to the CFTC's exclusive jurisdiction, and thus, state (and tribal) gambling laws are preempted.  CFTC Amicus at 15-27.

### 2.  Plaintiffs Have Not Alleged a RICO Enterprise.

Plaintiffs argue they have pleaded an association-in-fact enterprise by alleging that Defendants are "work[ing] together to offer online class III gaming on the Tribes' Indian lands, in violation of IGRA and California law."  Opp. 35-36.  They also rehash arguments that the CFTC has "prohibited"

Farella Braun + Martel LLP
One Bush Street, Suite 900
San Francisco, California 94104
(415) 954-4400

KALSHI DEFENDANTS' REPLY                    19
Case No. 3:25-cv-06162

1    Kalshi's event contracts and that Defendants "knew their conduct was unlawful," (Opp. 37), a theory

2    that both this Court and the CFTC have soundly rejected.  *See supra* Section II.A; ECF No. 71 at 11-

3    12; CFTC Amicus at 15-20 (explaining sports event contracts are swaps under the CEA).

4         Plaintiffs point to allegations that Kalshi and Robinhood offered "controversial" event

5    contracts, that they acknowledged the products were "new and different," that the introduction of the

6    products was "strategically timed," and that they have agreed to use "a direct revenue-sharing model,"

7    rather than "payment for order flow."  Opp. 36.  Offering new products, regardless of timing, is not

8    unlawful; it in no way means the Kalshi-Robinhood business arrangement is atypical, let alone that it

9    reflects "a distinct entity" with an illicit purpose.  *United Food & Com. Workers Unions & Emps.*

10   *Midwest Health Benefits Fund v. Walgreen Co.*, 719 F.3d 849, 855 (7th Cir. 2013).  Nor do Plaintiffs

11   deny that Defendants' revenue-sharing arrangement is commonplace and hardly the stuff of a RICO

12   enterprise.  *See* Mov. Br. 25 (DCMs and FCMs are "financed by commissions") (citation omitted).

13        **3.  Plaintiffs Have Not Alleged a RICO Injury.**

14        Plaintiffs fail to allege a RICO injury.  They argue (Opp. 41) that "diver[sion]" of revenue is

15   "concrete and foreseeable as a matter of law."  But "foreseeability does not cut it":  the injury must be

16   directly and proximately caused by the RICO violation.  *Med. Marijuana, Inc. v. Horn*, 604 U.S. 593,

17   612 (2025); *Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 462 (2006).  Plaintiffs' conclusory

18   allegations of their "exclusive markets" and "legal monopoly" do not establish "concrete financial

19   loss."  *Chaset v. Fleer/Skybox Int'l, LP*, 300 F.3d 1083, 1086 (9th Cir. 2002) (citation omitted).

20        The Court is "require[d]" to "draw on its judicial experience and common sense."  *Iqbal*, 556

21   U.S. at 679.  Plaintiffs claim Kalshi's sports event contracts "divert[] revenue" from Plaintiffs' casinos.

22   ¶ 212.  But Plaintiffs do not offer sports betting.  Mov. Br. 29.  Regardless, any loss in revenue would

23   depend on consumers ***choosing*** to spend less money at their casinos.  Consumers' "independent

24   propensities" undermine any "direct relation" between a decision to trade sports event contracts on

25   Kalshi and a decision to play at Plaintiffs' casinos.  *Child.'s Health Def. v. Meta Platforms, Inc.*,

26   112 F.4th 742, 766 (9th Cir. 2024).  Plaintiffs' theory of RICO injury defies common sense.

**III.    CONCLUSION**

27

28        The Court should dismiss the Complaint in its entirety with prejudice.

Farella Braun + Martel LLP
One Bush Street, Suite 900
San Francisco, California 94104
(415) 954-4400

KALSHI DEFENDANTS' REPLY                    20
Case No. 3:25-cv-06162

Dated:  February 23, 2026

Respectfully submitted,

*/s/ Christopher C. Wheeler*

Christopher C. Wheeler (SBN 224872)
cwheeler@fbm.com
Dylan M. Silva (SBN 306363)
dmsilva@fbm.com
FARELLA BRAUN + MARTEL LLP
One Bush Street, Suite 900
San Francisco, California 94104
Telephone: (415) 954-4400
Facsimile: (415) 954-4480

Olivia S. Choe (pro hac vice)
ochoe@milbank.com
Joshua B. Sterling (pro hac vice)
jsterling@milbank.com
MILBANK LLP
1101 New York Avenue, NW
Washington D.C. 20005
Telephone: (202) 835-7500
Facsimile: (202) 263-7586

Grant R. Mainland (pro hac vice)
gmainland@milbank.com
Karen Wong (pro hac vice)
kwong3@milbank.com
MILBANK LLP
55 Hudson Yards
New York, New York 10001
Telephone: (212) 530-5000
Facsimile: (212) 530-5219

*Attorneys for Defendants Kalshi Inc.*
*and KalshiEX LLC*

Farella Braun + Martel LLP
One Bush Street, Suite 900
San Francisco, California 94104
(415) 954-4400

KALSHI DEFENDANTS' REPLY          21
Case No. 3:25-cv-06162